## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**JOHN BAXLEY, JR., ERIC L. JONES,**
**and SAMUEL STOUT,**
**on their own behalf and on behalf**
**of all others similarly situated,**

        **Plaintiffs,**

**v.**                                    **Civ. Act. No. 3:18cv01526**
                                            **(Chambers, J.)**

**BETSY JIVIDEN, in her official capacity as**
**Commissioner of the WEST VIRGINIA**
**DIVISION OF CORRECTIONS AND**
**REHABILITATION, and JOSEPH WOOD, in his**
**official capacity as the Superintendent of WESTERN**
**REGIONAL JAIL AND CORRECTIONAL FACILITY,**

        **Defendants.**

## FIRST AMENDED CLASS ACTION COMPLAINT FOR
## INJUNCTIVE AND DECLARATORY RELIEF

1.      This is an action on behalf of inmates housed in jail facilities throughout West Virginia, which are administered by the West Virginia Division of Corrections and Rehabilitation. Specifically, plaintiffs seek to ensure that jails in West Virginia promptly provide appropriate and necessary medical and mental health treatment to inmates upon admission, as required under the Eighth and Fourteenth Amendments of the United States Constitution, and the Americans with Disabilities Act. In addition, the named plaintiffs, who are all housed at Western Regional Jail and Correctional Facility ("Western Regional") in Barboursville, West Virginia, bring this action on behalf of inmates housed at Western Regional stemming from the Defendants' violation of the Eighth and Fourteenth Amendments to the United States Constitution for deliberate indifference to plaintiffs' health and safety as a result of the conditions of confinement in that facility.

2.      Plaintiffs bring this suit seeking solely declaratory and injunctive relief.

## I. JURISDICTION

3.     This action arises under the Civil Rights Act, 42 U.S.C. § 1983, and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12133.

4.     This Court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 1343(a)(3)-(4) and 28 U.S.C. § 1331.

5.     Declaratory and injunctive relief are authorized pursuant to 28 U.S.C. §§ 2201 and 2202, and Federal Rules of Civil Procedure 57 and 65.

6.     Venue is proper because a substantial part of the acts and omissions of which Plaintiffs complain occurred in this District. *See* 28 U.S.C. § 1391(b).

## II. PARTIES

1.     Defendant Betsy Jividen is the Commissioner of the West Virginia Division of Corrections and Rehabilitation ("WVDOCR"). The WVDOCR is the administrative division of the West Virginia Department of Military Affairs and Public Safety tasked with administering and exercising direct and effective control over prisons and jails in West Virginia. WVDOCR operates nineteen jail facilities throughout West Virginia, including Western Regional. As a government agency, WVDOCR is a "public entity" as defined by 42 U.S.C. § 12131(1) of Title II of the ADA.

2.     As Commissioner of the WVDOCR, Defendant Jividen is vested with executive authority and responsibility for the administration, operation, and control of all WVDOCR facilities and employees of WVDOCR facilities. Defendant Jividen's duties include establishing, monitoring, and enforcing policy directives and procedures that ensure constitutional confinement and treatment of all people in the custody of the WVDOCR. Among other things, Commissioner Jividen is charged with ensuring that inmates receive appropriate medical and mental health treatment upon admission to and while housed in any West Virginia jail.  Commissioner Jividen

is similarly charged with maintaining and operating the jail facilities in West Virginia in a manner that meets the minimal civilized measure of life's necessities, by providing beds and bedding for all inmates, access to basic hygiene products and laundry, and providing living conditions free of mold, human waste, and other contaminants for all inmates housed therein.

3.     At all relevant times, Defendant Jividen was acting under the color of state law. Defendant Jividen is named solely in her official capacity for the purposes of seeking declaratory and prospective injunctive relief.

4.     Defendant Joe Wood is the Superintendent of Western Regional Jail and Correctional Facility, in Barboursville, West Virginia. In that capacity, Defendant Wood is tasked by law with the care and custody of all detainees and prisoners incarcerated at Western Regional. Defendant Wood is vested with executive authority and responsibility for the safe staffing, administration, operation, and control of Western Regional, including the oversight of all Western Regional employees, and the authority to promulgate, amend, and implement all policies and procedures within Western Regional to ensure constitutional confinement and treatment of individuals incarcerated within. Among other things, Defendant Wood is charged with ensuring that inmates at Western Regional Jail receive appropriate medical and mental health treatment upon admission. Defendant Wood is similarly charged with maintaining and operating Western Regional in a manner that meets the minimal civilized measure of life's necessities, by providing beds and bedding for all inmates, affording access to basic hygiene products and laundry, and providing living conditions that are free of mold, human waste, and other contaminants.

5.     At all relevant times, Defendant Wood was acting under the color of state law. Defendant Wood is named solely in his official capacity for the purposes of seeking declaratory and prospective injunctive relief.

6.     Plaintiff John Baxley, Jr. is a pretrial detainee housed at Western Regional Jail.  At all relevant times, plaintiff is and has been a "qualified individual with a disability" as defined by the ADA.

7.     Plaintiff Eric L. Jones is a prisoner housed at Western Regional Jail as a result of a parole revocation. At all relevant times, plaintiff is and has been a "qualified individual with a disability" as defined by the ADA.

8.     Plaintiff Samuel Stout is a pretrial detainee housed at Western Regional Jail.

9.     Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2).

### III.  STATEMENT OF FACTS

**A.     Class A and Subclass**

     **1.     Failure to provide Medical and Mental Health Treatment to Inmates upon Admission**

10.     Pursuant to West Virginia Code of State Rules § 95-1-14.1, entitled Right to medical care, "[a]ll inmates shall have prompt access to necessary medical, dental, and psychiatric care, provided in a reasonable manner by licensed personnel."

11.     Upon information and belief, Defendants lack an adequate policy and/or routinely fail to implement adequate practices to ensure prompt treatment of inmates who have serious medical and/or mental health needs upon admission to jail.

Failure to Provide Adequate Mental Health Treatment

12.     Plaintiff Baxley has multiple preexisting mental illness diagnoses.  Among other things, upon information and belief, he has been diagnosed with depression, anxiety, bi-polar disorder, and schizophrenia.

13.     Prior to admission to Western Regional, Mr. Baxley was prescribed Seroquel, Klonopin, and Trazodone to treat his mental illnesses.

14.      Upon his arrest and admission to Western Regional, Mr. Baxley's wife called the facility seeking to bring his medications, but her request was denied.

15.     Upon information and belief, despite being informed of his serious mental health diagnoses, Defendants took no steps to quickly reinstate Mr. Baxley's medications, such as contacting his treating physician in the community to obtain his prescriptions; moreover, Defendants did not have a psychiatrist or other trained mental health professional on call who could evaluate Mr. Baxley and determine an appropriate course of treatment.

16.     Instead, Mr. Baxley was given no medications and was placed on suicide watch. Upon information and belief, Mr. Baxley was placed on suicide watch in recognition that abruptly stopping antidepressant and antipsychotic medications is known to cause serious withdrawal symptoms, including suicidal thoughts and behaviors.

17.     Suicide watch is an extremely restrictive setting.  When a pretrial detainee such as Mr. Baxley is placed on suicide watch, s/he is stripped of all clothing and instead given a blue paper smock to wear; s/he is not permitted to have any bedding or other personal affects.

18.     In Mr. Baxley's case, he was housed in a cell with seven inmates, who upon information and belief were also on suicide watch, many because they were detoxing from street drugs without any medical assistance; there were not enough beds for all the inmates, and many, including Mr. Baxley, had to sleep on the floor.

19.     Mr. Baxley went without any antipsychotic medications for at least three days. During this period he did, in fact, become suicidal and entered a psychotic state, in which he had auditory and visual hallucinations.

20.   He additionally suffered physical side effects from stopping the medications including hot and cold flashes, sweats, nausea, inability to sleep, and loss of appetite.

21.   After approximately three to four days, Mr. Baxley began receiving some antidepressant and antipsychotic drugs, but not the same drugs nor at the same dosages that he had been prescribed prior to admission.

22.   After approximately four more days on suicide watch, Mr. Baxley was moved to another unit at Western Regional; his medications, however, did not follow.

23.   Mr. Baxley repeatedly asked for his medications and medical treatment, but his requests were ignored.

24.   After going another three to four days without any medications, Mr. Baxley entered a psychotic state; upon information and belief, a nurse discovered him pacing and talking to himself in his cell.

25.   Officers were summoned to remove him from the cell, but Mr. Baxley responded to them in a violent manner because he was in a psychotic state at the time and believed they were trying to hurt him.

26.   In order to subdue Mr. Baxley, officers sprayed him with chemical agents; Mr. Baxley's head and chin were injured during the incident.

27.   Following this incident, Mr. Baxley was returned to suicide watch for another four days.

28.   In or around the winter of 2018 to 2019, Mr. Baxley was transferred to a WVDOCR prison facility for a short period.

29.   While at the prison, Mr. Baxley was provided necessary medications.

30.     Mr. Baxley was then transferred back to Western Regional; the prison transferred him back with a packet of information regarding Mr. Baxley's diagnoses and prescriptions, and a ten day supply of his medications.

31.     Upon information and belief, ten days is more than enough time for Defendants to ensure that Mr. Baxley continue his antipsychotic medications without break.

32.     Nevertheless, Defendants failed to obtain the necessary medication, and thus, after the ten day supply ran out, Mr. Baxley went approximately seven days with no antipsychotic medications.

33.     Once again, going without his medications caused Mr. Baxley to become paranoid and delusional, and resulted in an altercation with a fellow inmate.

Failure to Provide Adequate Medical Treatment

**Mr. Baxley**

34.     In addition to his mental health diagnoses, Mr. Baxley has a seizure disorder and severe asthma.

35.     Prior to admission to Western Regional, Mr. Baxley was prescribed Depakote to treat his seizure disorder, and two asthma inhalers to address his severe asthma problems.

36.     As with his anti-psychotic medications, Mr. Baxley's wife offered to bring his Depakote and inhalers for his use upon admission, but was not permitted.

37.     Upon information and belief, despite being informed of his serious medical conditions, Defendants took no steps to quickly reinstate Mr. Baxley's medications, such as contacting his treating physician in the community to obtain his prescriptions; moreover, Defendants did not have a medical doctor or other trained medical provider available on site or on

call who could evaluate Mr. Baxley and determine an appropriate course of treatment for his medical conditions.

38.     Indeed, upon admission to Western Regional, Mr. Baxley was not prescribed any anti-seizure medication, nor was he provided with inhalers for his asthma.

39.     After a period of several days, Defendants prescribed an alternative to Depakote to treat Mr. Baxley's seizures.

40.     Taking the alternative drug caused Mr. Baxley to have trouble breathing, such that he could not safely continue use of the alternative seizure mediation. No other seizure medication has been provided.

41.     Mr. Baxley does not know whether he has suffered seizures due to not taking a seizure medication, because when Mr. Baxley has a seizure, he does not remember it afterwards.

42.     Mr. Baxley was ultimately prescribed an allergy medication for his asthma, but has never been provided with an inhaler, and continues to suffer from asthma.

**Mr. Jones**

43.     Mr. Jones similarly arrived at Western Regional with a preexisting medical condition.

44.     Mr. Jones has high blood pressure and, prior to being admitted to Western Regional, took daily blood pressure medication to control his disease; without daily treatment, high blood pressure can cause heart attacks, strokes, and aneurisms, among other things.

45.     Upon admission, Mr. Jones informed employees of the Defendants of his medical condition and asked to be given blood pressure medication.

46.     Mr. Jones further explained that he had, until several days before, been incarcerated at Huttonsville Correctional Center, a WVDOCR facility.

47.     Upon information and belief, despite another WVDOCR facility having Mr. Jones's medical files, including his diagnosis of high blood pressure and prescription for medication, Defendants took no steps to obtain those records and provide Mr. Jones with his medication.

48.     Indeed, Mr. Jones went approximately two weeks without receiving any blood pressure medication.

49.     This denial of medication caused Mr. Jones significant anxiety, because he understood that failure to control his blood pressure could result in life-threatening consequences, including heart attacks, strokes, and aneurisms.

**Class Member R.H.**

50.     Class member R.H. is an HIV positive inmate. R.H. was admitted to Western Regional in or around the summer of 2017, at which time he informed Defendants of his status as being HIV positive and the anti-retroviral medications which he was taking prior to admission.

51.     Upon information and belief, despite having numerous inmates who are HIV positive, Defendants had no policy or procedure to ensure that R.H. could continue on his anti-retroviral medications without disruption. Defendants took no steps to quickly reinstate R.H.'s medications, such as contacting his treating physician in the community to obtain his prescriptions.

52.     R.H. did not receive any medications to treat his HIV for approximately one week; at that point, he began receiving one of the drugs that is part of his antiretroviral regimen but not the others.

53.     Upon information and belief, this practice is dangerous and contraindicated, as taking one drug in an antiretroviral regimen without the others can lead to drug resistant virus mutations.

54.     It took Defendants approximately one month to provide R.H. with the full set of antiretroviral drugs that he was supposed to be taking.

55.     Thereafter, R.H. would receive his needed medications for approximately a month at a time, but when that prescription would run out, he consistently went about a week without medications before he would begin to receive them again.

2.     **Class A and Subclass Allegations**

56.     Class A includes all persons who were at any time on or after December 18, 2018,[1] or who will be, admitted to a jail in West Virginia with discernable, treatable medical problems.

57.     There are questions of law or fact common to Class A.

58.     Common questions of fact for the members of Class A include whether a policy or procedure exists to ensure that class members promptly receive appropriate medical and/or mental health treatment when they enter the jails in West Virginia, and whether inmates in fact do promptly receive such treatment.

59.     Common questions of law applicable to Class A include whether Defendants have acted with deliberate indifference to serious medical needs of inmates at the time of admission to jails in West Virginia.

60.     A subclass of Class A includes all individuals who were at any time on or after December 18, 2018, inmates admitted to a jail in West Virginia who meet the definition of being a "qualified individual with a disability" under the ADA.

61.     There are questions of law or fact common to the subclass.

62.     Common questions of fact for the subclass, i.e. inmates who are qualified

---

[1]The class timeframe relates back to the original date of filing of Plaintiffs Baxley's and Stout's pro se complaints, which were filed as a result of said Plaintiffs' failed attempt to file a class action by filing a complaint jointly with approximately twenty other inmates.

individuals with a disability under the ADA, include whether such inmates receive the necessary accommodations for their disabilities to enable them to participate in jail life in the same manner as non-disabled inmates.

63.     Common questions of law applicable to the subclass, i.e. inmates with qualifying disabilities under the ADA, include whether Defendants have engaged in discrimination by failing to provide said inmates with reasonable accommodations to enable them to live with the same measure of health and safety as inmates without disabilities who are confined to jails in West Virginia.

64.     The class and subclass are so numerous that joinder of all members is impracticable.

65.     Class members of Class A and its subclass are geographically dispersed throughout the length and breadth of the state, and membership is fluid as individual inmates are admitted to and released or transferred from the jails.

66.     The claims of Plaintiffs Baxley and Jones are typical of the claims of Class A as a whole, and the subclass. They have been subjected to and suffered injury as the result of the same policies, or lack thereof, and practices in the various facilities as the absent class and subclass members.

67.     The named plaintiffs will fairly and adequately represent and advance the interests of the class and subclasses. By filing this action, the named plaintiffs have displayed a strong interest in vindicating the rights of all who have been similarly harmed by WVDOCR's arbitrary and harmful actions. By seeking to remedy the violations of their constitutional rights, the named plaintiffs will also be advancing and proving the claims and rights of absent class members.

68.     There are no antagonistic interests between plaintiffs and the absent members of the class, and the equitable relief sought by the named plaintiffs will benefit the class generally.

69.     The named plaintiffs are represented by Mountain State Justice, Inc., a non-profit, public interest legal services firm with long and substantial expertise in class litigation on behalf of low-income West Virginians. Counsel for the putative class are knowledgeable about the conditions of confinement in correctional facilities, the rights of individuals with disabilities, and are skilled in conducting civil rights litigation in the federal courts, including the prosecution and management of class action litigation.

70.     Defendant Jividen has acted or refused to act on grounds generally applicable to the class and subclass, thereby making final equitable relief with respect to the class and subclass as a whole an appropriate remedy.

**B.      Class B**

**1.      Conditions of Confinement at Western Regional Jail**

71.     Upon information and belief, Western Regional has housed significantly more inmates that it is designed to hold for a number of years.

72.     Due to significant overcrowding at numerous regional jails, Governor Jim Justice declared a state of emergency on or about December 31, 2017, permitting the Secretary of the Department of Military Affairs and Public Safety, which includes WVDOCR, to access the West Virginia National Guard to help staff facilities.

73.     Multiple news articles have documented the impact of overcrowding at the jail.  In August 2018, Defendant Wolfe was quoted in the Herald-Dispatch as stating, in relation to Western Regional, "overcrowding is an issue and understaffing is an issue. Until they take care of that, it's going to be an issue for anyone that's there." Hessler, Courtney, "Wolfe Dismissed as Superintendent at Western Reginal Jail," The Herald-Dispatch (August 11, 2018). Wolfe further

explained that "earlier this year, the inmate population was averaging 825 to 850 inmates for a facility designed for about 575." *Id.*

74.     According to the FY2018 Annual Report for the West Virginia Regional Jail and Correctional Facility Authority,[2] Western Regional Jail was designed to hold 394 inmates. Years after the facility was built, an additional 197 bunks and 167 "stackable bunks" were added, providing beds for 758 inmates in the same amount of space.

Filthy Living Conditions

75.     Pursuant to West Virginia Code of State Rules § 95-1-10.5, "[i]nmates shall be provided sufficient cleaning equipment to maintain their cells in a clean condition."

76.     Section 95-1-10.6 of the Code of State Rules provides that "floors shall be kept clean, dry and free of hazardous substances. Floors shall be inspected regularly throughout the day for cleanliness."

77.     Inmates housed at Western Regional are forced to live in filthy, unsanitary, and dangerous conditions, and are denied cleaning supplies to remedy the conditions.

78.     Each plaintiff reports having been housed in cells with mold on the walls, ceilings, window sills, baseboards, among other areas.

79.     Both Mr. Baxley and Mr. Stout were housed in cells in which water contaminated with human waste, among other things, would flow into the cell and sit stagnant for days on end.

80.     In Mr. Stout's cell, there were not sufficient beds or bedding structures for all the inmates, and thus inmates were forced to sit, stand, and sleep in the stagnant water.

---

[2] This is the last annual report to be produced by the West Virginia Regional Jail and Correctional Facilities Authority, as this entity was combined in 2018 with the West Virginia Division of Corrections and the West Virginia Division of Juvenile Services to form the WVDOCR. *See* W. Va. Code § 15a-3-1, *et seq*.

81.     Despite requesting cleaning supplies, each had to wait two days or more to obtain mops and other cleaning equipment.

82.     Mr. Jones was placed in a cell that was filled with trash, and the walls were streaked yellow and black from human waste.  Upon information and belief, black mold was growing on the window sills and baseboards.

83.     Mr. Jones requested a broom and mop to clean his cell for two days before receiving the necessary cleaning supplies.

84.     Mr. Baxley, who is currently double-bunked in a segregation unit, has gone several weeks without receiving cleaning products, and has no opportunity to sweep or mop his cell.

Lack of Bedding

85.     West Virginia Code of State Rules § 95-1-10.10 requires that "[e]ach inmate shall be provided with one clean, fire retardant mattress, two (2) clean sheets, a clean pillow and clean pillow case. . . . Clean blankets shall be provided in a number appropriate to the season."

86.     All inmates are likewise entitled to a bed above floor level.  W.V. C.S.R. §§ 95-1-8.6.d. and -8.11.b.

87.     Inmates at Western Regional Jail are routinely double and triple bunked, meaning that the cells they are housed in do not have enough beds for all the inmates held in the cell.

88.     While inmates without a bed are sometimes provided with a mat and/or bedding structure, many are forced to sleep on the concrete floor without any bedding, sometimes for a month or longer.

89.     For example, when Mr. Baxley was first admitted to Western Regional in August 2018, he was initially housed in "booking" with six other inmates in a two bed cell.  Mr. Baxley was forced to sleep directly on the concrete floor with no bedding of any type.

90.     Similarly, Mr. Jones was housed in a single cell with two other inmates; while Mr. Jones had access to the bed, a concrete slab anchored to the wall of the cell, the two others slept on the floor.  One of those inmates was forced to sleep under the concrete slab that formed the sole bed in the cell.  This arrangement lasted for approximately three weeks.

91.     As previously noted, Mr. Stout has likewise been housed in a cell with two beds and three inmates, one of whom was forced to sleep on the floor with no mat or boat bed.

92.     Inmates lucky enough to receive beds and mattresses often do not receive pillows, sheets, or blankets.

93.     Mr. Baxley is currently housed with a cellmate in a single bed cell; while his cellmate does have a boat bed, he does not have a sheet, pillow, or blanket.

Lack of Access to Hygiene Products

94.     West Virginia Code of State Rules § 95-1-10.7 requires that inmates be provided with personal hygiene products upon admission and thereafter as needed.  The hygiene products that must be provided include "soap, toothpaste, toilet paper, toothbrushes, combs, and feminine hygiene products."

95.     Inmates throughout Western Regional are routinely not provided adequate access to hygiene products.

96.     Mr. Jones has gone without access to hygiene products for up to five days at a time on numerous occasions, including going without access to soap, toothbrush and toothpaste, and toilet paper.

97.     In or around April 2019, Mr. Baxley, who is housed in segregation, routinely goes without access to soap (which is used for hand and body soap, as well as shampoo and conditioner) or showers for approximately four days in a row.

98.     Inmates are routinely forced to go multiple days without toilet paper.

99.     In or around February 2019, Mr. Baxley had gone four days without toilet paper, despite repeated requests to the Correctional Officers.

100.    In or around April 2019, Mr. Jones had gone for two days without toilet paper, despite repeated requests to the Correctional Officers.

Lack of Access to Laundry

101.    Pursuant to West Virginia Code of State Rules § 95-1-10.13, laundry service is to be provided daily for undergarments and at least every other day for outer garments, or as appropriate.  Similarly, laundry service is to be provided for bedding at least weekly. W. Va. C. S. R. § 95-1-10.12.  Inmates are to receive clean towels and washcloths at least three (3) times a week. W. Va. C.S.R. § 95-1-10.11.

102.    Inmates in Western Regional do not receive appropriate laundry services.

103.    Inmates who send garments out to be laundered do not receive them back.

104.    Inmates routinely are forced to hand wash their garments in the sinks in their cells without detergent and dry those garments in their cells by hanging them on beds or other structures.

105.    For example, when Mr. Jones was admitted to Western Regional, he was not provided with a towel, washcloth, or laundry bag.  Mr. Jones had to wash his own clothing in the sink without detergent, and hang the clothes to dry in his cell.

106.    Mr. Stout was in Pod A-5 for approximately two months in or around September and October 2018.  During that period, he was not able to send any items out to be laundered.

107.    Mr. Baxley's clothing has never been laundered by the facility since he was admitted in August 2018; to date, his only ability to clean his jail garb, as well as his bedding and towel, is to wash them in the sink in his solitary confinement cell.

2.      **Class B Allegations**

108.    Class B includes all persons who were at any time on or after December 18, 2018, inmates housed at Western Regional Jail and Correctional Facility, in Barboursville, West Virginia.

109.    Class B is so numerous that joinder of all members is impracticable.

110.    Members of Class B are fluid, as individual members are admitted into Western Regional daily, and many members are subsequently released from the jail or transferred to another jail or prison facility.

111.    There are questions of law or fact common to the class.

112.    Class B common questions of fact include whether inmates at Western Regional have been forced to sleep on the floor without mats and/or other appropriate bedding, and have access to hygiene products, cleaning supplies, and the ability to do laundry, and whether the conditions of the facility violate the minimal standards of decency required to pass constitutional muster.

113.    Common questions of law applicable to Class B include whether Defendants acted with deliberate indifference to the health and safety of inmates in administering the conditions of confinement at said facility.

114.    The claims of the named plaintiffs are typical of the claims of the class as a whole. They have been subjected to and suffered injury as the result of the same policies and/or lack of policies, and same practices in the various facilities as the absent class and subclass members.

115.    The named plaintiffs will fairly and adequately represent and advance the interests of the class and subclasses. By filing this action, the named plaintiffs have displayed a strong interest in vindicating the rights of all who have been similarly harmed by Defendants arbitrary

and harmful actions. By seeking to remedy the violations of their constitutional rights, the named plaintiffs will also be advancing and proving the claims and rights of absent class members.

116.    There are no antagonistic interests between plaintiffs and the absent members of the class, and the equitable relief sought by the named plaintiffs will benefit the class generally.

117.    The named plaintiffs are represented by Mountain State Justice, Inc., a non-profit, public interest legal services firm with long and substantial expertise in class litigation on behalf of low-income West Virginians. Counsel for the putative class are knowledgeable about the conditions of confinement in correctional facilities, the rights of individuals with disabilities, and are skilled in conducting civil rights litigation in the federal courts, including the prosecution and management of class action litigation.

118.    Defendants Jividen and Wood have acted or refused to act on grounds generally applicable to the class, thereby making final equitable relief with respect to the class as a whole an appropriate remedy.

## IV.  DAMAGES

119.    As a result of the Defendants violations of law based on the failure to provide medical and mental health treatment upon admission to jails in West Virginia, as well as the failure to provide minimum civilized measure of life's necessities at Western Regional, plaintiffs and all similarly situated inmates have been harmed physically, mentally, and emotionally, and their constitutional rights have been violated.

## CLAIMS

### COUNT I
### VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED
### (42 U.S.C. § 1983)

120.    Plaintiffs incorporate the proceeding paragraphs by reference.

121.    Plaintiffs bring this claim on behalf of themselves and all similarly situated inmates, i.e., all inmates admitted to jails in West Virginia during the class period who had a discernible and treatable health condition.

122.    Defendant Commissioner Jividen has violated the Eighth Amendment right of convicted inmates to be free from cruel and unusual punishment, and the Fourteenth Amendment right of pretrial detainees to be free from punishment without due process, by acting with deliberate indifference to the serious medical needs of plaintiffs and similarly situated inmates.

123.    As described herein, jails in West Virginia routinely fail to promptly provide necessary medical and mental health treatment to inmates upon admission.

124.    Defendant Jividen, as Commissioner of the WVDOCR, is charged with establishing, monitoring, and enforcing policies and procedures that ensure constitutional confinement and treatment of all inmates in the custody of the WVDOCR.

125.    Defendant Jividen, while acting under color of state law, has been deliberately indifferent to the serious medical needs of Plaintiffs and other similarly situated inmates by failing to establish, monitor, and/or enforce policy directives and operational procedures to ensure that inmates admitted to jails in West Virginia receive prompt treatment for their medical and mental health conditions.

126.    The actions and/or inactions of the Defendant violate clearly established law.

127.    Plaintiffs and other similarly situated inmates have suffered harm as the direct and/or proximate result of Defendant's deliberate indifference to their serious medical needs, including by suffering physical pain when going through unnecessary withdrawal symptoms due to the denial of medically necessary medications; developing psychosis due to lack of treatment, which can result in being subjected to a use of force by correctional officers, or becoming involved in altercations with fellow inmates; physical, mental and emotional distress of suffering from depression, anxiety and other forms of mental illness due to lack of treatment; being made susceptible to significant medical risks, including seizures, asthma attacks, heart attacks, strokes, aneurisms, and increased vulnerability to infections due to a compromised immune system, among others; and mental and emotional anguish as a result of knowing that certain medication and/or treatment is necessary to ensure health and safety, but being denied said treatment.

128.    The actions of the Defendant were committed under the color of state law, and were unreasonable, deliberate, and deprived Plaintiffs and other similarly situated inmates of clearly established constitutional rights of which a reasonable prison administrator should have known pursuant to the Eighth and Fourteenth Amendments to the United States Constitution.

**WHEREFORE,** Plaintiffs, on behalf of themselves and other similarly situated inmates, respectfully request that the Court:

(a)    Certify the class pursuant to Federal Rule of Civil Procedure 23;

(b)    Declare that Defendant's actions and/or inactions as stated herein violate the Eighth and Fourteenth Amendments to the United States Constitution;

(c)    Enjoin Defendant from all unconstitutional practices as set forth herein, and require Defendant to implement or enforce policies, procedures, and

practices necessary to ensure prompt medical and mental health care is provided to all inmates admitted to a jail in West Virginia, and provide the training, equipment and supplies necessary to all relevant employees to ensure those policies and practices are implemented with fidelity;

(d)     Award attorney's fees and costs incurred during the course of this litigation, pursuant to 42 U.S.C. § 1988; and

(e)     Grant such other and further relief to which plaintiffs or the class or subclass members may be entitled in law or equity.

## COUNT II
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (42 U.S.C. § 12132)

129.     Plaintiffs incorporate the proceeding paragraphs by reference.

130.     Plaintiffs Baxley and Jones bring this claim on behalf of themselves and a subclass of all similarly situated inmates, i.e., all inmates admitted to jails in West Virginia within the class period who, at the time of admission, met the standards of being a qualified individual with a disability under the ADA.

131.     Title II of the ADA, 42 U.S.C. § 12132, provides that "no qualified individual with a disability shall, by reason of disability, be excluded from any participation in or be denied the benefits of the servicers, programs, or activities of a public entity, or be subject to discrimination by such entity."

132.     WVDOCR is a public entity subject to and governed by requirements and prohibitions of Title II of the ADA.

133.     In violation of the ADA and 28 C.F.R. § 35.130(b), Defendant has committed and is continuing to commit unlawful acts of discrimination, including:

(a)     failing to afford qualified individuals with disabilities an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

(b)     providing qualified individuals with disabilities with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

(c)     utilizing criteria or methods of administration that have:

    (i)     the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; and

    (ii)     the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities.

(d)     Failing to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability; and

(e)     Imposing or applying eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity.

134.    Plaintiffs Baxley and Jones and the absent members of the class are qualified persons with disabilities protected against discrimination on the basis of their disabilities by the Americans with Disability Act.

135.    As alleged herein, by failing to implement a policy or procedure to provide appropriate medical and mental health services immediately upon entry to the State's jails, Defendant Jividen has previously and continues to violate Title II of the ADA and its implementing regulations, through a pattern and practice of discrimination; inadequate and discriminatory methods of state-wide administration and supervision; a continuing pattern and practice of deliberate indifference; and violation of the reasonable accommodation requirement of federal law.

136.    Therefore, Defendant Jividen has discriminated and continues to discriminate against plaintiffs and the absent members of the subclass in violation of 42 U.S.C. § 12132 and other substantive requirements and prohibitions of the ADA and its implementing regulations.

**WHEREFORE**, Plaintiffs, on behalf of themselves and other similarly situated individuals, respectfully request that this Court:

(a)    Certify the subclass pursuant to Federal Rule of Civil Procedure 23;

(b)    Declare defendants in violation of the federal laws as explained above;

(c)    Enjoin defendants' illegal discrimination and continuing violations of law, and require implementation of policies and procedures that protect inmates' rights under the ADA, including but not limited to creating a fully staffed ADA compliance office within WVDOCR, which is tasked with monitoring and ensuring the rights of inmates with qualifying disabilities are being met;

(d)    Award attorney's fees and costs incurred during the course of this litigation, pursuant to 42 U.S.C. § 1988; and

(e)    Grant such other and further relief to which plaintiffs or the class or subclass members may be entitled in law or equity.

## COUNT III
## VIOLATIONS OF THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION
## PHYSICAL CONDITIONS OF CONFINEMENT
## (42 U.S.C. § 1983)

137.    Plaintiffs incorporate the proceeding paragraphs by reference.

138.    Plaintiffs bring this claim on behalf of themselves and class of all similarly situated individuals, i.e., all inmates admitted to Western Regional Jail from December 18, 2018 and prospectively.

139.    Defendants, while acting under the color of law, violated the Eight Amendment right of convicted inmates to be free from cruel and unusual punishment, and the Fourteenth Amendment right of pretrial detainees to be free of punishment without due process, by denying Plaintiffs and all similarly situated inmates the minimal civilized measure of life's necessities.

140.    As described herein, Plaintiffs and all similarly situated inmates at Western Regional have suffered and continue to suffer serious deprivations of basic human necessities, including sanitary living conditions, basic hygiene products such as soap and toilet paper, a bed to sleep on with basic bedding, and access to basic cleaning supplies and laundry facilities.

141.    Defendants imposed and/or permitted these conditions despite these conditions not being reasonably related to a legitimate non-punitive governmental objective.

142.    Defendants were deliberately indifferent to the health, safety, and other basic needs as described herein of Plaintiffs and all similarly situated inmates, having been notified of and having actual knowledge of such conditions and deliberately taking no action to remedy them in a timely or appropriate manner.

143.    The actions of the Defendants were in violation of clearly established law.

144.     The Eighth Amendment to the United States Constitution prohibits the cruel and unusual punishment of inmates, including through depriving inmates of basic human needs.

145.     The Fourteenth Amendment to the United States Constitution forbids punishing pretrial detainees without due process of law, including by imposing arbitrary conditions which are not reasonably related to a non-punitive governmental purpose.

146.     During the time period at issue, it was clearly established that the serious deprivation of basic human needs as described herein violated the Eighth and Fourteenth Amendments to the United States Constitution.

147.     As a direct or proximate result of the Defendants' unconstitutional actions or inactions, Plaintiffs and other similarly situated inmates suffered harm including physical pain; loss of sleep; development of medical conditions, including septic infections, due to the unsanitary conditions; and embarrassment, humiliation, anxiety, and emotional distress.

148.     The actions of the Defendants were committed under the color of state law, and were unreasonable, deliberate, and deprived Plaintiffs and other similarly situated inmates of clearly established constitutional rights of which a reasonable prison administrator should have known.

**WHEREFORE,** Plaintiffs, on behalf of themselves and other similarly situated inmates, request that the Court:

(a)     Certify the class pursuant to Federal Rule of Civil Procedure 23;

(b)     Declare that Defendants' actions and/or inactions as stated herein violate the Eighth and Fourteenth Amendments to the United States Constitution;

(c)     Enjoin Defendants from engaging in unconstitutional practices as set forth herein, and require Defendants to implement or enforce policies,

procedures, and practices necessary to ensure the minimal civilized measure

of life's necessities are provided to all inmates housed in Western Regional

Jail;

(d)     Award attorney's fees and costs incurred during the course of this litigation,

pursuant to 42 U.S.C. § 1988; and

(e)     Grant such other and further relief to which plaintiffs or the class or subclass

members may be entitled in law or equity.

**Respectfully Submitted,**
**JOHN BAXLEY, JR., ERIC L. JONES,**
**and SAMUEL STOUT, on behalf of**
**themselves and other similarly situated**
**inmates,**

By Counsel:

/s/ Lydia C. Milnes
Lydia C. Milnes (State Bar No. 10598)
Jennifer S. Wagner (State Bar No. 10639)
Mountain State Justice, Inc.
325 Willey Street
Morgantown, WV 26505
Phone: (304) 326-0188
Facsimile: (304) 326-0189
lydia@msjlaw.org
*Counsel for Plaintiffs*