## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**JOHN BAXLEY, JR.,** *et al.*,

       **Plaintiffs,**

**v.**                      **Civil Action No. 3:18-cv-01526**
                                    **(Chambers, J.)**

**BETSY JIVIDEN,** *et al.*,

       **Defendants.**

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
### EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

In opposition to Plaintiffs' Emergency Motion for Preliminary Injunction Regarding Defendants' Prevention, Management, and Treatment of COVID-19, Defendants state as follows:

### I.  OVERVIEW AND SUMMARY OF ARGUMENT

Plaintiffs' seek three forms of relief: 1) an order requiring Defendants "to develop, disclose, and implement a plan that undertakes all appropriate actions to protect Plaintiffs;" 2) "an order directing WVDCR to release a sufficient number of inmates [to] reduce overcrowding;" and, 3) an order requiring "appropriate social distancing within the jails and prisons to protect medically vulnerable inmates as well as those who remain incarcerated and correctional staff."  The motion is nothing but a recycled version of a similar motion seeking a TRO/habeas corpus relief recently denied by a Federal Court in Washington based upon some of the exact same evidentiary support. Plaintiffs fail to identify the source of their evidentiary support and also fail to inform this Court that an attempt to seek similar relief has already failed using the same evidence.

Moreover, Plaintiffs' motion is completely unfounded because it raises new claims that are not within the scope of the Amended Complaint and which did not exist until after the filing of the Amended Complaint.  Plaintiffs are not permitted to simply bootstrap their COVID-19 claims into

an existing case.  Instead, these new claims could only be considered by this Honorable Court after a successful motion to amend under Rule 15 of the Federal Rules of Civil Procedure.

In addition, Plaintiffs' motion is based upon the false premise that WVDCR currently does not have an adequate plan in effect to deal with the COVID-19 pandemic.  Plaintiffs are well-aware of the fact that WVDCR already has a plan in effect to deal with the COVID-19 pandemic.  Counsel for Plaintiffs has even acknowledged that this plan may be "adequate" and that the motion for emergency relief is based upon nothing other than her assumption that it may be "inadequate" simply because she has not seen it.  This does not come even close to meeting the standard required to justify application of the extraordinary remedy of a preliminary injunction.

For security and public safety reasons, the Policy Directive related to the COVID-19 pandemic is confidential, and the WVDCR has declined all requests by the ACLU and others to publicly disclose it.  Defendants affirmatively represent to the Court that each and every one of the 12 "bullet point" concerns of Plaintiffs identified in their emergency motion are either affirmatively addressed by the Policy Directive and related memoranda, or are non-issues due to current policy and practice of WVDCR.

In the alternative, Defendants suggest that a narrow order, requiring the Defendants to file the Policy Directive under seal and to permit this Court to review it *in camera* is all that is necessary.  Should this Court undertake this *in camera* review, it will be able to see for itself that all of Plaintiffs' concerns stated in their emergency motion are already affirmatively addressed.

There are two additional major impediments to the relief requested.  First, Plaintiffs are not seeking a traditional prohibitory injunction that would maintain the *status quo*.  They are seeking a mandatory injunction that would require Defendants to take affirmative action such as developing a COVID-19 plan that meets their specifications.  They also seek the release of inmates

2

and enforcement of social distancing policies.  As a general rule, mandatory injunctions are disfavored.  Second, this Court's ability to issue an injunction in this case is severely restricted by the provisions of the Prison Litigation Reform Act of 1995.  Specifically, under 18 U.S.C. § 3626(a)(1)(A), this Court is required to narrowly draw any injunction so that it "extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right" and any such injunction is for a limited period of time.  Further, under § 3626(a)(3), this Court has no authority to release an inmate, as that remedy is restricted to a three-judge court, and only after a previous less restrictive order has been entered.  Based upon the provisions of the PLRA, as more fully discussed herein, this Court should deny the Plaintiffs' motion.

Finally, Defendants respectfully submit that this motion is nothing but an improper attempt to use this Court as a de facto appeal of the FOIA process.  For these reasons, as more fully discussed herein, this Court should deny the Plaintiffs' motion.

## II.  LAW AND ARGUMENT

### A.      Standard of Review for a Preliminary Injunction.

As this Court has previously noted: "preliminary injunctions are extraordinary remedies involving the exercise of very far reaching power to be granted only sparingly and in limited circumstances."  *Wei-Ping Zeng v. Marshall University*, 2018 U.S. Dist. LEXIS 46151, 2018 WL 1410418 (S.D. W.Va. 2018).   The party seeking injunctive relief "bears the burden of demonstrating, by a clear showing, his entitlement to relief."  *Id.* (citing *Winter v. NRDC, Inc.,* 555 U.S. 22 (1974)).  As this Court has further noted: "[w]hen assessing the appropriateness of a preliminary injunction, the threshold determination is the plaintiff's showing that irreparable harm

is likely to occur if the injunction is not granted." *Wei-Ping Zeng* at pp. 40-41 (citing *Hughes Network Sys., Inc. v. InterDigital Communications Cor.,* 17 F. 3d 691 (4th Cir. 1994)).

Furthermore, as discussed at length herein, the Plaintiffs' request for emergency injunctive relief is not based upon any actual evidence. Rather, it is based upon Plaintiffs' speculative concerns about the mere possibility of harm. However, a plaintiff must establish "more than just the 'possibility' of irreparable harm," and injunctive relief is only appropriate based upon a "clear showing that the plaintiff is entitled to relief." *Di Biase v. SPX Corp.,* 872 F. 3d 224 (4th Cir. 2017). Plaintiffs fail to meet this standard and their motion should be denied.

Finally, this Court should be mindful of the fact that mandatory injunctions, particularly in the prison context that seek to alter the status quo, are disfavored. As Judge Goodwin recognized in *Murray v. Terry*, 2018 U.S. Dist. LEXIS 122262 (S.D. W. Va. 2018) at pp. 5-6:

> "[I]n the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Barnett v. Young*, No. 5:18-cv-279, 2018 U.S. Dist. LEXIS 117088, 2018 WL 3405415, at *2 (S.D. W. Va. June 21, 2018). …"

> Ordinarily, preliminary injunctions are issued to 'protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits.'" *Perry v. Judd*, 471 F. App'x 219, 223 (4th Cir. 2012) (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir.2003)). These are known as "prohibitory injunctions." Here, the plaintiff seeks not to preserve, but instead to alter the status quo by requesting transfer from MOCC to a different WVDOC facility. Pl.'s Mot. 1. This type of injunction is known as a "mandatory injunction." Courts disfavor mandatory preliminary injunctions, and they are "warranted only in the most extraordinary circumstances." *Perry v. Judd*, 471 F. App'x 219, 223 (4th Cir. 2012).

As discussed more fully herein, a mandatory injunction, such as requested by Plaintiffs, should not be granted in this case.

Also relevant is the four-part test for granting a preliminary injunction set forth in *In re Microsoft Corp. Antitrust Litig.,* 333 F.3 517 (4th Circ. 2003) under which the Court must consider:

4

"1) the likelihood of irreparable harm to the plaintiff if a preliminary injunction is denied; 2) the likelihood of harm to the defendant if the injunction is granted, 3) the likelihood that the plaintiff will succeed on the merits, and 4) the public interest." *Id.*

**B.    Added Considerations of the Prison Litigation Reform Act ("PLRA")**

Plaintiffs' motion must also be considered under the restrictions imposed by the PLRA. The Fourth Circuit in *Alexander S. v. Boyd*, 113 F.3d 1373, 1380 (4th Cir. 1997) *cert. denied*, 522 U.S. 1090 (1998), first discussed these restrictions when the law was enacted and it noted the following limitations:

> Section 802 limits the remedies available in actions challenging conditions of confinement brought under any Federal law, as in this action, which was brought under 42 U.S.C.A. § 1983. Commonly known as the "Stop Turning Out Prisoners" (STOP) provisions, § 802 limits a federal court's ability to grant prospective relief. Specifically, § 802's provisions restrict preliminary injunctive relief, see 18 U.S.C.A. § 3626(a)(2); prohibit the imposition of population caps except as a last resort, see 18 U.S.C.A. § 3626(a)(3); allow for the immediate termination of prospective relief after a limited time, see 18 U.S.C.A. § 3626(b); restrict approval of consent decrees, see 18 U.S.C.A. § 3626(c); require prompt judicial decisions on motions to modify or terminate relief, see 18 U.S.C.A. § 3626(e); and limit the authority and payment of special masters, *see* 18 U.S.C.A. § 3626(f)….
>
> In an attempt to stem the tide of frivolous lawsuits initiated by federal and state prisoners, Congress passed § 803 of the PLRA (codified at 42 U.S.C.A. § 1997e), which places new procedural  restrictions on lawsuits "with respect to prison conditions" whether brought under § 1983 or any other Federal law by "a prisoner confined in any jail, prison, or other correctional facility." In addition to mandating administrative exhaustion, § 803 of the PLRA, entitled "Suits by prisoners," provides for the immediate dismissal of frivolous lawsuits, see 42 U.S.C.A. § 1997e(c); limits recovery for mental and emotional injuries, see 42 U.S.C.A. § 1997e(e); limits the removal of a prisoner from confinement during pretrial proceedings, see 42 U.S.C.A. § 1997e(f); allows the waiver of the right to reply to prisoner lawsuits, see 42 U.S.C.A. § 1997e(g); and, as is pertinent to this action, restricts the availability and amount of attorney's fees recoverable by prisoners under 42 U.S.C.A. § 1988, see 42 U.S.C.A. § 1997e(d).

Here Defendants note the following impediments under the PLRA to the Plaintiffs' motion in this case:

5

- There is no showing that Plaintiffs have exhausted their administrative grievance remedies prior to filing this motion, as required under 42 U.S.C. § 1997e(a);

- To the extent Plaintiffs are requesting that this Court issue an order directing Defendants to release any inmates or pretrial detainees, the Defendants have no such authority, as stated in its other Response filed this date (Doc 167), and said order would be in violation of the provisions of 18 U.S.C. § 3626 (a)(1)(B) that precludes any order "requires or permits a government official to exceed his or her authority under State or local law. . .;"

- Under 18 U.S.C. § 3626 (a)(2) no preliminary injunction shall issue unless the court "shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief;"

- Under 18 U.S.C. § 3626 (a)(2) no preliminary injunction may exceed ninety-days, unless specific findings may be made, and such findings should not be made in this case; and,

- To the extent that Plaintiffs are seeking an order of release of inmates and pretrial detainees, under 18 U.S.C. § 3626 (a)(3) a court must first enter an order providing for "less intrusive relief," and only after that fails to work, may a three-judge court consider an order for release.

Finally, an additional consideration for this Court arises under *O'Dell v. Netherland*, 112 F.3d 773, 776-77 (4th Cir. 1997), wherein the Court of Appeals admonished district courts that it was not their job to micromanage state prisons:

> [e]ssentially, the district court subjected the State's informed security judgment to the very kind of "inflexible strict-scrutiny analysis," which the Supreme Court has repeatedly held impermissibly hamstrings prison administrators in their efforts "to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Casey*, 116 S. Ct. at 2185 (quoting *Jones v. North Carolina Labor Union, Inc*., 433 U.S. 119, 128, 53 L. Ed. 2d 629, 97 S. Ct. 2532 (1977)). As we have repeatedly held, on instruction from the Supreme Court, it is not for the federal courts to so micromanage the Nation's prisons. *Taylor v. Freeman*, 34 F.3d 266 (4th Cir. 1994).

With the Plaintiffs requesting relief in terms of a COVID-19 policy that meets their specified parameters and their request that social distancing policies should be imposed by this Court, they are really requesting that this Court micromanage the West Virginia prisons and Regional Jails. This Court should respectfully reject the Plaintiffs' motion on this basis.

### C.     Factual Background.

As of this date, there are no known or confirmed employee or inmate cases of COVID-19 in either the Regional Jails or Prisons of West Virginia.  Despite the lack of cases, WVDCR has been proactive in its response to the COVID-19 Pandemic.  This due in large part to WVDCR's efforts to address and proactively take appropriate steps, formal and informal, that began before the recent extraordinary measures involving the general public. On March 11, 2020, WVDCR Commissioner Betsy Jividen sent the first formalized memorandum to all WVDCR employees regarding COVID-19.  *See* Jividen affidavit attached as **Exhibit 1**.  In that memorandum, Commissioner Jividen noted that "we are mindful of the need to reduce the risk and protect the health and safety of our employees, populations, volunteers, contractors, and others who enter our facilities and do business with us."  *Id.*  The memorandum outlined certain "proactive guidelines and controls" based upon input and guidance from the Center for Disease Control ("CDC") and certain West Virginia health agencies. *Id.*  The memorandum provided historical background regarding COVID-19 and also set forth policies regarding: 1) good health habits and sanitation; 2) frequent hand washing and/or sanitizing; 3) respiratory (coughing and sneezing) etiquette; 4) avoiding touching the face, eyes, nose and mouth; 5) increased emphasis on disinfection of "high touch" areas; 6) screening of inmates, employees, contractors, volunteers, and others; 7) cancellation of "non-attorney" in-person visits; and 8) approval of the use of electronic visitation and telephone calls. *Id.*  In addition, the memorandum directed that all job-related out-of-state and international travel for employees was cancelled until further notice. *Id.*  Employees that were sick or showing flu-like symptoms were also instructed to stay home, contact their medical providers, and be tested.  *Id.*

The memorandum also mandated health care administrators to provide supervisors with the training needed to conduct daily screenings of employees reporting to work.  *Id.*  Employees under movement restriction were not to be permitted to return to work until the completion of an appropriate monitoring period.  *Id.*  The memorandum also contained:

- information and strategies designed to eliminate or minimize out-of-pocket expenses to employees related to testing for COVID-19 and insurance deductibles;

- information to employees regarding mental health support and a "hotline" for those suffering from fear or stress over the COVID-19 pandemic;

- instruction and policies related to the screening of contractors, vendors and volunteers; and

- instructions and policies regarding the use of respirator masks for medical personnel and WVDCR employees.  *Id.*

Thereafter, on March 20, 2020, Commissioner Jividen issued a second comprehensive Policy Directive entitled "COVID-19 RESPONSE PLAN" incorporating additional information, policies, instructions, and procedures based upon evolving guidance from multiple governmental and medical sources.  *Id.*  The COVID-19 Response Plan is confidential for security and public safety reasons.  *Id.*  The Policy Directive sets forth specific, comprehensive policies regarding administration and coordination, communication and education, preventative measures, policies regarding visitors, volunteers, contractors, and lawyers, employee/inmate screening, management and testing of respiratory illness victims, personal protective equipment, transportation of inmates, isolation and cohorting of symptomatic persons, care for the sick, and quarantine.  *Id.*

Even more recently, on March 26, 2020, Commissioner Jividen addressed a memorandum to all facility superintendents and directors discussing "Interim Guidance from the Centers for Disease Control and Prevention."  *Id.*  The purpose of the memorandum was to disseminate a document from CDC entitled "*Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities.*"  The CDC memorandum is attached hereto

as **Exhibit 2**. As the Court can see, this CDC memorandum addresses, among other things, specific "guidance" to correctional and detention facilities related to COVID-19 and outlines certain "best practices" related to: 1) operational and communications preparations for COVID-19; 2) enhanced cleaning and disinfecting and hygiene practices; 3) social distancing strategies; 4) visitor policies; 5) infection control; 6) screening for inmates, staff and visitors; 7) medical isolation/cohorting; 8) healthcare for suspected cases; 9) clinical care; and 10) considerations for high risk persons. *Id.*

While Plaintiffs now move this Court to order Defendants to adopt a COVID-19 plan, Plaintiffs have at the same time acknowledged that WVDCR has already adopted a plan to deal with COVID-19. *See* March 23, 2020 email from Plaintiffs' counsel attached as **Exhibit 3**.[1] Incredibly, Plaintiffs' counsel even acknowledged in that email that the plan may be "adequate." *Id.* Thus, this emergency motion is based solely upon speculation that the plan may somehow be inadequate and/or Plaintiffs' dissatisfaction with not being provided with a copy of the COVID-19 Policy Directive.

### C. Plaintiffs' motion is just a recycled "kit motion" that already failed in another jurisdiction.

While Plaintiffs do not disclose the source of their arguments or evidentiary support in this case, Defendants have learned that the motion and all of the declarations related to it are available on the internet and are being indiscriminately used in numerous cases across the country. Most significantly, the affidavits submitted to the Court by Plaintiffs were used in conjunction with another similar case in the State of Washington in which the ACLU was unsuccessful in its attempt to obtain a temporary restraining order ("TRO"). Attached as **Exhibit 4** is a motion for TRO filed by the American Civil Liberties Union ("ACLU") in the case styled *Karlena Dawson et al. v.*

---

[1] It is noted that this email was redacted in part because it related to negotiations over the ninety-day extension requested by Defendants and other matters not pertinent to the Plaintiffs' motion.

*Nathalie Asher et al.*¸ Case No. 2:20-cv-409 in the United States District Court for the Western District of Washington.  As the Court can see, the text of the substantive legal arguments made in that case on pages 12-13 are identical to the text of the arguments made by Plaintiffs in the instant motion at pages 10-11.  In addition, the declarations of Dr. Robert B. Greifinger (Exhibit 2 to Plaintiffs' motion, Doc 161-2); Dr. Marc Stern (Exhibit 3 to Plaintiffs' motion, Doc 161-3); and Dr. Jonathan Golob (Exhibit 5 to Plaintiffs' motion, Doc 161-5) are identical to the declarations offered from these same physicians in support of the unsuccessful motion for TRO in *Asher.  See Asher* declarations of Greifinger, Stern, and Golob attached hereto as **Exhibits 5, 6, and 7**, respectively.[2]  Even more importantly, Plaintiffs failed to disclose that a substantively identical motion for a TRO was denied by the District Court in *Asher* upon consideration of much of this same "evidence" after the Court found that there was insufficient evidence to support a finding of "irreparable harm."  *See* Order in *Asher* denying a TRO attached as **Exhibit 8**.

Attorneys generally owe a duty of candor to both the Court and the litigants.  At the "heart of the general duty of candor" is an attorney's "continuing duty to inform the Court of any development which may conceivably affect the outcome of the litigation." *Tiverton Board of License Com's v. Pastore*, 469 U.S. 238 (1985).  The law is also clear that the duty of candor is violated by "the concealment of material information" and not just an "overt false statement." *Gum v. Dudley*, 202 W. Va. 477, 505 S.E.2d 391 (1977) (additional citations omitted).

---

[2] Upon information and belief, some of the same declarations relied upon by Plaintiffs herein (Golob, Meyer and Stern) are also available online as part of a COVID-19 kit established by the National Juvenile Defender Center (NJDC).  *See* https://njdc.info/our-work/juvenile-defense-resources/.  The undersigned was not able to obtain actual copies of the referenced declarations because to get access, one must represent that they are a "certified JTIP trainer" or "practicing juvenile defense attorney."  *Id.*  The Court may also note that identical declarations for Stern, Golob, Greifinger, and Meyer were filed in the Eastern District of California in support of a Motion requesting revocation of a Pretrial Detention Order in *United States v. Toro,* Civil Action No. 1:19 CR 256 NONE/SKO (Doc. 145).  Undersigned counsel has found other cases through the internet where some of the identical declarations in this case were filed as well.

In the instant case, one would have expected a candid Plaintiffs' counsel to disclose at a minimum: 1) that some or all of their evidentiary support came from other cases; 2) that none of the expert affidavits submitted are based upon an analysis of the WVDCR system, resources, practices, and policies; and 3) that a similar motion filed before another Federal Court and based upon the same evidentiary support was previously denied. Based upon the above, this Court should take notice of the fact that the instant motion is nothing but a recycled attempt to seek relief that has already been rejected by another Federal Court considering much of the same evidence. This Court should likewise reject the motion in this case.

**D.      Plaintiffs' Motion Must be Denied as it is Not Relevant to this Case.**

Plaintiffs' emergency motion must also be denied because it has nothing to do with the present case. In their "First Amended Class Action Complaint for Injunctive and Declaratory Relief," Plaintiffs set forth in the first paragraph the following summary of their claims:

> [s]pecifically, ***plaintiffs seek to ensure that jails in West Virginia promptly provide appropriate and necessary medical and mental health treatment to inmates upon admission***, as required under the Eighth and Fourteenth Amendments….In addition, the named plaintiffs, who are all housed at Western Regional Jail and Correctional Facility ("Western Regional") in Barboursville, West Virginia, bring this action on behalf of inmates housed at Western Regional stemming from the Defendants' violation of the Eighth and Fourteenth Amendments to the United States Constitution for deliberate indifference to plaintiff's health and safety ***as a result of the conditions of confinement in that facility.***

Document 14-1 at ¶ 1. Thus, this case as pled is about only two things: 1) statewide claims related to how inmates generally receive medical and mental health treatment upon admission; and 2) general conditions of confinement at Western Regional Jail.

Plaintiffs are now improperly attempting to bootstrap claims related to the COVID-19 pandemic that have nothing to do with the claims previously pled and which claims did not even exist at the time the Amended Complaint was filed. However, the law is clear that "a plaintiff may

not raise new claims after discovery has begun without amending his complaint." *Wahi v. Charleston Area Medical Center*, 562 F.3d 599 (4th Cir. 2009) (citing *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.,* 262 Fed. APPX. 556 (4th Circ. 2008) (additional citations omitted). Discovery has more than "begun" in this case.  Plaintiffs have not even attempted to amend their Complaint to assert claims related to COVID-19.  The emergency motion for injunctive relief must be denied as it attempts to seek adjudication of claims not properly before this Court.[3]

### E.    Plaintiffs' motion must be denied as WVDCR already has in place an adequate "plan" related to the COVID-19 pandemic.

Plaintiffs' emergency motion is based upon the false premise that WVDCR has no plan for the prevention and management of COVID-19.  However, two days before filing the emergency motion, counsel for Plaintiffs stated in an email to Defendants' counsel: "in regard to the ID/COVID-19 plan, we appreciate you sending us the 2016 policy.  We understand, however, that a specific policy was put in place for the pandemic on March 20, which you have not provided." *See* March 23, 2020 email attached as **Exhibit 3**.

Thus, Plaintiffs are in effect asking this Court to order the creation of a policy that they know already exists.  Once again, counsel for Plaintiffs are demonstrating a lack of candor towards this Court.  At a minimum, the duty of candor required Plaintiffs to acknowledge that they know a WVDCR plan for dealing with COVID-19 exists, but they have concerns that it is not adequate and/or not being publically disclosed.  Instead they have ignored the undisputed fact that plan exists and improperly asked this Court to order Defendants to promulgate one under its supervision.

---

[3] It should be noted that counsel for Plaintiffs have by the filing of this motion ironically diverted attention, efforts, and resources of WVDCR away from dealing with the COVID-19 pandemic so that they can properly respond to a baseless emergency motion that seeks only to accomplish things that they know or should know have already been accomplished.

**F.      Plaintiffs' speculation that the plan adopted by WVDCR "may" be inadequate is not a proper basis for injunctive relief.**

Plaintiffs fall far short of the standard required to obtain a preliminary injunction because they cannot prove "irreparable harm."  Counsel for Plaintiffs acknowledges in **Exhibit 3** that WVDCR has, in fact, adopted a specific plan for dealing with the COVID-19 pandemic.  Plaintiffs do not know that the plan is inadequate but rather admit that they simply must "assume" it is inadequate since they do not have a copy of it.  *See* **Exhibit 3**.  Plaintiffs' counsel has even acknowledged that the plan adopted by WVDCR might very well be "adequate." *Id.*   An assumption of harm falls far short of meeting the standard for the extraordinary remedy of a preliminary injunction.  In fact, the law is clear that a plaintiff must establish "more than just the 'possibility' of irreparable harm," and injunctive relief is only appropriate based upon a "clear showing that the plaintiff is entitled to relief."  *Di Biase v. SPX Corp.,* 872 F. 3d 224 (4th Cir. 2017).

As stated, Plaintiffs have selectively failed to identify for the Court a motion for TRO that failed based upon the same evidentiary support, but they did not hesitate to bring to the Court's attention "supplemental authority" (Doc 166), an order recently issued in *Basank v. Decker,* 20-civ-2518 (S.D.N.Y. Mar. 26, 2020).  However, that Order had nothing to do with the issues before this Court, i.e., whether it should order Defendants to adopt some type of COVID-19 action plan.  Rather, the Order in *Basank* dealt with the actual release of several ICE detainees[4] who were suffering from various "chronic medical conditions."  Order at p. 2.  Moreover, the Order in *Basank* specifically notes that the affected persons were "housed in New Jersey county jails where either detainees or staff have tested positive for COVID-19."  No inmates or staff in any West Virginia

---

[4] It is obviously an important distinction that the "detainees" in *Basank* were not "inmates" and that unlike the majority of Plaintiffs herein, they had not been charged, arraigned, and/or convicted of a specific criminal act.

jail or prison have yet tested positive for COVID-19. As the Court is also aware, West Virginia has the distinction of being the last state to have a person diagnosed with COVID-19. *See, e.g.,* https://time.com/5805097/west-virginia-covid-19-testing/. The situation in West Virginia is simply not as pronounced as it is in New York and New Jersey.

It is also worthy of noting that while Plaintiffs (much like the rest of us) are exposed to some risk of contracting COVID-19, this does not automatically support a constitutional claim for "deliberate indifference" to medical needs under the Eighth Amendment or mean that there is an unreasonable risk of harm. *See, e.g., Jackson v. Rikers Island Facility*, 2011 U.S. Dist. LEXIS 84842, 2011 WL 3370205 (S.D.N.Y Aug. 2, 2011) (finding no deliberate indifference when reasonable steps were taken to prevent exposure and provide timely treatment to prisoners experiencing the swine flu and that "exposure to swine flu, in and of itself, does not involve an unreasonable risk of serious damage to future health and does not constitute a deprivation of basic human needs that was objectively sufficiently serious"); *Glaspie v. New York City Dep't of Corr.*, 2010 U.S. Dist. LEXIS 131629, 2010 WL 4967844 (S.D.N.Y Nov. 30 2010) (finding that "mere exposure to swine flu does not involve an unreasonable risk of serious damage…to future health" and did not constitute an Eight Amendment violation); *Ayala v. NYC Dep't of Corr.*, 2011 WL 2015499, *2 (S.D.N.Y. May 9, 2011) (prisoner who contracted swine flu could not prevail on deliberate indifference claim because prison officials took reasonable measures to sanitize contaminated facility and prevent inmate infections); and, *Washington v. Harrington*, 2012 WL 3763964, *2–6 (E.D. Cal. Aug. 29, 2012), aff'd, 549 F. App'x 679 (9th Cir. 2013) (inmate suffering from asthma could not state deliberate indifference claim where symptoms of swine flu were recognized and monitored and inmate was transferred outside of prison for treatment).

As noted by the Fourth Circuit in *Johnson v. Quinones,* 145 F.3d 164 (4th Cir. 1998), to establish a claim of "deliberate indifference," the prisoner must prove two elements: "1) that objectively the deprivation of a basic human need was sufficiently serious, and 2) that subjectively the prison officials acted with a sufficiently culpable state of mind." *Id.* (citations omitted). The "objective" component is "satisfied by a serious medical condition." *Id.* at p. 167. The "subjective" component is satisfied by proof of "something more than negligence but is satisfied by something less than the acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* On the other hand, governmental officials "may be found free from liability if they responded reasonably to a perceived risk." *Parrish v. Cleveland,* 372 F. 3d 294 (4th Circ. 2004).

In the instants case, no Plaintiff or inmate has yet to be diagnosed with COVID-19 and the existence of only the fear that they someday may be exposed to or contract COVID-19 is not sufficient to satisfy the objective component. *See, also, Quarles v. De La Cuesta*, 1993 U.S. Dist. LEXIS 3575, 1993 WL 86460 (E.D. Pa. 1993) (finding that mere "fear of exposure" to tuberculosis was insufficient to establish a constitutional claim) and *Wash v. Gilless*, 2000 U.S. App. LEXIS 11578 (6th Circ. 2000) (finding that an inmates "subjective fear" of being exposed to HIV was not sufficient to establish a "serious medical need"). Plaintiffs likewise cannot establish the "subjective" component of a deliberate indifference claim insofar as there has been no diagnosis of COVID-19 within the jail and prison system in West Virginia; but, more importantly, because Defendants already have a plan in place that is reasonable to deal with COVID-19 in the unfortunate event that it does so arise.

**G.    The WVDCR COVID-19 plan already in place adequately addresses each and every one of Plaintiffs' specified concerns.**

Plaintiffs ask for this Court to order Defendants to implement a plan that addresses the following 12 specific issues or concerns: 1) Inmate education; 2) Staff education; 3) Requiring staff experiencing any COVID-19 symptoms to stay home until tested or for 14 days; 4) Staffing for running the facilities safely as staff stays home sick or quarantined; 5) Staffing plans for services provided by the inmates themselves as inmates get sick; 6) Screening, testing, treatment and housing of imates; 7) Plans for "additional precautions" to prevent the exposure of vulnerable populations within the facilities to the virus; 8) Housing of inmates exposed to the virus; 9) Provision of hygiene and cleaning supplies to all inmates; 10) Enhanced plans for cleaning shared spaces and items (such as phones) in between each inmate's use; 11) Coordination with community hospitals and among the correctional facilities in the state; and 12) Plans for removal of charges for telephone calls or other methods of communication and psychological support for inmates while visitation is eliminated.  See Motion, Doc 161 at pp. 12-13.

However, all of these specific issues and concerns are already adequately addressed in the existing Policy Directive that was put into place by Commissioner Jividen on March 20, 2020, and/or in the internal memoranda described above dated March 11, 2020, and March 26, 2020. Attached as **Exhibit 1** is the affidavit of Commissioner Jividen in which she states that her COVID-19 Policy Directive and the related memoranda specifically address, among other things, inmate and staff education, work stoppage by employees with COVID-19 symptoms, increased staffing of inmates in critical areas such as sanitation and food service, the screening, testing, and treatment of inmates, plans to prevent or minimize exposure and spread of the virus, the quarantining of exposed inmates, plans for extra sanitation with respect to frequently touched surfaces and items, and coordination with community hospitals.  *Id.*

16

WVDCR has lawful security and public safety reasons for choosing not to disclose to the public its policy directive regarding COVID-19.[5]  However, Defendants are willing to disclose the Policy Directive for *in camera* review by the Court if so ordered.

If this Court undertakes this *in camera* review, it will see that all of Plaintiffs' concerns are all already reasonably, adequately, and specifically addressed by the plan.  More specifically, each "bullet point" concern from Plaintiffs' motion is addressed separately as follows:

- Regarding inmate/staff "education" (concerns 1 and 2), the Policy Directive is itself educational and provides information regarding the history and nature of COVID-19.  *Id.* at pp. 1-4.  It also contains provisions related to the educating of staff and inmates.  *Id.* at pp. 4-5.  Also, both the March 11, 2020 memoranda and the CDC memoranda attached as **Exhibit 2** contain educational information conveyed to employees of WVDCR.  *Id.*

- Regarding Plaintiffs' concern number 3 (requiring staff who are experiencing symptoms to stay home), the Policy Directive requires staff screening and reporting of symptoms (p. 20), and requires employees to stay home if they are either exposed or sick.  *Id.* at pp. 5-6.

- With respect to Plaintiffs' concern number 4 (staffing plans for keeping facilities running safely as staff stay home), staffing of medical personnel is not undertaken by WVDCR but rather by the contractors hired by WVDCR to provide inmate medical care, Wexford Health Sources, Inc. and PrimeCare Medical, Inc.  Defendants attempted to assert third party claims against those entities as necessary parties but after Plaintiffs objected, this Court denied a motion by Defendants to bring them into this case as third-party Defendants.  Defendants have obtained, through counsel Wexford and PrimeCare's COVID-19 policies or plans for review.  These two companies are in competition in this State and other States, and they have their own business proprietary reasons to not disclose their policies.  To the extent that those third-party policies are deemed relevant and responsive, and to the extent that this Court requires it, Defendants will supplement with this information.

- Regarding Plaintiffs' concern number 5 (staffing plans for services provided by inmates themselves as inmates get sick), the Policy Directive in place has specific provisions for the screening of inmates assigned to work in various parts of each facility with particular emphasis on those working in food service.  *Id.* at p. 8.  The plan also calls for additional staffing of inmates assigned to the duties of cleaning and sanitation.  *Id.* at p. 6.

---

[5] Assistant Commissioner Marvin Plumley will be made available at the hearing to address the security concerns of WVDCR regarding release of its policy directive to the public.  It is difficult to address those concerns without compounding them in a Response available for public review.  It is also noted that the ACLU was advised that the COVID-19 was exempt from FOIA disclosure pursuant to WV Code 29B-1-4 (19).

- With respect to Plaintiffs' concern number 6 (screening, testing, treatment, and housing of plaintiffs and potential class members), the Policy Directive specifically addresses inmate screening (pp. 7-8), testing (p. 8), and treatment (p. 11).  Housing of infected inmates is not addressed in the plan insofar as any inmate diagnosed with COVID-19 will be sent to the hospital for treatment.  *See* Jividen affidavit attached hereto as **Exhibit 1.**

- Regarding Plaintiffs' concern number 7 (plans for "additional precautions" to prevent exposure of vulnerable populations), the Policy Directive has numerous provisions related to measures designed to prevent or minimize the risk or spread of COVID 19.  *See, e.g., id. at* p. 10, section J.  Information addressing these concerns is also discussed in the memoranda from March 11, 2020 and the CDC memorandum attached as **Exhibit 2.**

- With respect to Plaintiffs' concern number 8 (housing of inmates exposed to the virus), the Policy Directive has specific provisions regarding the housing and quarantine of exposed but asymptomatic inmates.  *Id.* at pp. 11-12, Section L.

- Regarding Plaintiffs' concern number 9 (provision of hygiene and cleaning supplies to all inmates), inmates are already automatically provided with regular access to hygiene and cleaning supplies even when there is no pandemic.  The Policy Directive specifically discusses education of inmates and staff as to hygiene (p. 5) and provides for increased frequency of environmental cleaning (p. 6).

- With respect to Plaintiffs' concern number 10 (enhanced plans for cleaning shared spaces and items such as telephones), the Policy Directive specifically addresses these concerns and calls for an increased frequency of cleaning of "frequently touched surfaces" such as telephones and doorknobs.  *Id.* at p. 6.

- With respect to Plaintiffs' concern number 11 (coordination with community hospitals and among the correctional facilities in the state), the Policy Directive specifically addresses the issue of administration and coordination of correctional and health care leadership within the jail and prison system (p. 4), and it also specifically addresses contact and coordination with "local community hospitals" (p. 5).

- Finally, with respect to Plaintiffs' concern number 12 (free phone calls and other methods of contact with loved ones), all inmates are already now permitted to make multiple free telephone calls each week and also now have access to free weekly video visitation with loved ones.  *See* email from Stacy Nowicki, Deputy General Counsel for the Department of Military Affairs and Public Safety to Loree Stark, Legal Director at the ACLU of West Virginia attached as **Exhibit 9**.  These are above and beyond normal policy.

Based upon all of the above, it is clear that application of the four-part test from *Microsoft*, *supra* results in a finding that no preliminary injunction should be issued.  Under the first factor (likelihood of irreparable harm to the plaintiff), this risk is low and certainly not any greater than

18

the risk of the public-at-large.  To date there are no confirmed cases of COVID-19 in the Regional Jail or prison system in West Virginia and, even if a case is confirmed, the plan which Plaintiffs are demanding is already in place.  Regarding the second factor (likelihood of harm to the defendant), this also favors denial of the motion because, in addition to seeking formulation of a plan that already exists, Plaintiffs are also asking this Court to order Defendants to release certain inmates and enforce social distancing policies, that would be tantamount to micromanaging the prison system and contrary to the restrictions in the PLRA.  This dovetails with the fourth factor (public interest) and Defendants respectfully submit that there are obvious public safety issues related to the premature mass release of inmates who are incarcerated by virtue of being accused and/or convicted of a crime against the citizens of the State of West Virginia.  Finally, with respect to the third *Microsoft* factor (likelihood of success on the merits), this is not even applicable here because due to Plaintiffs' failure to seek leave to amend, claims related to COVID-19 have not been pled in this case and therefore the likelihood of success on the merits of those claims is not something that can be analyzed.

**H.    This motion is an improper attempt by Plaintiffs to appeal the denial of a FOIA request by another party before the wrong forum.**

Finally, it should be noted that with respect to the instant motion, Plaintiffs are in effect improperly attempting to use this case as a vehicle to appeal the denial of a FOIA request made by the ACLU.  Plaintiffs specifically rely upon a FOIA request from the ACLU in their motion.  *See* Exhibits 6 and 7 (Doc 161-6 and 7).  The ACLU is not a party to this matter, and any ACLU requests for information are not relevant.  Moreover, even if the FOIA request had come from Plaintiffs, the appropriate remedy was not to seek relief in an existing Federal case but rather to "institute proceedings for injunctive or declaratory relief in the circuit court in the county where the public record is kept."  W.Va. Code § 29B-1-5(1).

Even if Plaintiffs were attempting to appeal their own FOIA request before the appropriate court, the information sought in the request is exempt from disclosure under W.Va. Code § 29B-1-4(a)(19) which exempts:

> [r]ecords of the Division of Corrections….relating to the …policy directives and operational procedures of personnel relating to the safe and secure management of inmates or residents that if released, could be used by an inmate or resident to escape a facility, or to cause injury to another inmate, resident, or to facility personnel.

*Id.* As identified in the attached affidavit of Betsy Jividen, Defendants have legitimate security concerns regarding the public release of its Policy Directive.  These security concerns, and appropriate citation to the FOIA exemption, was provided to the ACLU in addition to a special memorandum from Department of Military Affairs and Public Safety Jeff Sandy addressing non-security sensitive COVID-19 precautions being taken by WVDCR. *See* Exhibits 6 and 7 to Plaintiffs' motion (Doc 161-6 and 7).  Plaintiffs' reliance upon the ACLU FOIA request is nothing but a red herring.

## CONCLUSION

WHEREFORE, based upon the foregoing, Defendants respectfully request that this Court deny Plaintiffs' Emergency Motion For Preliminary Injunction Regarding Defendants' Prevention, Management, and Treatment of COVID-19 and that it order any other further relief that the Court deems just and proper.

**Respectfully submitted on behalf of all Defendants by:**

**LEWIS GLASSER PLLC**

/s/ Webster J. Arceneaux, III
Webster J. Arceneaux, III, State Bar #155
Richard L. Gottlieb, State Bar #1447
James C. Stebbins, State Bar #6674

Valerie H. Raupp, State Bar #10476
Post Office Box 1746
Charleston, WV  25326
(304) 345-2000
FAX: (304) 343-7999
wjarceneaux@lgcr.com

**PATRICK MORRISEY**
**ATTORNEY GENERAL**

 /s/ Briana J. Marino
Briana J. Marino (WVSB #11060)
Assistant Attorney General
1900 Kanawha Blvd., East
Building 1, Suite W-400
Charleston, WV 25305
Telephone: (304) 558-6593
Facsimile: (304) 558-4509
Email: Briana.J.Marino@wvago.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**JOHN BAXLEY, JR.,** *et al.*

        **Plaintiffs,**

**v.**　　　　　　　　　　　　　　　　　**Civil Action No. 3:18-cv-01526**
　　　　　　　　　　　　　　　　　　**(Chambers, J.)**

**BETSY JIVIDEN,** *et al.***,**

        **Defendants.**

## <u>CERTIFICATE OF SERVICE</u>

    I, Webster J. Arceneaux, III, co-counsel for all Defendants, do hereby certify that on this 30th day of March 2020, I electronically served a copy of the foregoing "**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION REGARDING DEFENDANTS' PREVENTION, MANAGEMENT, AND TREATMENT OF COVID-19**" via the CM/ECF system that will send notification to the following counsel of record:

Lydia C. Milnes, Esq.
Jennifer S. Wagner, Esq.
Mountain State Justice
*Counsel for Plaintiffs*

                                   /s/ Webster J. Arceneaux, III_____
                                   Webster J. Arceneaux, III, State Bar #155