IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

JOHN BAXLEY, JR.,
ERIC L. JONES,
SAMUEL STOUT,
AMBER ARNETT,
EARL EDMONDSON,
JOSHUA HALL,
DONNA WELLS-WRIGHT,
ROBERT WATSON,
HEATHER REED, and
DANNY SPIKER, JR.,
on their own behalf and
on behalf of all others similarly situated,

                    Plaintiffs,

v.                              CIVIL ACTION NO. 3:18-1526
                              (Consolidated with 3:18-1533 and 3:18-1436)

BETSY JIVIDEN, in her official capacity as
Commissioner of the West Virginia Division of
Corrections and Rehabilitation and
THE WEST VIRGINIA DIVISION OF
CORRECTIONS AND REHABILITATION, and
CARL ALDRIDGE, in his official capacity as
the Superintendent of Western Regional Jail
and Correctional Facility,

                    Defendants.

**MEMORANDUM OPINION AND ORDER**

       Presently pending before the Court is an Expedited Motion to Unseal Court Records filed

by Intervernor American Civil Liberties Union of West Virginia. *Mot. to Unseal*, ECF No. 188.

Defendants timely filed an expedited Response in Opposition, *Resp. in Opp'n*, ECF No. 196, and

Intervenor did the same with its Reply, *Reply Br.*, ECF No. 197. For the reasons set forth below,

the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## I. RELEVANT BACKGROUND

Intervenor's Motion implicates a very narrow set of facts. On March 25, 2020, Plaintiffs filed an "Emergency Motion for Preliminary Injunction Regarding Defendants' Prevention, Management, and Treatment of COVID-19." *See Mot. for Prelim. Inj.*, ECF No. 161. The Court scheduled an expedited hearing on Plaintiffs' Motion for April 6, 2020, *see Video Mot. Hr'g*, ECF No. 180, and directed the parties to provide the Court with certain pieces of evidence before the hearing. Specifically, the Court directed "Defendants to provide a redacted copy of the Defendants' COVID-19 response plan to the Court, Plaintiffs' counsel, and their expert witness," and for "Plaintiffs to provide a declaration responding to the plan from their expert witness, Dr. Homer Venter, to the Court and Defendants' counsel." *Order*, ECF No. 176, at 1–2. Following receipt of Plaintiffs' response, the Court directed "Defendants to provide—by verified declaration or affidavit—specific responses to each item listed in Paragraph 18 of Plaintiffs' Affidavit." *Order*, ECF No. 179, at 1. These documents were provided to the Court via email.

At the hearing on Plaintiffs' Emergency Motion, the Court directed the parties to provide copies of each document for filing under seal. *See Hr'g Tr.*, ECF No. 195, at 11. Defendants did not object to this order, though the Court noted that it intended to revisit the issue "with input from counsel, of course, at some later date." *Id.* The Court further explained that it had "no difficulty with the proposition of the defendant that there are some matters that, for the security of the facilities, ought to be redacted or not disclosed." *Id.* Nevertheless, the Court "frankly felt that would result in a fairly minimal set of redactions from any of these documents." *Id.* Following the hearing, Defendants provided the Court with copies of each exhibit to be filed under seal and docketed as ECF No. 181.

On April 8, 2020, the Court entered a Memorandum Opinion and Order denying Plaintiffs' request for a preliminary injunction. *See Baxley v. Jividen*, No. 3:18-1526, 2020 WL 1802935 (S.D.W. Va. Apr. 8, 2020). The Court relied heavily on the sealed documents in reaching its decision, as noted at the hearing. *See id.* at *8; *see also Hr'g Tr.*, at 11. Two days after the Court entered its opinion, Intervenor filed the instant Motion to unseal the records docketed as ECF No. 181. *Mot. to Unseal*, at 1–2. In their Response in Opposition, Defendants conceded that five of the nine sealed exhibits should be unsealed, *see* ECF Nos. 1, 4–5, 7–8, but argued that two should be sealed permanently, *see* ECF Nos. 6, 9, and that two should be partially redacted, *see* ECF Nos. 2–3. Intervenor replied by arguing that none of the exhibits should be sealed or redacted, and that any prior redactions to Sealed Exhibit 4 should be removed. *See Reply Br.*, at 4. The issues have therefore been fully briefed and Intervenor's Motion is ripe for the review that the Court now undertakes.

## II. APPLICABLE LEGAL STANDARD

"The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) (citing *Stone v. Univ. of Md. Med. Sys. Corp*, 855 F.2d 178, 180 (4th Cir. 1988)). "The distinction between the rights of access afforded by the common law and the First Amendment is 'significant,' because the common law 'does not afford as much substantive protection to the interests of the press and the public as does the First Amendment.'" *Id.* (internal citation omitted). It follows that "[w]hen presented with a sealing request," the Fourth Circuit Court of Appeals' "right-of-access jurisprudence requires that a district court first 'determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake.'" *Doe v. Pub. Citizen*, 749 F.3d 246,

266 (4th Cir. 2014). This threshold question requires the Court to determine whether the exhibits it relied on in ruling on Plaintiffs' Emergency Motion for a Preliminary Injunction fall under the ambit of the First Amendment right of access or its common law counterpart.

Under the First Amendment's elevated right of access, a district court may seal court documents "only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Stone*, 855 F.2d at 180 (citing *Rushford v. The New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). It follows logically enough that "[t]he burden to overcome a First Amendment right of access rests on the party seeking to restrict access." *Va. Dep't of State Police*, 386 F.3d at 575. Nevertheless, the First Amendment guarantees access "only to particular judicial records and documents," *id.*, such as records relied on in proceedings that act "as a substitute for trial," *Rushford*, 846 F.2d at 252. Notably for the purposes of this case, the Fourth Circuit Court of Appeals has "never held that the public has a First Amendment right of access to" materials related to a "non-dispositive civil motion." *Va. Dep't of State Police*, 386 F.3d at 580.

The common law right of access "does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." *Rushford*, 846 F.2d at 249. Yet the common law makes up for this lack of depth with added breadth, and "presumes a right of the public to inspect and copy '*all* judicial records and documents.'" *Va. Dep't of State Police*, 386 F.3d at 575 (quoting *Stone*, 855 F.2d at 180) (emphasis added). "This presumption of access, however, can be rebutted if countervailing interests heavily outweigh the public interests in access." *Rushford*, 846 F.2d at 253. This is effectively a balancing test that requires courts to consider "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's

-4-

understanding of an important historical event; and whether the public has already had access to the information contained in the records." *In re Knight Publ. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). In any event, "the decision as to access" under the common law standard "is one best left to the sound discretion of the trial court." *Nixon v. Warner Comms., Inc*, 435 U.S. 589, 599 (1978).

The Fourth Circuit Court of Appeals has yet to squarely address whether the First Amendment protects documents filed in relation to motions for preliminary injunctions. *See Va. Dep't of State Police*, 386 F.3d at 580. It follows that there is therefore some ambiguity as to which right of access governs Intervenor's claims. On the one hand, this is not a case where granting Plaintiffs' Emergency Motion for a Preliminary Injunction would constitute a final judgment on the merits of their claims.[1] *See Rushford*, 846 F.2d at 252. Nor is this a criminal case, where documents filed in relation to plea hearings and sentencings are subject to the First Amendment's more rigorous standard. *See In re Washington Post Co.*, 807 F.2d 383, 389 (4th Cir. 1986). On these facts alone, the public's right to access would appear to fall outside the ambit of the First Amendment.

But the Court's analysis is not so simple. As the Fourth Circuit Court of Appeals has noted repeatedly, "preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (internal citations and quotations omitted). The granting or denial of a preliminary injunction—particularly given the factual setting of this case—is precisely the sort of civil matter wherein "the public interest in access . . . may be as strong as, or stronger than, in most criminal cases." *Va. Dep't of State Police*, 386 F.3d at 580 (quoting

---

[1] The Court acknowledges, however, that an extremely broad injunction ordering the release or furlough of prisoners could conceivably moot certain claims.

*Gannett Co v. DePasquale*, 443 U.S. 368, 386 n.15 (1979)). The Court relied heavily on the documents filed under seal in reaching its decision on Plaintiffs' Emergency Motion, as even a cursory review of its earlier opinion makes clear. *See Baxley*, 2020 WL 1802935, at *8. Hovering over all these considerations is the certainty that "'[a]ny step that withdraws an element of the judicial process from public view makes the ensuing decision look more like a fiat and requires rigorous justification.'" *Doe*, 749 F.3d at 266 (quoting *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006)). The extraordinary nature of a preliminary injunction, together with the corresponding public interest, is enough to persuade the Court that the First Amendment's right of access to judicial records must govern its analysis. *See Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984) (analyzing motion to seal records related to a motion for preliminary injunction under the First Amendment); *see also Bayer Cropscience Inc. v. Syngenta Crop Protection, LLC*, 979 F. Supp. 2d 653, 656 (M.D.N.C. 2013) (concluding "that the briefing and exhibits filed in connection with motions seeking injunctive relief are subject to the public's First Amendment right of access"). It is to this analysis that the Court now turns.

### III. DISCUSSION

Before turning to the matters still in dispute, it is worth briefly summarizing those areas where Intervenor and Defendants are already in agreement. First, Sealed Exhibits 4 and 5—Commissioner Jividen's March 20, 2020 Policy Directive and her March 26, 2020 Memorandum and CDC Guidelines, respectively—have already been publicly released "in the same form that they were provided to this Court for consideration." *Resp. in Opp'n*, at 2. There are no redactions on Sealed Exhibit 5, and the public release of Sealed Exhibit 4 in redacted form means the only matter left for the Court's consideration is whether those redactions must be removed.[2] Defendants

---

[2] To be abundantly clear, both parties agree that Sealed Exhibit 4 *may* be unsealed in its

similarly agree that Sealed Exhibits 1, 7, and 8—Commissioner Jividen's Affidavit, Plaintiffs' Expert's Curriculum Vitae, and an occupancy chart of West Virginia jails and prisons—may be released in their entirety. As such, the Court will structure its analysis in three parts and consider (1) whether Sealed Exhibits 2 and 3 must be redacted before their release, (2) whether Sealed Exhibits 6 and 9 may be released at all, and (3) whether redactions must be removed from Sealed Exhibit 4.

### A. Sealed Exhibits 2 and 3

The Court begins with consideration of Defendants' request to redact portions of Sealed Exhibits 2 and 3 before unsealing either document.[3] *Resp. in Opp'n*, at 12–13. Sealed Exhibit 2 is an affidavit signed by Marvin Plumley, Assistant Commissioner for the Bureau of Prisons and Jails, while Sealed Exhibit 3 is an affidavit signed by Debbie Hissom, Director of Correctional Healthcare for West Virginia prisons and jails. Defendants argue that redactions to both documents are necessary to withhold outdated and misleading information about the personal protective equipment ("PPE") that is available at certain facilities.[4] *Id.* at 13. They worry that this information "may prompt inmates to violate disciplinary rules out of misplaced anxiety resulting in potential loss of good time and other privileges." *Id.* (quoting *Second Plumley Aff.*, ECF No. 196-2, at ¶ 13).

As noted *supra*, Defendants bear the burden of overcoming the public's First Amendment right of access. *Va. Dep't of State Police*, 386 F.3d at 575. The first step in doing so requires them

---

current form; Intervenor simply requests that it be unredacted before it is unsealed.

[3] Defendants appear to frequently misstate the number of each sealed exhibit, but context makes clear that they are referring to Sealed Exhibits 2 and 3 when referencing proposed redactions. *See Resp. in Opp'n*, at 12–13 (identifying Debbie Hissom's Affidavit as "Sealed Exhibit 1" and Marvin Plumley's Affidavit as "Sealed Exhibit 6").

[4] Defendants have filed a proposed redacted version of Sealed Exhibit 2—Plumley's Affidavit—as ECF No. 198-1. The redactions are limited to exactly the sort of information Defendants refer to in their Response in Opposition.

to identify a compelling government interest that would be served by their proposed redactions. *See Stone*, 855 F.2d at 180. Simply put, the mere possibility of confusion is insufficient to meet this threshold. For the Court to find that the potential for evidence to mislead the public is a compelling government interest would, for all intents and purposes, vitiate the public's First Amendment right of access to judicial records. Defendants may seek to clarify information they feel is misleading, but that is not a court's role.

The Court is similarly unpersuaded by Defendants' argument that some sort of generalized anxiety (and a resulting spike in disciplinary violations) will pervade West Virginia's jails and prisons as a result of publicizing outdated PPE information. To be sure, inmates may well feel anxiety over the possibility of COVID-19 spreading through their facilities. Yet inmates are already aware of many of the steps Defendants are taking to protect jails and prisons from the virus, and it seems exceedingly unlikely that PPE statistics are likely to substantially change any inmate's reaction to the current pandemic. Even if this were not the case, the Court would not be inclined to find that limiting the worries of inmates and their loved ones by withholding information is a compelling government interest—much less one that outweighs the interest of the public, the staff, and the inmates themselves in accessing judicial records. Barring such a finding, the Court will order Sealed Exhibits 2 and 3 unsealed in their entirety.

## B. Sealed Exhibits 6 and 9

Defendants next contend that Sealed Exhibits 6 and 9 should remain permanently sealed.[5] *Resp. in Opp'n*, at 13–14. Sealed Exhibit 9 is a declaration signed by Plaintiffs' expert witness,

---

[5] Once again, Defendants appear to misstate what sealed exhibits they are referring to. *Resp. in Opp'n*, at 14 (identifying their response to Plaintiffs' Expert's Declaration as "Sealed Exhibit 7"). Once again, the Court relies on context and assumes they are referring to Sealed Exhibit 6.

Dr. Homer Venters, while Sealed Exhibit 6 is Defendants' Response to that Declaration. The crux of Defendants' argument with respect to both sealed exhibits is essentially the same: that Venters' Declaration is unreliable, and that permitting "unfounded, inaccurate, and wholly unsupported speculation about" preparations for COVID-19 in state jails and prisons "could result in unjustified panic and violence in one or more of the facilities." *Id.* (quoting *Second Plumley Aff.*, at ¶ 16). They point to a recent prison riot in Washington as grounds for their concern, *id.* at 14 n.3, and reassert these same fears with respect to their own Response, *Second Plumley Aff.*, at ¶ 17.

In determining whether Defendants have pointed to a compelling government interest that would justify abrogating the public's First Amendment right of access, the Court of course recognizes that avoiding panic and violence in state correctional facilities is a significant concern. Yet generalized criticism of the West Virginia Department of Corrections and Rehabilitation ("WVDCR") is simply not enough to justify sealing judicial records that are central to a court's decision-making. As Defendants are no doubt aware, "[p]risoner litigation continues to account for an outsized share of filings in federal district courts." *Jones v. Bock*, 549 U.S. 199, 203 (2007) (internal quotations omitted). That trend is as apparent in this Court as in any other, encompassing allegations and evidence of unsanitary living conditions, *Hammonds v. Wolfe*, No. 3:18-1377, 2020 WL 1243609, at *1 (S.D.W. Va. Mar. 13, 2020), insufficient supplies, *Salmons v. W. Reg'l Jail Auth.*, No. 3:18-1447, 2019 WL 5616916, at *1 (S.D.W. Va. Oct. 30, 2019), and even the lack of access to lifesaving medical care, *Jeffers v. W. Va. Div. of Corrs. & Rehab.*, No. 3:19-0462, 2020 WL 521851, at *1 (S.D.W. Va. Jan. 31, 2020). Many of these allegations—docketed publicly, all—could conceivably give rise to the same risk of anger and violence that Defendants have pointed to here. Yet this risk is insufficiently compelling to warrant the wholesale sealing of court

filings that are critical of prison conditions, and so it is insufficiently compelling to do so with Dr. Venters' criticisms here.

In any event, the Court believes that the strength of Defendants' Response to Dr. Venters' Declaration allays many concerns that members of the public may otherwise glean from his negative review of the WVDCR's COVID-19 preparations. The Response—docketed as Sealed Exhibit 6—demonstrates the effectiveness and thoroughness of Defendants' reaction to the spread of COVID-19. By pointing to positive commentary by inmates and named plaintiffs and addressing Dr. Venters' concerns, Defendants have provided an effective rebuttal to his Declaration that should ease rather than exacerbate any public anxiety about the spread of the virus in state correctional facilities. Of course, this hints at a broader irony underlying Defendants' position in the instant dispute: that a more complete disclosure of their apparently comprehensive efforts in confronting COVID-19 will serve their interests as much as it will serve the public's. "'The political branches of government claim legitimacy by election, judges by reason,'" *Doe*, F.3d at 266 (quoting *Hicklin Eng'g, L.C.*, 439 F.3d at 348), and the Court is not willing to cede that legitimacy in exchange for vaguely-defined and exaggerated concerns for harmony and order in correctional facilities.

It follows that the Court is inclined to order both Sealed Exhibits 6 and 9 unsealed, though with one exception. As Defendants note, their Response contains the name of at least one non-party inmate who replied to Plaintiffs' inquiries about the WVDCR's preparations for COVID-19. *See*, *e.g.*, *Resp. Mem.*, ECF No. 181-6, at 4. Out of concern for this inmate's privacy, the Court believes that a limited redaction solely to remove that inmate's identifying information is justified here. Outside this narrow redaction, Sealed Exhibits 6 and 9 will be ordered unsealed.

### C.  Sealed Exhibit 4

The final matter for the Court's consideration is whether any redactions applied to Sealed Exhibit 4—that is, Commissioner Jividen's March 20, 2020 Policy Directive—should be removed. In their Response in Opposition, Defendants make "clear that they do not believe that an unredacted version of that document is even under consideration in this Motion" because the "Court was only provided with, and only considered in connection with its ruling, the redacted version" of the Policy Directive. *Resp. in Opp'n*, at 2 n.1. In its Reply, however, Intervenor strenuously argues that the reasons Defendants have provided for keeping the redactions in place do not illustrate a compelling government interest or that the redactions have been narrowly tailored to achieve that goal. *Reply Br.*, at 7.

The Court's analysis on this point is straightforward. Intervenor makes a persuasive argument that the Policy Directive should not remain under seal, and the Court would be inclined to agree with it if this were actually the question to be resolved. Of course, it is *not* the question to be resolved. Rather, Intervenor seeks to have the Court order the Policy Directive unsealed *and* unredacted, thereby providing the public with more information than even the Court relied on when making its decision. It follows that Intervenor's reasoning is belied by the very basis of the right of public access—namely, to "'to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness.'" *Doe*, 749 F.3d at 266 (quoting *Littlejohn v. Bic Corp.*, 851 F.2d 673, 682 (3d Cir. 1988)). Providing public access to information that even the Court did not consider in reaching its decision does nothing to further these goals.[6]  It follows that

---

[6] Yet Intervenor's argument for removing the presently-applied redactions fails on the merits as well. As the Court acknowledged at the hearing on Plaintiffs' Emergency Motion, security reasons would likely justify certain redactions to the Policy Directive. *Hr'g Tr.*, at 9. The

the Court will deny Intervenor's request to have an unredacted version of the Policy Directive filed as part of the public docket.[7]

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** the Motion, ECF No. 188, and **ORDERS** that the documents filed as ECF Nos. 181-1, 181-2, 181-3, 181-4, 181-5, 181-7, 181-8, and 181-9 be unsealed. The Court **DENIES IN PART** the Motion to unseal the document filed as ECF 181-6 in its entirety, and instead **ORDERS** Defendants to file a redacted copy of the exhibit removing any identifying references to non-party inmates on or before **Monday, April 27 at 5:00 p.m.** Finally, the Court **DENIES IN PART** the Motion to the extent Intervenor requests an order requiring Defendants to file an unredacted version of Commissioner Jividen's March 20, 2020 Policy Directive.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        April 23, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

redactions actually applied to the Policy Directive are actually quite limited, and all appear to relate to an area of legitimate security concerns. Specifically, Defendants have redacted portions of the Policy Directive related to offender screening, employee screening, and transportation, and Assistant Commissioner Marvin Plumley has clearly explained why each set of redactions is critical. *See Second Plumley Aff.*, at ¶¶ 6–10.

[7] Though Intervenor does not appear to argue for it, the Court will not order redactions cleared from Sealed Exhibit 8—the occupancy chart—for the same reasons.