IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JOHN BAXLEY, JR.,
EARL EDMONDSON,
JOSHUA HALL,
DONNA WELLS-WRIGHT,
HEATHER REED, and
DANNY SPIKER, JR.,
on their own behalf and
on behalf of all others similarly situated,

                Plaintiffs,

v.                                   CIVIL ACTION NO.  3:18-1526
                                        (Consolidated with 3:18-1533 and 3:18-1436)

BETSY JIVIDEN, in her official capacity as
Commissioner of the West Virginia Division of
Corrections and Rehabilitation and
THE WEST VIRGINIA DIVISION OF
CORRECTIONS AND REHABILITATION

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs' Motion to Strike Affidavit of Dr. Lawrence H. Mendel. ECF No. 318. Dr. Mendel's affidavit was submitted by the Defendant[1] as an exhibit to her Response in Opposition to Plaintiffs' Motion for Class Certification. ECF No. 307-2.

                I.        **BACKGROUND**

Plaintiffs in this case seek to certify a class of pretrial detainees and convicted inmates in West Virginia Regional Jails. Mot. Certify, ECF No. 264. They assert that Defendant violated the

---

[1] In response to pending motions for summary judgment, Plaintiffs indicated that they have voluntarily dismissed the West Virginia Division of Corrections and Rehabilitation as defendant in this case. The Court will more fully address this dismissal in its order on those motions.

Eighth and Fourteenth Amendments of the United States Constitution and the Americans with Disabilities Act. Their Complaint and Motion for Class Certification rest largely on assertions that West Virginia Department of Corrections and Rehabilitation and its Commissioner Betsy Jividen have provided inadequate medical and mental health care to persons housed in the West Virginial Regional Jails. Second Am. Compl, ECF No. 67; Mot. Certify, ECF No. 264.

In her Response in Opposition to Plaintiffs' Motion for Class Certification, Defendant relies heavily on an affidavit written by Dr. Lawrence H. Mendel. Dr. Mendel is a physician and the Director of Outpatient Services by Maryhaven, "an organization that provides comprehensive behavioral health and substance abuse treatment in the central Ohio area." Mendel Aff. ¶1, ECF No. 307-2. Dr. Mendel reports that he is a Certified Correctional Healthcare Professional and a Fellow in the American College of Correctional Physicians. *Id.* at ¶ 3. Previously, he served as an Accreditation Surveyor for the National Commission on Correctional Health Care ("NCCHC"). *Id.* Additionally, amongst other positions in the field of correctional medicine, Dr. Mendel has served as a Medical Director at Leavenworth Detention Center, Acting Medical Director for the Ohio Department of Rehabilitation and Correction, and Assistant Medical Director for the Ohio Department of Rehabilitation and Correction. *Id.* at 26–27.

In his affidavit, Dr. Mendel states that he based his findings on a review of numerous documents including the Second Amended Complaint, medical records of the Named Plaintiffs, NCCHC jail standards, NCCHC accreditation documents, an Annual Report by the West Virginia Regional Jail authority, PrimeCare annual statistics, PrimeCare intake policies, WVDCR's contracts with PrimeCare and Wexford, Wexford's Change Orders, discovery responses, the testimony of Plaintiffs' expert Dr. Cheryl Wills, and the preliminary report of Plaintiffs' expert Dr. Homer Venters. Mendel Aff. ¶ 11, ECF No. 307-2.

Dr. Mendel's affidavit is used by the Defendant to support the following claims:[2] (1) the class defined by the Plaintiffs is too broad; (2) the jails' "suicide prevention process functions effectively"; (3) WVDCR's policies are "well-written, comprehensive, and similar to policies used across the U.S."; (4) WVDCR appropriately screens inmates for disabilities; (5) the jails meet NCCHC accreditation standards, (6) the medical intake process at WVDCR is sufficient and meets correctional standards; (7) the medication verification process in the jails is not inadequate; (8) the Defendant's jails appropriately respond to sick calls; and (9) there are "no ADA issues" in the regional jails. Def.'s Resp., ECF No. 307.

Plaintiffs have moved to strike Dr. Mendel's affidavit on three grounds. First, they state that his affidavit "reaches conclusions on which he is not qualified." Mot. Strike 1, ECF No. 318. Second, they argue that his affidavit is based on "inaccurate information that is contradicted in the plain record." *Id.* Finally, the argue that Dr. Mendel "reache[d] conclusions based on assumption rather than held to a reasonable degree of certainty." *Id.*

## II. LAW AND ANALYSIS

The admissibility of expert testimony in court proceedings is governed by Rule 702 of the Federal Rules of Evidence.[3] In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 assigns district courts "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993); *Belville v.*

---

[2] This is a brief summary of the Defendant's usage of Dr. Mendel's affidavit.
[3] In whole, Rule 702 provides:
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019). The proper analysis entails "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. While scientific validity is required, courts "need not determine that the proffered expert testimony is irrefutable or certainly correct," because "expert testimony is subject to testing by '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006) (citing *Daubert*, 509 U.S. at 596).

Typically, a *Daubert* analysis[4] is appropriate when the expert will be testifying at trial or an evidentiary hearing. The level of analysis required at the class certification stage, however, is not so clear. As the Defendant notes, some courts have found that full *Daubert* analysis is appropriate at this stage, while others have conducted a more limited analysis. *See, e.g.*, *Sabata v. Neb. Dep't of Corr. Servs.*, No. 4:17CV3107, 2019 WL 3975373, at *3 (D. Neb. Aug. 22, 2019), *objections overruled*, No. 4:17-CV-3107, 2020 WL 3047479 (D. Neb. June 8, 2020) ("[A]t the class certification stage, the court should conduct a 'focused' *Daubert* analysis that 'scrutinize[s] the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence.'") (quoting *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011)); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 812–13 (7th Cir. 2012) (finding that *Daubert* analysis was necessary at class certification stage when "expert testimony is in fact critical to class certification"); *Rhodes v. E.I. du Pont de Nemours & Co.*, No. CIV.A. 6:06-CV-00530, 2008 WL 2400944 (S.D.W. Va. June 11, 2008) (finding that while a *Daubert* inquiry

---

[4] Daubert analyses are often accompanied by a "*Daubert* hearing."

is appropriate at this stage, it "must be limited to consideration of the expert's opinion which is offered to support the plaintiff's class certification motion").[5]

Notably, where courts have required a full or thorough *Daubert* analysis, they have largely done so when "expert testimony is in fact critical to class certification." *Messner*, 669 F.3d at 813; *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815–16 (7th Cir. 2010) (holding "that when an expert's report or testimony is critical to class certification, . . . a district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion").

Given the fact that both Plaintiffs and the Defendant rely on much more than expert testimony in this case, the Court finds this individual affidavit is not so "critical" to the Court's certification decision that a full *Daubert* analysis is required at this juncture. Dr. Mendel's curriculum vitae shows extensive expertise in the area of correctional medicine and he adequately states the information he based his analysis and conclusions upon.

The Plaintiffs' Motion for Class Certification does not ask the Court to make a ruling on the merits but instead asks the Court to determine whether the requirements of Rule 23 have been satisfied. *See In re Zurn*, 644 F.3d at 613. Dr. Mendel's affidavit is relevant to that determination.[6] Dr. Mendel's affidavit is at a minimum pertinent to the determination of whether the proposed classes are appropriately defined and whether common questions of fact or law exist.

---

[5] In another order filed contemporaneously with this one, the Court discusses how the applicability of the Federal Rules of Evidence at this stage of the proceedings is unclear. *See, e.g.*, *Brandriff v. Dataw Island Owners' Ass'n*, No. CV 9:07-3361-CWH, 2010 WL 11534520, at *6 (D.S.C. Aug. 6, 2010) ("[I]n making a decision on class certification, it can consider evidence that would be inadmissible at trial.") *But see Todd v. XOOM Energy Md., LLC*, No. GJH-15-154, 2020 WL 4784767 (D. Md. Aug. 18, 2020) (finding that the Rules of Evidence are applicable but applying a "relaxed" approach).

[6] While the majority of the Defendant's citations to Dr. Mendel's affidavit are largely related to the merits of the Plaintiffs' case, the Court is confident it can consider the affidavit as it pertains to the Motion for Class Certification.

Moreover, it is the Court, and not a jury, that is reviewing the evidence at this stage. The Court can evaluate the appropriateness of Dr. Mendel's alleged legal conclusions, consider the disputed facts presented by both the Plaintiffs and Dr. Mendel, and weigh the certainty of Dr. Mendel's conclusions.[7] *See Sabata*, 2019 WL 3975373, at *3. Any concerns the Plaintiffs may have about the factual foundations for Dr. Mendel's opinions go to the weight or credibility of his opinions. Plaintiffs are free, as they have done, to provide evidence to challenge his credibility. *See Moreland*, 437 F.3d at 431. Accordingly, the Court finds that the expert opinion of Dr. Mendel is sufficiently reliable and need not be stricken at this time.

### III.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion to Strike. ECF No. 318.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:   December 2, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[7] Plaintiffs argue that Dr. Mendel's conclusions are "based on speculation," because he "notes throughout his affidavit that he needs additional information or clarification." Mot. Strike, ECF No. 318, at 5. Because Dr. Mendel's affidavit itself notes these uncertainties, the Court finds that it need not reject the affidavit in whole. Instead the Court can use Dr. Mendel's own statements to give appropriate weight to his conclusions.