## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

JOHN BAXLEY, JR.,
EARL EDMONDSON,
JOSHUA HALL,
DONNA WELLS-WRIGHT,
HEATHER REED, and
DANNY SPIKER, JR.,
on their own behalf and
on behalf of all others similarly situated,

                       Plaintiffs,

v.                            CIVIL ACTION NO. 3:18-1526
                            (Consolidated with 3:18-1533 and 3:18-1436)

BETSY JIVIDEN, in her official capacity as
Commissioner of the West Virginia Division of
Corrections and Rehabilitation and
THE WEST VIRGINIA DIVISION OF
CORRECTIONS AND REHABILITATION

                       Defendants.

### MEMORANDUM OPINION AND ORDER

Currently pending before the Court is Plaintiffs' Motion for Class Certification. ECF No. 264. For the reasons that follow, the Court **GRANTS in part** Plaintiffs' motion.

### I.    BACKGROUND

Nearly 50,000 individuals pass through regional jails in the state of West Virginia each year. Douglas Aff. 2–3, ECF No. 307-3.[1] When those individuals enter the regional jails, they have no choice but to rely on the correctional system to have their basic needs met. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976) ("An inmate must rely on prison authorities to treat his medical

---

[1] Mr. Brad Douglas, the Chief of Staff for the West Virginia Division of Corrections and Rehabilitation, testified that the regional jails completed 48,753 inmate intakes in 2018 and 47,051 in 2019.

needs; if the authorities fail to do so, those needs will not be met."); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (holding the constitutional duties of corrections officials "include maintaining humane conditions of confinement, including the provision of adequate medical care and … 'reasonable measures to guarantee the safety of the inmates.'"). The instant class action alleges that pretrial detainees and inmates in West Virginia's regional jails have been provided inadequate mental and medical health care. Pls.' Mem. Supp. 1, ECF No. 279.

The regional jails are operated by the West Virginia Division of Corrections ("WVDCR") and Rehabilitation under the direction of Commissioner Betsy Jividen. Second Am. Compl. ¶¶ 7–8, ECF No. 67; *see* WV Code § 15A-3-2 ("The executive and administrative head of the Division of Correction and Rehabilitation shall be the Commissioner appointed pursuant to §15A-3-3 of this code."). Plaintiffs claim that Commissioner Jividen and the WVDCR maintain uniform policies and procedures across all of the regional jails that violate the United States Constitution and federal anti-discrimination laws. Mot. Cert. Class 1–2, 4–7, ECF No. 264; Second Am. Compl. ¶¶ 242–58.

Specifically, Plaintiffs assert that Defendant has acted with deliberate indifference under the Eighth and Fourteenth Amendments of the United States Constitution "by failing to establish, monitor, and/or enforce policy directives and operational procedures to ensure inmates admitted to jails in West Virginia receive prompt treatment for their medical and mental health conditions." Second Am. Compl. ¶ 247. Plaintiffs also allege that Defendant has committed unlawful acts of discrimination by failing to make reasonable accommodations for detainees and inmates with disabilities, depriving them of jails services, programs, and activities in violation of the Americans with Disabilities Act. *Id.* at ¶ 255.[2]

---

[2] In response to motions for summary judgment, Plaintiffs clarified that their ADA claims are based on failure to accommodate under the Act. *See* Pls.' Resp. 21, ECF No. 302 (Plaintiffs "assert that Defendant, through DCR's

In their Motion for Class Certification, Plaintiffs propose the following definition for their Jail Class:

All Persons who are, or who will be, admitted to a jail in West Virginia.

Mot. Class Cert. 1. They also seek to certify a subclass of plaintiffs within WVDCR custody who have disabilities. The proposed subclass definition reads as follows:

All persons who are, or will be, admitted to a jail in West Virginia who meet the definition of a "qualified individual with a disability" under the Americans with Disabilities Act.

*Id.*

Contemporaneously with this Order, the Court is issuing a separate order on multiple motions for summary judgment brought by the Defendant in this case. Because that order grants summary judgment in favor of Defendant Jividen on the ADA claims of all but one Plaintiff, Donna Wells-Wright, the Court will require additional briefing from the parties as to whether class certification is appropriate for the "Disability Subclass." As such, the following analysis will be limited to the Plaintiffs' proposed "Jail Class."

## II.    LEGAL STANDARD

Rule 23(a) of the Federal Rules of Civil Procedure establishes four class certification requirements: (1) a class so numerous that joinder of all members is impracticable; (2) questions of law or fact common to the class; (3) a representative party whose claims and defenses are typical of the class's claims and defenses; and (4) a representative party that will fairly and adequately protect the class's interests. Fed. R. Civ. P. 23(a); *Monroe v. City of Charlottesville*, 579 F.3d 380, 384 (4th Cir. 2009). In addition to these four requirements, a plaintiff must also demonstrate that

---

complete lack of policies, procedures, and oversight, has failed to provide them with reasonable accommodations for their disabilities, and as a result, that Plaintiffs have been excluded from participation in, and denied the benefits of, the services, programs, or activities, of jail life.").

the proposed class action fits into one of three forms permitted by Rule 23(b). *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163 (1974).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The plaintiffs seeking certification "must affirmatively demonstrate [their] compliance with the Rule—that is, [they] must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.*; *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (noting that the plaintiff bears the burden of proving it has complied with Rule 23). Nevertheless, "the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *EQT*, 764 F.3d at 358 (quoting *Wal-Mart*, 564 U.S. at 350–51). This "rigorous analysis" may "entail some overlap with the merits of the plaintiff's underlying claim," *Wal-Mart*, 564 U.S. at 351, but courts have been cautioned not to "engage in free-ranging merits inquiries at the certification stage," *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

### III.    DISCUSSION

As a threshold matter, this Circuit requires that in addition to the explicit requirements of Rule 23, proposed classes must be "readily identifiable." *EQT*, 764 F.3d 347 at 358 (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)). This means that "[a] class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Id.* The goal of this requirement is to avoid "mini-trials" to determine who is or is not a class member. *Id.* (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)).

Defendant submits that the class members in this case are not "readily identifiable," because "Plaintiffs cannot establish that every inmate will need or use the health care system and

a class cannot contain members with no injury." Def.'s Resp. 28, ECF No. 307. This argument fails for two reasons.

First, as addressed in the Court's order on Defendant's motions for summary judgment, Plaintiffs are asserting that the constitutional violations in this case are the Defendant and WVDCR's system-wide policies and procedures. As Plaintiffs have consistently argued, the risk of harm that stems from being subject to these policies is the injury they seek to have remedied. *See* Pls.' Reply 5, ECF No. 323; *Dunn v. Dunn*, 219 F. Supp. 3d 1100, 1123 (M.D. Ala. 2016); *Parsons v. Ryan*, 289 F.R.D. 513, 521 (D. Ariz. 2013), *aff'd,* 754 F.3d 657 (9th Cir. 2014) (holding that a plaintiff seeking injunctive relief "need not wait until he suffers an actual injury because the constitutional injury *is* the exposure to the risk of harm.") (emphasis in original). Therefore, Plaintiffs need not show that every class member will use the healthcare system at the regional jail. Instead, they simply need to show that the entire class is subject to the same policies, and they have.

Defendant Jividen, as Commissioner of the WVDCR, is required by West Virginia law to "[e]stablish rules, policies, and regulations in writing governing all subdivisions and institutions within the division," and to "[s]upervise the treatment, custody, and discipline of all inmates and residents . . .." W. Va. Code § 15A-3-4; *see* Hissom Dep. 18, ECF No. 264-4 (noting that the Commissioner "would have to sign off on any changes" to policies within the regional jails).

Plaintiffs have provided persuasive evidence that Defendant has attempted to transfer all responsibility for medical and mental health treatment to two for-profit medical contractors, PrimeCare and Wexford, and then engaged in minimal oversight. *See, e.g.*, Hissom Dep. 52, 53, 54, 59, 105, 120, 130, ECF No. 264-4 (testifying that WVDCR does not conduct site inspections, review contractors' manuals and protocol, receive utilization review for regional jails, ask for

statistical summaries, review receiving screenings, review licensure of individual contracted staff, or ask for reports regarding timely completion of health assessments).

Additionally, Plaintiffs have produced evidence that training on medical policies within the regional jails is done by one person and that the medical intake process is controlled by the contracts WVDCR has with its vendors. *Id.* at 19, 23, 24. Defendant herself notes that WVDCR's contracts with both of its health care vendors are "very similar" and that both PrimeCare and Wexford are required to meet the same requirements to ensure "proper medical and mental health care is being provided to all regional jail inmates." Def.'s Resp. 4–6. Accordingly, given the Defendant's statutory duty, combined with the evidence of system-wide administration of health care policies and procedures, the Court is satisfied the entire plaintiff class is subject to the policies it challenges and that no members are without a claimed injury.

Second, the Defendant's objection misunderstands the "identifiable" requirement. To satisfy this requirement, the Plaintiffs need only show that the Court and the parties could determine who is or is not a class member. Here, the Plaintiffs' class is well defined. It would not take a "mini-trial" to determine whether an individual is part of the class. Moreover, this class is similar to jail classes that have be deemed certifiable by other courts. *See, e.g.*, *Parsons v. Ryan*, 754 F.3d 657, 672 (9th Cir. 2014) ("[A]ll prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices of the ADC."); *Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 149 (N.D. Cali. 2015) ("[A]ll [inmates] who are now or will be in the future in the Jail."); *Clarke v. Lane*, 267 F.R.D. 180, 194 (E.D. Pa. 2010) ("All current and future residents of Coleman Hall to pursue claims associated with the inadequate access to and provision of medical and mental healthcare."). Accordingly, the Court finds that the Plaintiff class is readily identifiable and now turns to the requirements of Rule 23.

### A. Numerosity

The numerosity requirement of Rule 23 requires that the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Deciding numerosity is discretionary; there is no "mechanical test" or minimum class member requirement. *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984). Yet, courts generally find numerosity exists when a class has 40 or more members. William B. Rubenstein, *Newberg on Class Actions* § 3:12 (5th ed. 2020); *Hernandez*, 305 F.R.D. at 153 (finding that numerosity was satisfied where the class contained over 40 members).

Defendant argues that Plaintiffs have failed to meet the numerosity requirement because the class definition is "overly broad, speculative and inaccurate." Def.'s Resp. 29. Despite this assertion, in the same memoranda, Defendant noted that the regional jails processed 48,753 inmates in 2018 and 47,051 in 2019. *Id.* at 3. In footnote 3 of her Response, Defendant provided an example of what the class would look like on a given day, noting that on April 6, 2020 the regional jails housed 4,381 inmates. *Id.* at 4 n.3. Each of these inmates is subject to the policies and procedures of the WVDCR.

Because of the overwhelmingly large and continuously changing size of the class, the Court finds that joinder is impracticable. This finding is consistent with other courts who have granted certification of jail classes. *See Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030, 1037–38 (8th Cir. 2018) (affirming district court's finding that jail class was likely to include at least 2,000 people and remarking that "[a] class of that size would make 'joiner of all members . . . impracticable.'"); *Scott v. Clarke*, 61 F. Supp. 3d 569, 584 (W.D. Va. 2014) (finding class of approximately 1,200 prisoners satisfied numerosity requirement); *Clarke*, 267 F.R.D. at 195 (finding numerosity was satisfied when the jail facility housed 150–300 inmates at any time).

### B. Commonality

Commonality under Rule 23 requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[C]ommonality requires a showing that there is 'some glue' holding the claims together." *Dunn v. Dunn*, 318 F.R.D. 652, 662–63 (M.D. Ala. 2016). Although "[a] single common question will suffice, . . . it must be of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke." *EQT*, 764 F.3d at 360 (quoting *Wal-Mart*, 564 U.S. at 350).

Plaintiffs claim that "[c]ommonality is met because Plaintiffs challenge the legality of Defendant['s] system-wide policies and practices, which raise common questions capable of common answer through the system-wide injunctive relief Plaintiffs seek." Pls.' Mem. Supp. 3, 29 (citing *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)).

Defendant, on the other hand, raises multiple arguments she claims require a finding that commonality is not satisfied. First, Defendant argues that "Plaintiffs cannot identify or propose a single common answer that would address the myriad of alleged deficiencies" they raise. Def.'s Resp. 30. To this end, Defendant proclaims that the Plaintiffs have not "suffered the same injury." *Id.* As addressed above, the claimed injury is Plaintiffs' exposure to WVDCR's health care policies. Much as they need not show that every class member will use the healthcare system at the regional jails, they also do not have to show that the harm they suffer on an individual level is identical. *Parsons*, 289 F.R.D. at 521.

Next, Defendant argues that the proposed class is overbroad. Relying on *Sabata v. Nebraska Department of Correctional Services*, Defendant submits that the Plaintiff class is too diverse and is challenging too many of the Defendant's policies and procedures. Def.'s Resp. 30–31. The Court disagrees. In *Sabata*, the court declined to certify a class noting that the plaintiffs

"suffer[ed] from a multitude of diseases, mental health conditions, and other alleged problems, and they challenge[d] many dozens of . . . policies and practices related to these various conditions." *Sabata v. Neb. Dep't of Corr. Servs.*, No. 4:17-CV-3107, 2020 WL 3047479, at *148–49 (D. Neb. June 8, 2020). The *Sabata* Court, however, was not only concerned with the breadth of the class and its claims. It found that the plaintiffs had failed to demonstrate commonality because they had "not shown a *single* policy or question whose resolution would apply across the class." *Id.* at *130 (emphasis added).

While the Plaintiffs in this case have challenged numerous policies and practices, essential common questions of fact and law exist. Some common questions of fact in this case include: (1) whether Defendant fails to oversee the provision of healthcare in the regional jails; (2) whether Defendant provides inadequate mental and medical health care to pretrial detainees and inmates; and (3) whether Defendant has a practice or policy of "[f]ailing to complete adequate and timely intake procedures." Pls.' Reply 7 n.6. Moreover, at least one common question of law exists: whether the Defendant's health care policies or practices evince deliberate indifference to the medical and mental health care needs of pretrial detainees and inmates in the regional jails.

Once again, these questions are consistent with common questions presented by other certified jail classes. *See Scott*, 61 F. Supp. 3d at 585; *see also Ahlman v. Barnes*, 445 F. Supp. 3d 671, 685 (C.D. Cal. 2020) (finding commonality satisfied where plaintiffs challenged institutional policies as deliberately indifferent); *Armstrong*, 275 F.3d at 868 ("[C]ommonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.")).

Finally,[3] Defendant argues that Plaintiffs have "failed to provide sufficient evidence to

---

[3] Defendant's response also raised failure to exhaust and NCCHC accreditation as arguments against a finding of commonality. Def.'s Resp. 32–34. Failure to exhaust is an affirmative defense that is addressed in the Court's order

establish that the alleged deficiencies are systemic and require systemic relief." *Id.* at 30–31. Without delving too deeply into the merits of the case, the Court finds that Plaintiffs have provided adequate evidence of systemic deficiencies. All of the Named Plaintiffs described being denied essential medical treatment when they were admitted to the jails. Each of the Plaintiffs described instances of the jails refusing or failing to provide prescribed or necessary medication. Moreover, Plaintiffs presented reports of two experts who concluded that there were systemic deficiencies in the medical and mental health treatment provided by the WVDCR and the regional jails. Wills Rep. 3–4, 7, ECF No. 264-3; Venters Rep. 4–5, 21, ECF No. 264-2. The evidence provided is sufficient to support a finding that the members of the putative class are commonly exposed to systemic policies and practices. *See Parsons*, 754 F.3d at 678.

Accordingly, Plaintiffs have presented more than the one common question that is required by Rule 23 and have therefore satisfied the commonality requirement. *See EQT*, 764 F.3d at 360.

## C. Typicality

In addition to requiring common questions, Rule 23(a) requires the party seeking certification to show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The threshold of meeting typicality is "not high." *Brown v. Nucor Corp.*, 576 F.3d 149 (4th Cir. 2009), *as amended* (Oct. 8, 2009) (quoting *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993)). Typicality requires plaintiffs to show "(1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the

---

on the Defendant's motions for summary judgment. *See Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015). With regard to NCCHC accreditation, the Defendant argues that the Court should consider the WVDCR's accreditation status as "substantial evidence" that the Defendant has not been deliberately indifferent. In an attempt not to "engage in free-ranging merits inquiries at the certification stage," *Amgen Inc.*, 568 U.S. at 466, the Court declines to address these arguments in the instant order. Exhaustion under the Prison Litigation Reform Act and NCCHC accreditation are addressed in the Court's accompanying summary judgment order.

claims of the class members." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003). Typicality is satisfied when the "same constitutional claims apply to each proposed class member, and the legal defenses available to them are identical." *Nelson v. Warner*, 336 F.R.D. 118, 123 (S.D.W. Va. 2020).

Defendant argues that typicality cannot be met because the facts that the named and unnamed class members would have to prove to win on their claim of deliberate indifference "put in issue every facet of medical and mental health care provided inmates in all regional jail facilities." Def.'s Resp. 35 (citing *Elizabeth M. v. Montenez*, 458 F.3d 779, 787–88 (8th Cir. 2006)).[4] Defendant, however, stretches *Elizabeth M.* too far. The court in *Elizabeth M.* explained that the plaintiffs in that case had presented "a laundry list of desired policy changes" accompanied by only vague allegations of inadequate treatment, which the court found placed "in issue every facet of mental health treatment, mak[ing] it impossible to evaluate . . . whether the treatment needs and injuries of [the named plaintiffs] are typical of other class members." *Elizabeth M.*, 458 F.3d at 787.

Here, Plaintiffs have made specific allegations of the inadequate treatment they received. Moreover, the fact that the individual class members may have different medical conditions, or may experience different "specific" injuries, does not defeat typicality. As has been made abundantly clear, the claimed injury is the exposure to policies and practices that place both the named and unnamed class members at a substantial risk of harm.

Plaintiffs have satisfied the typicality requirement. They are seeking injunctive relief on

---

[4] Defendant also claims that "the named plaintiffs in this case do not typify the claims of the purported classes either because they are moot or because they have failed to exhaust administrative remedies as required under the PLRA." Def.'s Resp. 35. These arguments are fully addressed and rejected by the Court in its accompanying order on summary judgment.

Defendant also raises overbreadth of the class as an argument against typicality. As the breadth of the class and clarification of the claimed injury has already been thoroughly addressed by the Court, it declines the opportunity to do so again.

behalf of current and future jail residents to ensure the adequate provision of medical care. Their claims arise from Defendant's alleged failure to provide adequate health care and to oversee the provision of services by WVDCR contractors. Plaintiffs' claims arise under the same legal theory of deliberate indifference. Accordingly, the Named Plaintiffs' "interests are squarely aligned with the interests of the class members," and "their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys*, 212 F.R.D. at 322.

### D.  Fair and Adequate Representation of Class Interests

Finally, Rule 23(a)(4) precludes certification unless "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This Court's analysis of rule 23(a)(4) is guided by two lines of inquiry (1) whether there is conflict between the representatives and class members, and (2) whether the representatives will "vigorously prosecute the matter on behalf of the class." *Nelson*, 336 F.R.D. at 123–24 (citing *Stay the Course W.Va. v. Tennant*, No. 1:12-CV-01658, 2013 WL 209479, at *3 (S.D.W. Va. Jan. 17, 2013)). The vigorous prosecution prong considers the abilities of both the class representatives and their attorneys. *Black v. Rhone-Poulenc, Inc.*, 173 F.R.D. 156, 162 (S.D.W. Va. 1996) (citation omitted).

#### i.  Adequacy of Class Representatives

In the instant case, Defendant does not assert that conflict exists between the class representatives and the larger class, but instead list a number of arguments that she suggest undermine the adequacy of representation, including: (1) the class members have individual claims that are "subject to unique defenses such as mootness [and] failure to exhaust"; (2) "the named Plaintiffs lack credibility on key elements of claims made"; (3) "the named plaintiffs do not adequately represent all of the facilities . . . they attempt to include in their proposed classes"; (4) Plaintiffs "have not demonstrated that the named Plaintiffs are familiar with the policies they allege

are inadequate"; and (5) they have not demonstrated that they "are exercising the requisite control of the litigation to ensure that [their] claims are vigorously prosecuted." Def.'s Resp. 36–38. Although the Defendant largely failed to provide reasoning to support these assertions, the Court will address them briefly.

First, consistent with its accompanying summary judgment order, the Court finds mootness and failure to exhaust are no longer at issue in this case. Second, although Defendant boldly asserts that the Plaintiffs lack credibility, she cites to only on example, an excerpt of Plaintiff Wells-Wright's deposition where she talks about her experience getting medication at two different jails. Def.'s Resp. 37. As Plaintiffs point out, nothing in Wells-Wright's statements shows that she lacks credibility, or that her statements could be read to undermine the credibility of the other Named Plaintiffs. *See* Pls.' Reply 16. Third, the Court is satisfied that Plaintiffs can adequately represent detainees and inmates in all of the regional jail facilities. Plaintiffs are challenging institutional deficiencies and, as previously discussed, have provided sufficient evidence to suggest that Defendant's oversight and provision of mental and medical health care is consistent across all ten regional jails. Plaintiffs are not required to name a class representative at each facility. *See Postawko*, 910 F.3d at 1034 (affirming certification of class represented by three named plaintiffs challenging inadequate medical screening and care by the Missouri Department of Corrections); *Unknown Parties v. Johnson*, 163 F. Supp. 3d 630, 641–42 (D. Ariz. 2016) (finding three named plaintiffs were adequate to represent a class challenging the policies and procedures at eight border patrol stations in Arizona). Fourth, the Court rejects Defendant's unsupported argument that Plaintiffs are not sufficiently familiar with the Defendant's policies to challenge them. This case largely turns on an alleged policy of abdicating responsibility and a practice of providing insufficient medical and mental health care. Plaintiffs are, in their own words, "intimately familiar

- 13 -

with the manner in which medical and mental health care is actually administered" in the Defendant's jails. Pls.' Reply 17. The Court is not sure what additional familiarity or awareness could be asked of them. Finally, Defendant's assertion that Plaintiffs are not "exercising the requisite control of the litigation to ensure that [their] claims are vigorously prosecuted," Def.'s Resp. 37, is as baseless as it is bold. In addition to the fact that hundreds of pages of argument and thousands of pages of exhibits have been presented to the Court by the Plaintiffs, the record shows that the Plaintiffs have engaged in timely and assertive prosecution of their claims.

As Defendant has provided no tenable argument as to why the class representatives are inadequate, the Court finds that Rule 23(a)(4) is satisfied. *See Braggs v. Dunn*, 317 F.R.D. 634, 666 (M.D. Ala. 2016) ("Adequate representation is usually presumed in the absence of contrary evidence….") (quoting *Access Now, Inc. v. Ambulatory Surgery Ctr. Grp., Ltd.*, 197 F.R.D. 522, 528 (S.D. Fla. 2000)).

### ii.  Adequacy of Class Counsel

Plaintiffs' counsel have also established that they are adequate to represent the interest of this class. *See Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 218 (D. Md. 1997) ("In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class."). Mountain State Justice, Inc., is a reputable non-profit, public interest firm that has experience with class action litigation. Moreover, counsel for the Plaintiffs have ardently prosecuted this case since they took up representation in February 2019, as can be seen by their multiple motions to compel discovery, their numerous responses to the Defendant's motions for summary judgment, and this motion for class certification. *See Stay the Course W. Va. v. Tennant*, No. 1:12-CV-01658, 2013 WL 209479, at *3–4 (S.D.W. Va. Jan. 17, 2013) (holding adequacy of representation not satisfied because

proposed representative refused to contest the suit). The adequacy of representation requirement is therefore satisfied.

### E.  Satisfaction of Rule 23(b)

Even where the requirements of Rule 23(a) are met, class plaintiffs must show that their action fits into one of three categories listed in Rule 23(b). *See Eisen*, 417 U.S. at 163. Plaintiffs argue their claims fall within the confines of Rule 23(b)(2), which applies to claims where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).[5]

In *Wal-Mart*, the Supreme Court elucidated that Rule 23(b)(2) is only satisfied "when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Wal-Mart*, 564 U.S. at 338.

The Court is satisfied that certification is appropriate under 23(b)(2). The Plaintiffs are seeking uniform injunctive relief in the form of "constitutionally sufficient medical and mental health care." Pls.' Reply 19; Mem. Supp. 2; Second Am. Compl. 33. If the health care policies and practices of the Defendant apply uniformly across the regional jails, and if Plaintiffs were to prevail on the merits, a single injunction would "provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 338. Each class member would not be entitled to a different or individual injunction.

---

[5] Rule 23(b) is also satisfied under subjection (1) "if prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests," or under subsection (3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(1), (3).

*Id.*; *see* William B. Rubenstein, *Newberg on Class Actions* § 4.34 (5th ed. 2020) ("[I]f a prisoner in a prison conditions lawsuit secures a ruling that a prison policy violates the Constitution, the court-ordered injunctive relief will necessarily apply to all other prisoners.").

### F. Federalism Concerns

Finally, Defendant urges the Court to deny certification claiming that the "overly broad relief sought by Plaintiffs raises significant federalism concerns, essentially conferring jurisdiction and control over the health care of all inmates at ten (10) regional jail facilities." Def.'s Resp. 39–40. Given the weight of Plaintiffs' claims, the Court reject this argument.

"[T]he scope of injunctive relief is dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *Lewis v. Casey*, 518 U.S. 343, 359 (1996). While courts have a duty to respect the sovereignty of states,

> [s]ystem-wide relief is required if the injury is the result of violations of a statute or the constitution that are attributable to policies or practices pervading the whole system (even though injuring a relatively small number of plaintiffs), or if the unlawful policies or practices affect such a broad range of plaintiffs that an overhaul of the system is the only feasible manner in which to address the class's injury.

*Armstrong*, 275 F.3d at 870.

The constitutional violations alleged by Plaintiffs are within the Court's jurisdiction, and the Court is not permitted to "shrink from [its] obligation to enforce the constitutional rights of all persons, including prisoners." *Brown v. Plata*, 563 U.S. 493, 511 (2011) (internal quotation marks omitted) (quoting *Cruz v. Beto*, 405 U.S. 319, 321 (1972)). The Court declines to "allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of [jail] administration." *Id.*

### IV.   CONCLUSION

In conclusion, the Court **GRANTS, in part,** Plaintiffs' Motion for Class Certification. ECF

No. 264. The Plaintiffs' "Jail Class" is now certified and may proceed as a class action.

The Court withholds judgment regarding the certification of Plaintiffs' Disability Subclass. The Court **DIRECTS** the parties to provide the Court with memoranda regarding the suitability of certification for that class. Plaintiffs' supplemental memorandum is due by **January 11, 2021.** After Plaintiffs submit their memorandum, Defendant will have fourteen (14) days to file a response.

The Court further **DIRECTS** the parties to meet to address the completion of discovery and propose a new scheduling order. The parties' Rule 26(f) report is due by **January 11, 2021**. The Court **SCHEDULES** a scheduling/status conference on **January 19, 2021** at **11:30 AM**.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:         December 21, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE