IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JOHN BAXLEY, JR.,
EARL EDMONDSON,
JOSHUA HALL,
DONNA WELLS-WRIGHT,
HEATHER REED, and
DANNY SPIKER, JR. on their own behalf
and on behalf of others similarly situated,

                Plaintiffs,

v.                              CIVIL ACTION NO. 3:18-1526

BETSY JIVIDEN, in her official capacity
as Commissioner of the West Virginia
Division of Corrections and Rehabilitation,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs' Motion to Enforce Consent Order (ECF No. 472).

**I. FACTUAL BACKGROUND**

This Motion stems from underlying litigation involving a class action alleging that pretrial detainees and inmates in West Virginia's regional jails have been provided inadequate mental and medical health care. As part of this litigation, Plaintiffs hired an expert, Dr. Homer Venters, to carry out a three-day inspection at three different West Virginia jail locations. Plaintiffs' Mot. ¶ 1. While engaged in the inspections, Dr. Venters identified serious failures in detection and implementation strategies to manage the spread of COVID-19 in the facilities and concluded that there were major deficiencies in Defendant's policies and implementation of policies regarding

COVID-19 testing, quarantine, medical isolation, and treatment of the incarcerated population. *Id*. ¶¶ 2-3.

Following the inspections, Plaintiffs filed a Renewed Emergency Motion for Preliminary Injunction regarding Defendants' Prevention, Management, and Treatment of COVID-19. ECF No. 451. Following briefing, the Court set an evidentiary hearing for November 3, 2021, at 11:30 a.m. ECF No. 165.

Plaintiffs and Defendants undertook serious preparation in anticipation of the hearing. Specifically, Plaintiffs lined up multiple witnesses at the jails, engaged their expert, and subpoenaed the Director of Communications and Public Relations for West Virginia to obtain COVID-19 information. Pls.' Mot. ¶ 6. Just before this evidentiary hearing was scheduled to begin, defense counsel approached Plaintiffs' counsel and represented that Defendant was interested in cancelling the hearing and entering a consent order to instead resolve the motion. *Id*. ¶ 7. Both parties informed the Court of the development; accordingly, the Court postponed the start of the hearing and directed parties to meet and discuss a potential consent order. *Id*. ¶ 8. Counsel for both parties met and discussed the proposed consent order. *Id*. ¶ 9. Defense counsel represented that Defendant was willing to agree to almost all measures requested in the Renewed Emergency Motion, except for Plaintiff's request for a court monitor or special master to oversee the implementation, which Plaintiffs agreed to in exchange for data collection, reporting, and a later inspection. *Id*. ¶¶ 9-10.

Parties engaged in some substantive discussions regarding details, but defense counsel suggested that the parties primarily reach agreement on the major topics. *Id*. ¶ 12. Defendant refused to meet with counsel for Plaintiffs during the discussion, but Deputy Commissioner Marvin Plumley met with them and discussed some of the provisions. *Id*. After two hours, the

parties agreed that Plaintiffs' counsel would draft a proposed order memorializing the agreements and provide it to Defendant's counsel by the end of the week. *Id.* ¶ 13. Defendant was to respond with any changes and the parties would present an agreed order to the Court by November 12, 2021. *Id.* Based on these representations by counsel, the Court cancelled the evidentiary hearing and held the Renewed Emergency Motion in abeyance. ECF No. 468.

Plaintiffs' counsel drafted the consent order based on the agreements reached on November 3, 2021 and sent the draft to Defendant's counsel on November 5, 2021. *Id.* ¶ 15; Exs. 1 and 2, ECF Nos. 472-1, 472-2. The next day, Defendant's counsel confirmed receipt and indicated that he would forward it on to the client and respond after hearing from them. *See* Ex. 3, ECF No. 472-3. However, Plaintiffs' counsel never received the substantive response. Pls.' Mot. ¶ 16. Instead, on November 10, 2021, Plaintiffs' counsel was informed that Defendant had fired her prior counsel and retained new counsel. *Id.* The following day, Defendant's new counsel indicated that Defendant was not willing to enter the previously negotiated consent order. *Id.* ¶ 17. Plaintiffs' alternative offer for a written settlement agreement was also rejected. *Id.*

After Defendant failed to enter into the consent order, Plaintiffs' counsel moved to have the Court enforce the negotiations of November 3, 2021, and to order sanctions, including costs and attorneys' fees. *Id.* ¶ 20. Defendant's Response contends that Defendant never entered into an agreement regarding a resolution of the motion for preliminary injunction and that the discussions on November 3, 2021, did not culminate in any resolution. Def.'s Resp., ECF No. 480.

## II. LEGAL STANDARD

"[R]esolution of a motion to enforce a settlement agreement draws on standard contract principles…." *Hensley v. Alcon Lab'ys., Inc.*, 277 F.3d 535, 540 (4th Cir. 2002). Such a resolution, however, is appropriate only where the parties have actually reached an agreement. "Absent

agreement, a party may demand and receive full judicial process, including a trial, for the resolution of legitimate disputes." *Id*. "Because exercise of the authority to enforce settlement agreements depends on the parties' agreement to a complete settlement, the court cannot enforce a settlement until it concludes that a complete agreement has been reached and determines the terms and conditions of that agreement. *See id. (*citing *Ozyagcilar v. Davis,* 701 F.2d 306, 308 (4th Cir.1983)).

"Thus, to exercise its inherent power to enforce a settlement agreement, a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Id*. at 540-41. (citing *Moore v. Beaufort Cnty*., 936 F.2d 159, 162) (4th Cir. 1991). "The Court must first ascertain the objectively manifested intentions of the parties to determine whether there was a meeting of the minds." *G.M. McCrossin, Inc. v. City of Ronceverte*, No. 5:17-cv-03953, 2021 WL 4150571 at *2 (S.D.W. Va. Sept. 13, 2021) (quoting *Moore*, 936 F.2d at 162.) When a factual dispute over the existence of an agreement or the agreement's terms, the court "must conduct a plenary evidentiary hearing in order to resolve that dispute." *Millner v. Norfolk & W. Ry. Co*., 643 F.2d 1005, 1009 (4th Cir. 1981).

### III. ANALYSIS

Parties dispute the existence of a settlement agreement, and this Court must hold an evidentiary hearing. In *Hensley*, the Fourth Circuit found that enforcing a settlement agreement was inappropriate when the evidence was ambiguous as to whether the plaintiff's claims were actually settled. *Hensley,* 277 F.3d at 541. Here, Plaintiffs claim that, during the November 3rd discussions, the counsel for both parties reached an agreement and the only remaining task was to draft an order memorializing such agreement. Pls.' Mot. ¶¶ 13-15. Defendant contends that she never entered into an agreement and the discussions were merely attempts to resolve the issue that

did not result in any sort of resolution. Def.'s Resp. at 1. The consent order attached by the Plaintiffs includes proposed edits and the possibility of revision, which indicates that it may have merely been a draft agreement. Ex. 1 at 4, ECF No. 472-1. The email correspondence between Plaintiffs' counsel and former defense counsel calls the order a draft but note that it "flesh[es] out the agreements reached on Wednesday." Ex. 2 at 1, ECF No. 472-2. No documents have been signed by both parties memorializing the agreement.

However, "[h]aving second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement, and the fact that the agreement is not in writing does not render it unenforceable." *Hensley*, 277 F.3d at 540. Plaintiffs here have contended that and provided contemporaneous notes that suggest that agreement on the material terms were met. *See* Exs. A and B, ECF Nos. 481-1, 481-2. Further, Assistant Commissioner Plumley was allegedly present at the negotiations to ensure the agreement was operationally feasible. Pl.'s Mot. ¶ 12. It is possible then, to infer from the evidence that an agreement was reached by parties but not reduced to writing. Exactly as in *Hensley*, the parties' accounts of what occurred at the November 3rd settlement conference differ. Accordingly, this Court finds it necessary to hold a hearing on the matter.

## IV. CONCLUSION

The Court schedules a hearing on the motion on **December 8, 2021, at 11:00 a.m.** Lead counsel will appear in person.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

          ENTER:    November 30, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE