IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

JOHN BAXLEY, JR., et al.,
on behalf of a class of similarly
situated individuals,

        Plaintiffs,

v.                                    Civ. Act. No. 3:18cv01526
                                                (Chambers, J.)
BETSY JIVIDEN, in her official
capacity,

        Defendant.

### CONSENT ORDER REGARDING COVID-19 PROTOCOLS

On October 12, 2021, Plaintiffs filed a renewed emergency motion for preliminary injunction regarding Defendant's prevention, management, and treatment of COVID-19 in West Virginia jails. [Dkt. 451.] The motion was fully briefed and an evidentiary hearing was scheduled for November 3, 2021, at 11:30 a.m. On said date, the parties reached the following agreement regarding the pending motion. The Court has reviewed and approves the resolution, as follows:

### I.    PURPOSE & ONGOING EFFORTS

The agreed purpose of this consent order is to ensure compliance to the fullest extent possible with guidelines published by the Centers for Disease Control (CDC) for the management of COVID-19 in correctional settings. Defendant agrees to monitor the CDC guidance for updates, including designating a responsible staff person to receive e-mail notifications from the CDC regarding said updates, and implement those updates to the extent feasible within a reasonable timeframe of those updates, but no later than fourteen days after the updates are published.

### II.    DEFINITIONS

1. **Close Contact**: Someone who was within 6 feet of a person who has tested positive for COVID-19 for a cumulative total of 15 minutes or more over a 24-hour period (that is, individual exposures added together over a 24-hour period, such as three five-minute exposures) starting from 2 days before illness onset (or, for asymptomatic patients, 2 days prior to test specimen collection) until the time the patient is isolated. All individuals housed within the same

1



PLAINTIFF'S EXHIBIT
Baxley v Jividen
CASE NO. 3:18-1526
Admitted
EXHIBIT NO. 3

cell and/or housing section (unless within a housing section in which all individuals are locked within their cells 23 hours/day and not comingling) are presumed to be Close Contacts.

2. **Cohorting:** The practice of isolating multiple individuals with laboratory-confirmed COVID-19 together or quarantining close contacts of an infected person together as a group due to a limited number of individual cells.

3. **Confirmed vs. suspected COVID-19:** A person has **confirmed COVID-19** when they have received a positive result from a COVID-19 viral test (antigen or PCR test) whether or not they have symptoms. A person has **suspected COVID-19** if they show symptoms of COVID-19 but either have not been tested via a viral test or are awaiting test results. If their test result is positive, suspected COVID-19 is reclassified as confirmed COVID-19.

4. **COVID:** SARS-CoV-2, COVID-19, and COVID may all be used interchangeably in this this document.

5. **COVID Test:** Any viral test, including either a nucleic acid amplification test (NAAT) or antigen test. These tests may be conducted at point-of-care or rapidly, or might require laboratory processing that takes up to around two days to render results.

6. **Defendant & DCR:** "Defendant" and "DCR" are herein used interchangeably to refer to Defendant Jividen, in her official capacity as Commissioner of the Division of Corrections and Rehabilitation, and the West Virginia Division of Corrections and Rehabilitation (DCR).

7. **DCR Regional Jail:** Any facility in which a member of the Plaintiff Class is incarcerated, specifically, at the time of this Order, Eastern Regional Jail, Southern Regional Jail, Northern Regional Jail, North Central Regional Jail, Potomac Highlands Regional Jail, Tygart Valley Regional Jail, Western Regional Jail, South Central Regional Jail, Southwestern Regional Jail, and Central Regional Jail.

8. **Detained person:** Any person housed in a DCR Regional Jail, under any status.

9. **Immediately:** Unless otherwise stated "immediately" means within four hours of the preceding event.

10. **Medical isolation:** The practice of separating someone with confirmed or suspected COVID-19 infection to prevent their contact with others to reduce the risk of transmission. Medical isolation ends when the individual meets pre-established <u>criteria for release from isolation</u>, in consultation with clinical providers. In this context, isolation does NOT refer to punitive isolation for behavioral infractions within the custodial setting, and the conditions in medical isolation spaces should be distinct from those in punitive isolation.

11. **Plaintiff Class:** All Persons who are, or who will be, admitted to a jail in West Virginia.

12. **Quarantine:** The practice of separating individuals who have had or may have had close contact with someone with COVID-19 to determine whether they develop symptoms or test positive for the disease. Quarantine reduces the risk of transmission if an individual is later found to have COVID-19. Quarantine for COVID-19 should last for 14 days after the exposure has ended. Ideally, each quarantined individual should be housed in a single cell with solid walls and a solid door that closes. If symptoms develop during the 14-day period, and/or a quarantined individual receives a positive viral test result for SARS-CoV-2, the individual should be placed under medical isolation and evaluated by a healthcare professional. If symptoms do not develop during the 14-day period and the individual does not receive a positive viral test result for SARS-CoV-2, quarantine restrictions can be lifted. This includes **"Intake Quarantine,"** in which individuals newly incarcerated are housed separately or as cellmates for 14 days before being integrated into general housing.

13. **Outbreak**: A single new case of COVID-19 infection in any DCR Regional Jail is considered an outbreak, *unless* the positive case is the result of a person testing positive at intake who has not had close contact with other members of the facility's population and is immediately placed in medical isolation.

14. **Personal Protective Equipment (PPE)**: A fit-tested N95 respirator or equivalent or higher-level respirator, goggles or disposable face shield that covers the front and sides of the face, gloves, shoe covers, and a gown or coveralls.

15. **Routine Screening Testing:** Periodic testing of all unvaccinated detained people in DCR Regional Jails, or a select group thereof, who have not been tested within the prior two weeks.

16. **Substantial or High Community Transmission**: Substantial community transmission occurs when there are between 50-99 new cases per 100,000 people in the county in which the facility is located the prior seven days *or* when between 8%-9.9% of the NAATs were positive in the county in which the facility is located within the prior seven days. High community transmission occurs when there are between more than 100 new cases per 100,000 people in the county in which the facility is located the prior seven days *or* when more than 10% of the NAATs were positive in the county in which the facility is located within the prior seven days.

17. **Symptoms:** Symptoms of COVID-19 include cough, shortness of breath or difficulty breathing, fever, chills, muscle pain, sore throat, and new loss of taste or smell. This list is not exhaustive. Other less common symptoms have been reported, including nausea and vomiting. Like other respiratory infections, COVID-19 can vary in severity from mild to severe, and pneumonia, respiratory failure, and death are possible. COVID-19 is a novel disease, therefore the full range of signs and symptoms, the clinical course of the disease, and the individuals and populations at increased risk for severe illness are not yet fully understood. Monitor the CDC website for updates on symptoms.

### III. TESTING

The following protocol is subject to the availability of tests to DCR and its contractors. In the event that DCR determines that insufficient tests are available, it will within 24 hours alert counsel for Plaintiffs of the extent of the shortage, the expected timeframe of the shortage, and the plan for testing in light of the shortage.

1. **Administration of COVID-19 Tests:** All DCR staff and/or contractors involved in the testing process must wear gloves and masks. Any individual within six feet of the person being tested must wear (1) gown; (2) respirator; (3) eye protection; and (4) gloves. After each participant, gloves must be removed, hands sanitized, and new gloves applied.

2. **Admission:** Every person being admitted into a DCR Regional Jail facility will be administered a COVID-19 test upon admission during the initial medical screening and be immediately advised of the test results.

3. **Discharge/Transfer**: Every person being discharged from a DCR Regional Jail facility, including those transferring to other facilities, will be administered a COVID-19 test within three days prior to exiting the facility and be immediately advised of the test results. If a person tests positive for COVID-19 during discharge testing, that individual will also be provided information regarding medical isolation and transmission of COVID-19.

    4.    **Intake Quarantine**: A COVID-19 Test will be administered to every person held in Intake Quarantine two to three days before the end of their quarantine period. A negative test is required in order to be released from quarantine.

    5.    **COVID Symptoms**: Every person demonstrating COVID Symptoms will be immediately administered a COVID Test. "Immediately" means within four hours of receipt of a sick call, verbal notification of symptoms, observation of COVID symptoms, or any other notifications in writing or otherwise.

    6.    **Exposure to COVID-19/Close Contacts**:
   a. Every person bunked in a cell with a person who tests positive will be immediately administered a COVID Test.
   b. Every person housed in a section in which a person has tested positive for COVID will be administered a COVID Test as soon as possible, but no later than twenty-four hours after the positive test. This applies to all housing sections in which detained people have been allowed to mingle between cells. Testing is encouraged, but not required, for all detained people in sections designated as lock-down (i.e, suicide watch, punitive segregation, and administrative segregation), in which detained people are held in their individual cell for 23 hours a day, and only allowed out of their cell with their cell-mates.
   c. Every person housed in a section where there has been COVID-19 exposure will be administered a COVID-19 Test every 3-7 days until the end of the quarantine period. When an outbreak is escalating, testing every three days will allow for faster outbreak control.

    7.    **Routine Screening Testing**:
   a. <u>When there is an Outbreak</u> within a facility and/or substantial or high community spread of COVID-19, COVID-19 Tests will be administered to all staff and detained people in that facility who are not fully vaccinated at least once every 5-7 days. DCR will refer to the CDC guidance on broad based testing in congregate facilities to effectuate this testing.
   b. <u>When there is *not* an Outbreak</u> within a facility, DCR will administer COVID-19 Tests to a randomized sample of 10% of the unvaccinated detained person population at each facility every month. Further, per DCR's COVID policy in effect as of the date this Order is presented, Defendant will continue to administer COVID-19 Tests to a randomized sample of 25% of its unvaccinated staff at each facility every month.

    8.    **Testing Refusal:** Class members may refuse testing. However, any class member who refuses testing under these protocols will be placed into Quarantine and not released until said person receives a negative COVID-19 Test.

### IV.    QUARANTINE

**A.** <u>**General Quarantine Measures (all types of quarantine)**</u>
   1. DCR is not required to quarantine fully vaccinated individuals who are asymptomatic, either at intake or after exposure to COVID-19.
   2. Quarantined individuals will be monitored for COVID-19 symptoms at least once a day, including temperature checks.

> **Commented [LCM1]:** This follows the most recent CDC guidance, but is different from what our expert has recommended and what we discussed on Wednesday. We are speaking with Dr. Venters about this next week, and may decide to revise. We would also like to hear DCR's thoughts on this.

4

3. Quarantined individuals will wear masks when leaving the quarantine space for any reason.
4. DCR will, to the extent possible, provide medical evaluation and care within or near the quarantine unit and serve meals within the quarantine space.
5. Staff assignments should remain as consistent as possible for quarantine areas.
6. Individuals in routine intake quarantine will not be mixed with individuals quarantined due to COVID exposure.
7. New individuals will not be added to an existing quarantine cohort after the 14-day clock has started, except as set forth below in intake quarantine.

**B. Intake Quarantine**
1. Except as set forth in (A)(1) of this section, all detained persons will be quarantined for at least fourteen days upon intake.
2. Newly detained persons who are being quarantined will be grouped in a cell with other newly detained people who have arrived within 72 hours of the earliest detained person. As a result, the longest a newly detained person will be held in intake quarantine is seventeen (17) days.
3. Detained persons in intake quarantine will only mingle with others in their cell; they will not be allowed to comingle with detained persons from other cells on their section.
4. Staff should wear masks but are not required to wear PPE when entering intake quarantine.

**C. Close Contact Quarantine**
1. When a detained person tests positive for COVID-19, DCR will quarantine their Close Contacts who are not displaying symptoms and/or who test negative for COVID-19 for fourteen days after the last exposure.
2. DCR will quarantine Close Contacts of individuals with suspected COVID-19 under these procedures, unless the person with suspected COVID-19 tests negative for COVID-19.
3. When a Close Contact of someone who has tested positive for COVID-19 displays symptoms of COVID-19, that individual must be placed in medical isolation.
4. Multiple Close Contacts of the same individual who test negative for COVID-19 may be cohorted, but may not be permitted to move outside the housing section except when absolutely necessary for court appearances and/or medical transport. Ideally, however, Close Contacts will be housed separately, in single cells with solid walls and bars; or in cells in which they can maintain six feet of distancing from any other individual in the cell. Individuals at increased risk for severe illness from COVID-19 should not be cohorted with other Close Contacts.
5. Quarantined individuals will be released from quarantine if they have not developed COVID-19 symptoms and have not tested positive for SARS-CoV-2 for 14 days since their last exposure to someone who tested positive.
6. Staff shall properly don and doff PPE when entering close contact quarantine areas.

## V. MEDICAL ISOLATION

1. Medical isolation shall occur in an environment separate from other detained people.

    a. Ideally, medical isolation will occur in its own housing section that is separated by doors from areas of the facility that do not house people in medical isolation. Medical isolation may also occur in a negative air flow room on a medical unit.
    b. In the event that it is not feasible for medical isolation to occur on a wholly separate housing section or negative air flow room, medical isolation will occur on a separate tier of a housing section.
    c. In limited circumstances, in the event that both section a and b above are impossible to achieve, the medical isolation area must be physically separated from other areas of the facility so that any staff moving outside of medical isolation have space to don and doff PPE after leaving the medical isolation area and before entering a non-medical isolation area. This can be achieved through construction of physical barriers between medical isolation areas and non-medical isolation areas.
    d. Security concerns based on a detained person's status may not be a reason to spread people who should be in medical isolation throughout different areas of a facility, although DCR may choose to not cohort individuals with differing security statuses who would otherwise be cohorted in medical isolation.
2. DCR shall ensure that people in medical isolation have no contact with people who are not in medical isolation, other than DCR staff and contractors who are wearing full PPE. All medical care (except offsite necessary care) and meals will occur within the medical isolation space.
3. DCR shall immediately discontinue the practice of placing COVID-positive detained persons into cells with untested or COVID-negative detained persons.
4. Any detained person who tests positive for COVID-19 must immediately be placed in medical isolation. Individuals with laboratory-confirmed active COVID-19 may be placed in medical isolation as a cohort.
5. Any detained person who is displaying COVID symptoms but has not yet tested positive for COVID-19 must be immediately placed in medical isolation, and must be kept separate from other individuals. These individuals may not be cohorted until they receive COVID-19 Test results indicating that they are COVID-positive, at which point they may be cohorted with other COVID-positive individuals in medical isolation.
6. All staff interacting with any detained person who is in medical isolation will wear full PPE, even when their interaction is limited to only a few minutes. Such staff shall properly don and doff such PPE before interacting with sections that are not designated as medical isolation.
7. DCR will ensure that detained individuals in medical isolation wear masks whenever anyone else enters the isolation space unless they are having trouble breathing, are incapacitated, or are otherwise unable to don or remove a mask without assistance.
8. Medical isolation is operationally distinct from solitary confinement, and should be treated as such.
9. Medical isolation will be maintained at least until CDC criteria for discontinuing home-based isolation have been met. At the time of entry of this Order, this means that isolation may end 10 days after symptom onset *and* after resolution of fever for 24 hours and improvement of other symptoms; *or* if the person is asymptomatic, 10 days after the first positive test.

    **VI.**    **OTHER PREVENTION MEASURES**

**A. PPE:**
1. All staff and contractors who have contact with infected people and/or infectious materials will be provided PPE. To the extent any detained person holds a job or has other reason to come into contact with a COVID-positive person and/or infectious materials, they will also be provided with PPE.
2. DCR will ensure that all people who utilize PPE are trained in donning and doffing PPE and trained to perform hand hygiene after removing PPE.

**B. Cleaning & Disinfecting**
1. If a person tests positive for COVID-19, the area used by that person should be closed off and not used again until after it has been cleaned and disinfected, using products from EPA List N.
2. Masks and gloves should be worn while cleaning and disinfecting.

**C. Masks**
1. DCR shall provide all detained persons with two cloth face masks at no costs upon admission to a DCR Regional Jail, and launder them routinely.
2. In the event a detained person's mask is lost, stolen, or damaged, and a new mask is requested, DCR shall immediately provide a replacement mask.
3. Additional masks should be provided to any individual who has developed symptoms of COVID-19 or tests positive for SARS-CoV-2.
4. DCR shall provide all staff with face masks and encourage their use at all facilities.

**D. Cleaning Supplies:**
1. Cleaning supplies, including EPA-registered disinfectants effective against SARS-CoV-2, must be made available to all detained persons at no cost on a daily basis.
2. Tissues should be made available to detained people at no cost.
3. Soap shall be provided to detained people at no cost.

**E. Vaccines**
1. Every detained person will be offered the COVID-19 vaccine upon admission to the DCR Regional Jail during the initial intake process, as well as at the time of any COVID-19 testing, when the detained person tests negative.
2. Every detained person will be provided with COVID-19 vaccine information in writing. These materials will be agreed-upon by the parties.
3. Any detained person who requests the COVID-19 vaccination will be provided one as soon as possible, but no later than 48 hours of the request. Detained people will be provided information specific to the vaccine received and/or available, including about recommendations or requirements for a second dose and/or booster. DCR will provide second doses and/or boosters as required by FDA and CDC guidelines.

### VII. TREATMENT

1. All DCR Regional Jail facilities will make monoclonal antibody treatment available to detained persons in need of such treatment, as determined by the facility medical provider.

2. All DCR Regional Jail facilities will ensure that any detained person in need of remdesivir as a treatment for COVID-19 disease will be immediately transferred to an appropriate outside medical facility for treatment.
3. DCR and its medical contractors will remain informed about new and emerging treatment measures and will make all treatment for COVID-19 available to detained people as it becomes approved and available.

### VIII. REPORTING, REVIEW AND COLLABORATION

1. Beginning seven days following entry of this Order, DCR shall provide weekly reports to class counsel containing following information:
    a. The number of masks distributed to detained people at each facility for the prior week;
    b. The number of COVID tests performed at each facility the prior week, broken down by purpose of test, i.e.:
        i. Initial intake COVID test
        ii. Release from intake quarantine COVID test
        iii. COVID symptom test
        iv. Close contact test
        v. Close contact quarantine test
        vi. Routine screening test of class member during outbreak
        vii. Routine screening test of staff during outbreak
        viii. Routine screening test of class member, no outbreak
        ix. Routine screening test of staff member, no outbreak
        x. Release/transfer test
    c. By facility, the number of people in medical isolation, setting forth the date that medical isolation began, and the specific location of the medical isolation cells;
    d. By facility, the beginning dates of close contact quarantine for each detained person in each quarantine cell (if quarantined in cell) or section (if cohorted by section), and the location of all close contact quarantine by facility.
2. Within one week of entry of this Order, DCR shall provide class counsel with a plan detailing the areas of each facility that are designated to be used for (1) intake quarantine; (2) medical isolation; and (3) close contact quarantine.
3. Beginning seven days after entry of this Order, on a weekly basis DCR shall provide data from one facility a week, with the facility to change weekly, setting forth the number of detained persons in intake quarantine, and the dates of intake for each detained person in each intake quarantine cell, by cell.
4. The senior DCR staff member(s) responsible for implementing this Order, as identified by DCR, shall attend a monthly telephonic or remote video meeting with Plaintiffs' counsel at a mutually agreeable time to discuss implementation of this Order and answer questions related to data, implementation, and reporting pursuant to this Order.
5. Upon request of class counsel, DCR shall permit an additional inspection of the DCR Regional Jail facilities by Plaintiffs' medical expert to review compliance with this Order, at DCR's cost.

The pending motion for preliminary injunction is hereby removed from the docket as resolved by agreement, as set forth herein.

**IT IS SO ORDERED.**

ENTER: _____

                                      ROBERT C. CHAMBERS
                                      UNITED STATE DISTRICT JUDGE

Agreed to by:

/s/ Webster J. Arceneaux, III
Webster J. Arceneaux, III, State Bar #155
Richard L. Gottlieb, State Bar #1447
James C. Stebbins, State Bar #6674
Valerie H. Raupp, State Bar #10476
Post Office Box 1746
Charleston, WV 25326
(304) 345-2000
FAX: (304) 343-7999
wjarceneaux@lewisglasser.com
*Counsel for DCR*

/s/ Lydia C. Milnes
Lydia C. Milnes, State Bar No. 10598
Jennifer S. Wagner, State Bar No. 10639
Mountain State Justice, Inc.
1029 University Ave., Ste. 101
Morgantown, WV 26505
Telephone: (304) 326-0188
Facsimile: (304) 326-0189
lydia@msjlaw.org
*Counsel for Plaintiffs*