IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JOHN BAXLEY, JR.,
EARL EDMONDSON,
JOSHUA HALL,
DONNA WELLS-WRIGHT,
HEATHER REED, and
DANNY SPIKER, JR. on their own behalf
and on behalf of others similarly situated,

                Plaintiffs,

v.                                     CIVIL ACTION NO.   3:18-1526

BETSY JIVIDEN, in her official capacity
as Commissioner of the West Virginia
Division of Corrections and Rehabilitation,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs' Motion to Enforce Consent Order (ECF No. 472), Defendant's Motion to Quash (ECF No. 489), Nonparty Objections by Webster J. Arceneaux, Anna Casto, and Valerie Raupp to Amended Notice of Intent to Serve Subpoenas (ECF No. 491) and Plaintiffs' Motions to Compel (ECF Nos. 492, 495). On December 7, 2021, the Court held an evidentiary hearing. After considering the arguments at the hearing and the briefing, the Court **DENIES** the Motion to Enforce Consent Order and **DENIES AS MOOT** the Nonparty Objections and the Motion to Quash and Motions to Compel.

    A. Motion to Quash/Nonparty Objections, Motions to Compel

On November 30, 2021, this Court determined that it was necessary to hold an evidentiary hearing on the issue of whether parties reached an enforceable settlement agreement during

discussions on November 3, 2021. *See* Mem. Op. and Order, ECF No. 482. On the same day, in anticipation of this hearing, Plaintiffs filed a Notice of Intent to Serve Subpoenas (ECF No. 483) and an Amended Notice of Intent to Serve Subpoenas (ECF No. 484) on Defendant Betsy Jividen, Assistant Commissioner Plumley, and former defense counsel present at the negotiations: Webster J. Arceneaux, III, Valerie Raupp, and Anna Casto. Said subpoenas also included a request for "[a]ll notes, emails, texts or other writings made regarding the negotiations with counsel from Mountain State Justice on November 3, 2021, and/or relating in any way to cancelling the scheduled evidentiary hearing and/or entering into a consent order regarding COVID-19 policies and practices." *See* Subpoenas, ECF Nos. 484-3, 484-4, 484-5. On December 3, 2021, Defendant filed her Motion to Quash. Former defense counsel Webster J. Arceneaux, III, Valerie Raupp, and Anna Casto, attorneys at Lewis Glasser, PLLC, (collectively "prior counsel") filed a nonparty objection on December 6, 2021. ECF No. 491. On the same day, Plaintiffs filed their Motion to Compel. ECF No. 492. Plaintiffs have filed a combined response to the Motion to Quash and the Nonparty Objections. ECF No. 495.

In her Motion, Defendant asserts that the Plaintiffs' subpoenas against Defendant, Deputy Commissioner Plumley, and prior counsel should be quashed to the extent that they seek disclosure of documents protected by attorney-client privilege and the work-product doctrine. Motion to Quash at 1-6, ECF No. 489. Similarly, Defendant asserts that the subpoenas against prior counsel should be quashed because any information they have about the matter is protected by attorney-client privilege.[1] *Id*. at 6-8. In their Nonparty Objections, prior counsel object based on improper service and aver that the materials requested are protected by attorney-client privilege and attorney

---

[1] The Court notes that only Mr. Arceneaux was subpoenaed to testify, while Valerie Raupp and Anna Casto were only subpoenaed for their documents.

work-product doctrine, are part of a confidential settlement agreement, and are unduly burdensome. *See e.g.,* Nonparty Objections to Document Production Subpoena, ECF No. 491.

Plaintiffs' Combined Response (ECF No. 495) and Motion to Compel ask the Court to find that service has been effectuated and to compel production of prior counsels' notes and Mr. Arceneaux's attendance and testimony.

*i. Service*

Prior counsel first argue that they were improperly served. Nonparty Objections at 1-3. Service must be made in compliance with Rule 45, which provides:

> Any person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law. Fees and mileage need not be tendered when the subpoena issues on behalf of the United States or any of its officers or agencies.

Fed. R. Civ. P. 45(b)(1). Generally, this requires personal service on parties, but courts in the Fourth Circuit have made exceptions where justice so requires. *See Hall v. Sullivan*, 229 F.R.D. 501, 504 (D. Md. 2005) (rejecting non-party's improper service argument where the non-party had actual notice of the subpoena); *Bland v. Fairfax, County Va.*, 275 F.R.D. 466, 471 (E.D. Va. 2011) ("This Court agrees with the growing minority trend, at least in a case such as this one, where witnesses… actually received the at-issue subpoenas in advance of trial, and the non-personal service was effected by means reasonably sure to complete delivery."); *In re Newbrook Shipping Corp.,* 498 F. Supp. 3d 807, 814 (D. Md. 2020) (finding lack of personal in-hand delivery "does not doom Applicants' service [], however, because the Court declines to impose a requirement of personal in-hand service where the Applicants' mode of service reasonably ensured GMS' actual receipt of the subpoena."); *CresCom Bank v. Terry,* 269 F. Supp. 3d. 708, 711 (D.S.C. 2017)

(finding adequate service without personal service where "the process server's method of delivery was reasonably calculated to ensure [the objecting party] received the subpoena."

Here, prior counsel states that a process server came to Lewis Glasser's office with four subpoenas with return dates varying from December 6 to December 8, 2021. Nonparty Objections at 3. Further, prior counsel notes that no person accepted service and the receptionist noted that acceptance of service was not authorized, so the subpoenas were simply placed on the reception desk. *Id*. In their Motion to Compel, Plaintiffs provide affidavits from process servers which detail multiple, persistent attempts to serve prior counsel with the subpoenas both at Lewis Glasser's office and at their individual homes. Motion to Compel at 1-6, ECF No. 492. The evidence from Plaintiffs suggests that prior counsel actively avoided attempts at personal service at their homes and at the office. *Id*. Further, because prior counsel remained listed on the CM/ECF notification system, they received actual notice of the intent to serve subpoenas as soon as they were electronically filed. *See id.* at 492-1. Given these specific circumstances, the Court will find that service has been effectuated here. Accordingly, the Court ordered Mr. Arceneaux to appear and testify and to bring the documents requested and those of his colleagues, which he did. *See* Order, ECF No. 499.

   *ii. Attorney-Client Privilege*

In her Motion to Quash, Defendant argued that prior counsel's testimony and documents were protected by attorney-client privilege. The attorney-client privilege is only applicable when:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*U.S. v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (internal quotations and citations omitted). However, Mr. Arceneaux's testimony was limited to his personal observations, impressions, and actions on the day of negotiation, not about his communications with his client, so attorney-client privilege was not implicated. *See id*. Neither other prior counsel nor Mr. Plumley were called to testify. Further, any notes that may have referenced protected conversations with his then-client Ms. Jividen were redacted by Mr. Arceneaux. These notes were only admitted and given to Plaintiffs' counsel in their redacted form. As such, the attorney-client privilege was not implicated here. Beyond this, the discovery materials sought by Plaintiffs included written materials in Defendant's possession that memorialized her own thoughts or communications between herself, her staff, and/or her superiors which are unprotected. Similarly, Ms. Jividen's testimony is not protected insofar as it relates to her own knowledge, motivations, and discussions between herself and her coworkers or superiors. At the hearing, Defendant delivered the documents without objection. As such, the materials produced did not implicate attorney-client privilege.

    *iii. Work Product Doctrine*

Defendant's Motion to Quash also asserted that the materials requested by the subpoena were subject to the work-product doctrine. "The attorney… holds the work product privilege along with the client." *Chevron Corp. v. Page* (*In re Naranjo*), 768 F.3d 332, 345 (4th Cir. 2015) (internal citation omitted.) "[A]n attorney is not required to divulge, by discovery or otherwise, facts developed by his efforts in preparation of the case or opinions he has formed about any phase of the litigation[.]" *In re Doe,* 662 F.2d 1073, 1077 (4th Cir.1981). The work-product doctrine is not absolute, and under West Virginia law there are two categories of work product, "fact work product" and "opinion work product." *See Med. Assurance of W. Va., Inc. v. Recht,* 583 S.E.2d 80,

89 (W. Va. 2003). Upon review of the notes by this Court, and upon testimony by Mr. Arceneaux that the notes only reflected what Plaintiffs' counsel discussed and not his own personal thoughts, the Court finds that they are fact work product.

"Fact work product is discoverable only 'upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship.'" *Chaudhry v. Gallerizzo,* 174 F.3d 394, 403 (4th Cir.1999), (*quoting In re Grand Jury Proceedings,* 33 F.3d 342, 348 (4th Cir.1994)). Here, there was both substantial need and inability to secure the substantial equivalent of materials by alternate means without undue hardship. The documents requested established the contemporaneous documentation of discussions, negotiations, and agreements made and steps taken about a proposed consent order, a crucial issue in a finding of whether agreement was reached. These were the only writings which confirmed prior counsel's understanding and reflected discussion of material terms, and Plaintiffs' counsels' own notes would not have adequately explained prior counsel's (and impliedly Defendant's) understanding of that day. The submission of other documents responsive to the subpoena was not otherwise objected to at the hearing on the grounds of work-product doctrine.

Because the Court ruled on these issues contemporaneously at the oral hearing, the Nonparty Objections (ECF No. 491) are overruled and the Motions to Compel (ECF No. 492 and 495) and Motion to Quash (ECF No. 489) are **DENIED AS MOOT**.

B. Motion to Enforce Settlement Agreement

This Motion was the basis for the evidentiary hearing on December 8, 2021. As part of this litigation surrounding allegations of inadequate health care at West Virginia's jails, Plaintiffs hired an expert to carry out inspections at three different jails. While engaged in the inspections, their expert identified serious failures in detection and implementation strategies to manage the spread

of COVID-19 in the facilities and concluded that there were major deficiencies in Defendant's policies and implementation of policies regarding COVID-19 testing, quarantine, medical isolation, and treatment of the incarcerated population. Following the inspections, Plaintiffs filed a Renewed Emergency Motion for Preliminary Injunction regarding Defendant's Prevention, Management, and Treatment of COVID-19. ECF No. 451. Following briefing, the Court set an evidentiary hearing for November 3, 2021, at 11:30 a.m. ECF No. 165.

Plaintiffs and Defendant undertook serious preparation in anticipation of the hearing. Specifically, Plaintiffs lined up multiple witnesses at the jails, engaged their expert, and subpoenaed the Director of Communications and Public Relations for West Virginia to obtain COVID-19 information. Just before this evidentiary hearing was scheduled to begin, prior defense counsel approached Plaintiffs' counsel and represented that Defendant was interested in cancelling the hearing and negotiating an agreement to instead resolve the Motion.

Both parties informed the Court of the development; accordingly, the Court postponed the start of the hearing and directed parties to meet and discuss a potential agreement. Counsel for both parties met and discussed a proposed consent order. Counsel for the parties engaged in some substantive discussions and negotiations for the next two hours. They apparently reserved discussion of details but made headway on several major topics. Defendant refused to meet with counsel for Plaintiffs during the discussion, but Deputy Commissioner Marvin Plumley met with them and discussed the feasibility of implementing various provisions discussed in the negotiations. Parties agreed that Plaintiffs' counsel would draft a proposed consent order with the terms of the negotiations and provide it to prior counsel by the end of the week. Defendant was to respond with any changes and the parties were to present an agreed-upon order (if one was

finalized) to the Court. Based on these representations by counsel, the Court cancelled the evidentiary hearing and held the Renewed Emergency Motion in abeyance. ECF No. 468.

Plaintiffs' counsel drafted the consent order based on her understanding of the agreements reached on November 3, 2021 and sent the draft to Defendant's counsel on November 5, 2021. *Id*. ¶ 15; Exs. 1 and 2, ECF Nos. 472-1, 472-2. The next day, Defendant's counsel confirmed receipt and indicated that he would forward it on to the client and respond after hearing from them. *See* Ex. 3, ECF No. 472-3. However, Plaintiffs' counsel never received the substantive response. Instead, they were informed a few days later that Defendant had retained new counsel. The following day, Defendant's new counsel indicated that Defendant was not willing to enter any kind of agreement, including the proposed consent order prepared by Plaintiffs' counsel and forwarded to prior counsel. Plaintiffs filed their Motion to Enforce.

Plaintiffs' counsel presented evidence in support of their allegations that parties reached agreement that day. They contended that they reached an agreement (as evidenced by the contemporaneous notes) that day on the material terms of these issues including testing, quarantine, isolation, and treatment, though not a written or final one. *See e.g.*, Pls.' Reply, ECF No. 481. Defendant contended that no agreement was reached that day and the negotiations were simply discussion and nothing more, much less any kind of agreement on material terms. Def.'s Resp. at 4-6, ECF No. 480.

District courts have inherent authority to enforce settlement agreements. *Hensley v. Alcon Lab'ys., Inc.*, 277 F.3d 535, 540 (4th Cir. 2002). "Because exercise of the authority to enforce settlement agreements depends on the parties' agreement to a complete settlement, the court cannot enforce a settlement until it concludes that a complete agreement has been reached and determines the terms and conditions of that agreement." *See id. (citing Ozyagcilar v. Davis,* 701 F.2d 306, 308

(4th Cir.1983)). "Thus, to exercise its inherent power to enforce a settlement agreement, a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Id*. at 540-41. (citing *Moore v. Beaufort Cnty.*, 936 F.2d 159, 162) (4th Cir. 1991). "If a district court concludes that no settlement agreement was reached or that agreement was not reached on all the material terms, then it must deny enforcement." *Id.* at 541.

"[R]esolution of a motion to enforce a settlement agreement draws on standard contract principles…." *Id.* at 540. "The Court must first ascertain 'the objectively manifested intentions of the parties' to determine whether there was a meeting of the minds." *G.M. McCrossin, Inc. v. City of Ronceverte*, No. 5:17-cv-03953, 2021 WL 4150571 at *2 (S.D.W. Va. Sept. 13, 2021) (quoting *Moore*, 936 F.2d at 162.) That meeting of the minds must exist at least on all material terms. *See* Hensley 277 F.3d at 541.

Here, the Court cannot find that there was a meeting of the minds by both parties on the material terms that would suffice to create an enforceable settlement agreement. While Mr. Arceneaux had full authority to settle the issue[2] and the parties negotiated in good faith, there was no enforceable agreement made that day. The parties negotiated and reached agreement on some of the material terms, but not all of them. As Mr. Arceneaux testified, there was no agreement reached on the primary issues of isolation and its implementation or on other secondary matters. All the contemporaneously compiled notes reflect only extensive discussion and negotiation, but not a definitive agreement on even the primary issues.

Plaintiffs argue that their openness to discussion of non-material details and language does contradict their position that an agreement was reached. Pls.' Reply at 8. But, here, the Court

---

[2] As the hearing commenced, the Court inquired of the Defendant whether she would assert that prior counsel did not have authority to reach an agreement with Plaintiffs. She answered that she did not intend to make this assertion; thus, no attorney-client communications were at issue.

cannot find that the details left open for discussion were not material to settlement, which weighs against finding an agreement was made. *See Akers v. Minn. Life Ins. Co.*, 35 F. Supp. 3d 772, 787 (S.D.W. Va. 2014) (finding that failing to include terms that were important to settlement weighed against finding a contract was made.) In the context of this specific contract, the implementation of the protective measures at the jail and their feasibility is as important as the actual terms of their new protocol. For instance, Mr. Plumley played a crucial role in some of the negotiations, to determine what could actually be done at the jails in light of Plaintiffs' demands. Further, the implementation policies needed to be reviewed by the jails' medical providers before a final agreement could be reached, which should have been apparent to both parties given the history in this litigation.

It may be that Plaintiffs' counsel in good faith believed that they reached an agreement that day, but their objective manifestations did not support this. Mr. Arceneaux, who was an experienced lawyer with extensive experience of settlement negotiations testified that his understanding was merely that some important items were agreed upon but that negotiations would continue. Plaintiffs' counsel, at various times, represented the fact that their proposed consent order was a draft, subject to change. They intended to have their own expert review it and insert any additional provisions and definitions found to be necessary, and they subsequently sent an updated version to prior counsel. Upon receipt, prior counsel forwarded the draft to Defendant, who extensively reviewed it herself and made changes to almost all the terms, including material ones, supporting her understanding that the drafted agreement was not final or binding. Plaintiffs' counsel also left the Renewed Motion for Preliminary Injunction pending, and parties represented to the Court that they may wish to hold the evidentiary hearing on it should they not reach final

agreement. Unfortunately, the circumstances here only evidence that parties created a proposed document memorializing the parties' attempted negotiations.

Despite sincere and substantial efforts made that day, the Court finds no agreement was reached that was certain and complete enough to form an enforceable settlement agreement. Accordingly, Plaintiffs' Motion to Enforce (ECF No. 472) is **DENIED.**

Finally, because of this outcome, the Court **ORDERS** Plaintiffs to elect within 14 days whether they want to pursue the original Renewed Emergency Motion for Preliminary Injunction (ECF No. 451). Recognizing that complicated preparations are necessary for Plaintiffs to go forward on this Motion, Plaintiffs' election should address a proposed time frame necessary for their preparations.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: December 10, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE