IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JOHN BAXLEY, JR.,
EARL EDMONDSON,
JOSHUA HALL,
DONNA WELLS-WRIGHT,
HEATHER REED, and
DANNY SPIKER, JR. on their own behalf
and on behalf of others similarly situated,

      Plaintiffs,

v.              CIVIL ACTION NO.   3:18-1526

BETSY JIVIDEN, in her official capacity
as Commissioner of the West Virginia
Division of Corrections and Rehabilitation,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Betsy Jividen's Objection to the Magistrate Judge's Order Entered on April 14, 2022. ECF No. 612. For the reasons herein, the Court **DENIES** the Objection and **AFFIRMS** Magistrate Judge Aboulhosn's Order.

### I. FACTUAL BACKGROUND

This action is a certified class action on behalf of all incarcerated people in West Virginia jails, regarding Defendant's alleged deliberate indifference to serious medical needs and failure to provide adequate mental and medical health care during incarceration. Defendant contracts with PrimeCare Medical, Inc. to provide medical care for inmates housed at nine of their ten jails, and with Wexford Medical, Inc. at one of the jails. *See* ECF No. 159 at 3.

As the Court noted in its last order on objections, this case has been rife with contentious discovery issues from its inception. ECF No. 523. Relevant here are the contents of Plaintiffs' multiple discovery requests and subsequent motions to compel. Discovery began in this case in October 2019, when Plaintiffs served their first set of discovery requests. ECF No. 48. Because Plaintiffs found Defendant's responses inadequate and parties could not resolve the matter, on December 11, 2019, Plaintiffs filed their First Motion to Compel. ECF No. 61. Plaintiffs additionally filed a second discovery request, to which Defendant responded and later filed supplemental documents. *See* ECF Nos. 57, 58, 65, 72, 78.

On February 21, 2020, Plaintiffs deposed the corporate representative of PrimeCare; this deposition revealed the existence of multiple documents that Defendant had withheld from production. ECF Nos. 131, 131-2. A few days later, Plaintiffs filed their Second Motion to Compel, seeking a variety of documents Defendant had not produced, including those exchanged between itself and both medical contractors, specifically:

- monthly CQI [continuous quality improvement] analyses;
- pharmaceutical reviews;
- documentation from quarterly CQI meetings;
- documentation from monthly meetings with the contractor, including sign in sheets, written reports, agenda, etc.;
- 2019 year end reports (which should include all monthly reports);
- 2019 year end summary;
- mortality reviews;
- investigations of contractor employees;
- documentation related to billing by and payments to the contractors;
- a complete set of responsive documents related to Wexford's provision of care at Northern.

ECF No. 131 at 4-5. Magistrate Judge Eifert, after a hearing and briefing on the issue, granted, in part, the first and second motions to compel, addressing a selection of items raised in the motion,

but not specifically addressing the internal audits and other information from medical contractors. ECF No. 150.[1]

The next month, in March 2020, Plaintiffs served their Third Set of Combined Discovery Requests, to which Defendant responded. *See* ECF Nos. 151, 218. These discovery requests asked Defendant to "[p]lease produce all policies and procedures regarding quality assurance of medical and mental health care for inmates in West Virginia regional jails, including, but not limited to, required reports, meetings, in-service trainings, audits, evaluations, and/or peer review systems, in place from January 1, 2018, to the present." ECF No 238-2. Parties discussed deficiencies in the requests and production; when Defendant failed to resolve those issues by fully supplementing responsive documents, Plaintiffs filed their Third Motion to Compel on June 24, 2020. ECF No. 238. This Motion again specifically referred to the requested documentation "provided to Defendant[] by their medical contractors, including internal audits…" *Id*. at 2.[2]

On July 16, 2020, Magistrate Judge Aboulhosn held an informal telephonic conference on these pending motions, during which the Court ordered parties and PrimeCare to confer regarding documents. *See* ECF No. 285. At the meeting, various agreements between the parties were reached, including that PrimeCare would provide "all audits and/or reviews, including CQI analysis/audits, monthly CQI meeting minutes, process studies, and medication/pharmacy audits (for 2019)…." *See* ECF Nos. 285, 390-2. But, because several items remained in dispute, on July

---

[1] For clarity, the Order granted the general requests for production of documents as specified but denied Plaintiffs' request for the "third category of documents" which consisted of "thousands of pages of billing records covering payments owed/made by the DCR [Department of Corrections] above the capitation arrangement with PrimeCare." ECF No. 150 at 4. However, these documents are not at issue.

[2] Also in January 2020, Plaintiffs served a subpoena on Defendant's medical contractor, PrimeCare, seeking many of the same records they sought from Defendant, because Defendant asserted it would not be able to obtain the records from its own agent. *See* Order, ECF No. 285; Email Exchanges dated July 20, 2020, ECF No. 390-2. PrimeCare also failed to produce many of the requested documents, and Plaintiffs filed a motion to compel PrimeCare to respond to the subpoena. *See* ECF No. 242.

27, 2020, Magistrate Judge Aboulhosn granted Plaintiffs' Second and Third Motion to Compel Discovery, specifically as to those "outstanding issues that concern the Identified Requests for Production, *supra*, for documents pertaining to patient health records, audits and reviews, personnel files and staff evaluations concerning patient care related to the Northern Regional Jail, where Defendant West Virginia Division of Corrections and Rehabilitation's medical contractor is Wexford Health Systems as well as those inmate records that pertain to named Plaintiffs involving disciplinary and use of force reports." ECF No. 286 at 9.

Defendant objected to this order, arguing that it was erroneous to grant the Second Motion to Compel because the requests within it related only to PrimeCare documents, not Wexford documents, and that all issues on the Second Motion were resolved. ECF No. 314. But, as this Court previously found, though the original requests from the second set of discovery specifically referenced PrimeCare documents, the same was sufficient to compel Wexford documents. Order, ECF No. 349. As the Court noted then, "based on both the Second Motion to Compel and the reproduced requests for discovery, it is clear that RFP 3–5 relate to the number of inmates who received medical or mental health treatment and the prescription of medication to inmates within West Virginia Regional Jails and are not specifically limited to either of WVDCR's contractors." ECF No. 349.[3]

When PrimeCare and Defendant again failed to provide documents they had agreed to produce prior to August 3, 2020, Plaintiffs followed up regarding the outstanding information, which included "all autopsy, death reports, and any investigation reports related to inmate deaths in custody from 2017 to the present; sentinel event reports and/or incident reports related to health care; all audits and/or reviews including CQI analyses, meetings, audits, process studies,

---

[3] The fact that Defendant has tried to justify her failure to produce documents based on discovery orders referencing only one medical contractor is of importance to the current objections.

medication/pharmacy audits, and mortality reviews and related documents, with only reasonable redactions," which were the very same materials that the meeting and conferral with Defendant and PrimeCare supposedly resolved. ECF Nos. 390, 390-2. When additional conferral between parties failed to result in the production of these documents, Plaintiffs filed their Fourth Motion to Compel. ECF No. 390. After briefing and a hearing in which the parties represented to the Court that they had agreed to resolve the outstanding matters by entry of a protective order, the Court ordered that the documents be produced within two weeks of the entry of the new protective order. ECF No. 420.

Again, Defendant and PrimeCare failed to produce the complete set of documents. In February 2022, Plaintiffs filed a Motion to Enforce the Court's Previous Orders, a Fifth Motion to Compel Defendant to Comply with her Discovery Obligations, and a Third Motion to Compel PrimeCare to Respond to the Previously Served Subpoena. ECF No. 534. In that Motion, Plaintiffs again referred to their previous request for "documentation provided to Defendants by their medical contractors, including internal audits, reviews, and minutes from regular meetings." *Id*. at 2. Specifically, Plaintiffs noted that Defendant had failed to provide responsive unredacted mortality reviews, but also reserved their right to file an additional motion on other outstanding items. *Id*. at 6-7, 7 fn. 2.

Magistrate Judge Aboulhosn held an informal conference with parties, after which he ordered that Plaintiffs file a supplemental pleading outlining all outstanding discovery items and that Defendant produce in camera all outstanding items identified, without redactions. ECF No. 535. Plaintiffs filed a supplemental response, specifically seeking COVID-19 related information and supplemented CQI audits. ECF No. 537. After a hearing on the Motion to Compel and Enforce Court Orders, Magistrate Judge Aboulhosn found that Defendant had failed to sufficiently respond

or supplement very long-standing production requests. ECF No. 575. Accordingly, the Court ordered Plaintiffs to file a detailed list of outstanding discovery requests, ordered Defendant to produce outstanding items, and to update the Court regarding the progress of this. *Id*. Plaintiffs filed a Statement of Remaining Outstanding Discovery Items and included the COVID audits. ECF No. 586. On April 1, Defendant provided written responses to Plaintiffs' Statement, where she admitted that certain requested documents had been destroyed and/or not maintained during this litigation and stated that COVID audits were not identified until 2022. ECF No. 592.

On April 14, 2022, Magistrate Judge Aboulhosn granted Plaintiffs' Motion to Enforce Court Orders, Compel Defendant to Produce Discovery and Third Motion to Compel PrimeCare to Produce Documents. ECF No. 595. In doing so, the Magistrate Judge specifically noted that numerous discovery items had been outstanding for over two years and found that "Defendant's discovery abuses "shock[ed] the conscience." *Id*. at 2. Defendant objected to this Order. ECF No. 612. Plaintiffs responded on May 3, 2022. ECF No. 623. Defendant replied on May 4, 2022. ECF No. 625.

## II. LEGAL STANDARD

Under this Court's Standing Order pursuant to 28 U.S.C. § 636, all discovery matters are referred to magistrate judges. Defendant moves for review of the magistrate judge's order on a discovery issue pursuant to Federal Rule of Civil Procedure 72(a). The Rule provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days ... The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a).

"The Fourth Circuit has held that the 'clearly erroneous' standard is deferential and that findings of fact should be affirmed unless the reviewing court's view of the entire record leave the Court with 'the definite and firm conviction that a mistake has been committed.'" *Asbury v. Litton Loan Servicing, LP,* No. 3:07-0500, 2009 WL 973095, at *1 (S.D.W. Va. April 9, 2009) (quoting *Fed. Election Comm'n v. Christian Coal.,* 178 F.R.D. 456, 460 (E.D. Va.1998) (quoting *Harman v. Levin,* 772 F.2d 1150, 1153 (4th Cir.1985)); *United States v. U. S. Gypsum Co.,* 333 U.S. 364, 395 (1948) (same).

"When ... review of a non-dispositive motion by a district judge turns on a pure question of law, that review is plenary under the 'contrary to law' branch of the Rule 72(a) standard." *PowerShare, Inc. v. Syntel, Inc.,* 597 F.3d 10, 15 (1st Cir. 2010) (citing cases and other authority). "This means that, for questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and [a] de novo standard." *Id.*

### III. ANALYSIS

A. Discovery Findings

Defendant first contends that Magistrate Judge Aboulhosn's April 14, 2022 Order is erroneous because his prior orders (and Plaintiffs' prior motions to compel) did not explicitly discuss COVID audit documents, which Defendant contends is the only outstanding discovery item under the Third Request for Production. Specifically, Defendant objects to the portion of the Magistrate Judge's Order which states "[f]rom the onset, the undersigned noted several discovery deficiencies concern Plaintiffs' production requests served in March 2020," and that discusses the fact that discovery issues have remained outstanding since 2020. Def.'s Obj. at 5-6 (citing Order, ECF No. 595 at 1.).

Instead, she argues that the only documents specifically requested under Plaintiffs' Fifth Motion to Compel were unredacted mortality reports in the care of PrimeCare, which were subsequently provided after the entry of a protective order. *See id*. at 5-7 (citing ECF No. 534 at 6-7). Defendant acknowledges that, in their Motion, Plaintiffs reserved the right to file an additional motion on outstanding items after conferral with Defendant but argues that the Magistrate Judge ordered production before conferral could take place. *Id* at 6-7. Because these requests evolved, Defendant argues, the Magistrate Judge's Order stating that Defendant had not complied with production requests from 2020 is inaccurate. *Id*. at 7-8. Further, she argues that Plaintiffs did not specify which Request for Production or question number related to that information and gave two different answers at the hearing and their briefing.[4] She argues that the lack of specificity means that the COVID audit documents were not even mentioned – let alone ordered to be produced – until March 8, 2022, and so Defendant never untimely complied with any production order because it was "unclear if Defendant would have even considered COVID audit documents responsive to the Third Request for Production." *Id*. at 10.

At the outset, the Court notes that Plaintiffs filed expansive interrogatories and requests for production, as is typical in cases with these classes of allegation, and Defendant should have expected to provide medical care documents quite generally. However, specifically, in the Third Set of Interrogatories and Request for Production, filed in June 2020, Plaintiffs asked for "all policies and procedures regarding quality assurance of medical and mental health care for inmates in West Virginia regional jails, including, but not limited to, required reports, meetings, in-service trainings, *audits,* evaluations, and/or peer review systems in place from January 1, 2018, to

---

[4] Defendant alleges at the hearing that Plaintiffs stated these documents had been requested under their Third Request for Production, Question 9, but that in their prior briefing they sought the documents under their Fifth Request for Production, Question 5. Both are expansive interrogatories that could feasibly encompass a request for these types of documents.

present." Third Set of Interrog. and Req. for Produc. at 8, ECF No. 238-2.[5] Given that the documents filed by Plaintiffs literally referred to "audits," it is disingenuous to say COVID audits would not be responsive to the request, particularly when COVID had existed for months by the time the Third Motion to Compel was filed in June and was a primary concern of the parties. Indeed, at this point in the litigation, COVID, an unprecedented, unanticipated pandemic, had undoubtedly become a central medical and mental health concern for Defendant and her contractors.

These documents, and the requests within for audits, by name, completely refute Defendant's argument that she only recently expected that she would be required to provide COVID audit documents. Though they may have only recently been literally identified as "COVID" audits, it was not error for Magistrate Judge Aboulhosn to find that these documents had been requested as early as March 2020 and that Defendant had failed to comply or confer with PrimeCare regarding compliance. And though the Magistrate Judge's Order on the Third Motion to Compel only discussed Wexford's required production of medical contractor documents, this was because Magistrate Judge Aboulhosn believed that the PrimeCare discovery issues – including provision of audits – had been resolved, as represented by parties. *See* ECF No. 286. Defendant was very clearly on notice that Plaintiffs considered these documents responsive to their Third Request for Production. *See* ECF No. 286.

Magistrate Judge Aboulhosn's Order, never, at any point, refers to the missing COVID-audit documents as the sole basis for his decision, and Defendant does not dispute that there remain outstanding documents from the Fourth and Fifth Requests for Production – which were served almost a full year ago. *See* ECF No. 586. Importantly then, any of these multiple missing items

---

[5] Because the Court does not receive copies of the discovery requests as they are filed, the Court is relying on the copies produced regarding the Motions to Compel, given that there has been no objection to their veracity.

provided the basis for Magistrate Judge Aboulhosn's findings that Defendant has failed to comply with discovery; thereby continuing a pattern that began over two years ago and justifying his findings regarding Defendant's failure to comply with discovery that has been documented over the course of this litigation.

### B. Bad Faith

Federal Rule of Civil Procedure 37(b) allows the district court to award sanctions when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). To justify an award of sanctions under Rule 37(b), two conditions precedent must exist: (1) there must have been a court order directing a party to permit or provide discovery, and (2) the party must have violated the order. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 518-20 (D. Md. 2010). The court enjoys broad discretion in fashioning its sanction, with only two overarching standards. "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Insur. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).

The United States Court of Appeals for the Fourth Circuit has "developed a four-part test for a district court to use when determining what sanctions to impose" under Rule 37(b). *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001). The court should consider: (1) whether the noncomplying party acted in bad faith; (2) the degree of prejudice suffered by the other party or parties as a result of the failure to comply; (3) the need to deter the demonstrated noncompliance; and (4) the efficacy of a less drastic sanction. *Id.*

Insofar as Defendant contends that the Order is erroneous because she has not committed discovery abuses nor acted in bad faith, she is similarly incorrect. The record is replete with motions to compel, unsatisfactory responses to requests for production, and disputed discovery

matters where multiple magistrate judges were forced to order Defendant's compliance. Magistrate Judge Aboulhosn's Order reflects an obvious dissatisfaction with the number of times he has had to require Defendant to produce crucial documents over the past two years. Moreover, the failure to produce such crucial documents creates prejudice for Plaintiffs, where they have not had the opportunity to ask about them at deposition or (in some instances) even review them before an upcoming trial.

Given the long, tortured history of discovery disputes, wherein Defendant has regularly been on the losing end, Magistrate Judge Aboulhosn applied the correct standard in the context of discovery that has been ongoing for years. Moreover, the sanction is modest in amount and is easily avoidable if Defendant were to simply comply with the discovery orders. Therefore, his finding of discovery abuse and sanctions is not clearly erroneous or contrary to law. Given that these disputes are occurring on the eve of trial, it is all the more important that discovery issues are resolved timely.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Objection (ECF No. 612) and **AFFIRMS** Magistrate Judge Aboulhosn's Order.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: May 11, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE