## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**JOHN BAXLEY, JR., et al.,**
**on behalf of a class of similarly**
**situated individuals,**

               **Plaintiffs,**

**v.**                                          **Civil Action No. 3:18-cv-01526**
                                                **Honorable Robert C. Chambers**

**BETSY JIVIDEN, in her official**
**capacity,**

               **Defendant.**

## JOINT MOTION FOR PRELIMINARY & FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE TO THE CLASS

COME NOW Plaintiffs John Baxley, Donna Wells-Wright, Earl Edmondson, Joshua Hall, Heather Reed, and Danny Spiker, on behalf of a class of similarly situated individuals (Plaintiffs), by and through counsel Jennifer S. Wagner, Lydia C. Milnes, Bren J. Pomponio, and Lesley M. Nash and the law firm of Mountain State Justice, and Defendant Betsy Jividen (Defendant), by and through counsel, William E. Murray, Jaden P. Rhea, and the law firm of Anspach Meeks Ellenberger, and jointly move this Court for preliminary and final approval of the negotiated settlement of this matter, as set forth in more detail below.

## BACKGROUND

This case was filed in 2018 as a pro se multi-plaintiff suit. Counsel for the Plaintiffs noticed their appearance in 2019 and filed an amended putative class action complaint in April 2019 [Dkt. 18]. Also in 2019, the parties met by counsel for a day long resolution session to discuss potential resolution of this matter but were unsuccessful in reaching an agreement.

In December 2019, Plaintiffs filed their second amended complaint, seeking solely injunctive and declaratory relief for a putative class of people incarcerated in West Virginia jails.

[Dkt. 67.] After extensive discovery and a hearing on a motion for preliminary injunction relating to COVID policies and procedures, in May 2020, the parties entered a joint notice of voluntary dismissal of Count III of the Second Amended Complaint, concerning conditions of confinement at Western Regional Jail, and in July 2020, Defendant filed motions for summary judgment against each named plaintiff in this matter and Plaintiffs filed a motion for class certification on the remaining two counts in the complaint. [*See* Dkts. 223, 260-328.]

In December 2020, the Court ruled on the motions for summary judgment. The Court denied summary judgment as to all remaining class representatives regarding Count I for deliberate indifference to serious medical need; the Court granted summary judgment to Defendant on the claim for violations of the Americans with Disabilities Act (ADA) as to all class representatives except for Donna Wells-Wright, whose claims survived. [Dkt. 358.] Also in December 2020, the Court granted Plaintiffs' motion for class certification as to Count I for deliberate indifference and certified a class of "All persons who are, or who will be, admitted to a jail in West Virginia." [Dkt. 357 at 3.] The Court withheld judgment regarding the certification of a class under Count II related to violations of the ADA and requested supplemental briefing on this issue. [Dkt. 357 at 17.]

Thereafter, in early 2021, the parties again engaged in extensive negotiations regarding the claims, including through mediation and extensive other communications. While the case was not resolved through these discussions, Defendant incorporated many of the discussed concepts into the Request for Proposals (RFP) for a new medical contract that was subsequently released, as well as in drafting a new policy regarding the Americans with Disabilities Act in the jails, which was also subsequently implemented. Simultaneously, Defendant sought interlocutory review of the class certification order with the Fourth Circuit Court of Appeals, which was denied. [Dkt. 369.]

The parties then resumed extensive discovery, including multiple depositions, exchanging thousands of pages of documents, and each party retaining multiple experts who each produced extensive reports after visiting the facilities, reviewing records, and (for Plaintiffs) meeting with numerous class members. The parties further briefed another motion for preliminary injunction and prepared for an evidentiary hearing; and further engaged in substantial motions practice regarding multiple discovery disputes. On April 21, 2022, the parties stipulated to dismissal of Count II, the claim for relief under the ADA, in light of implementation of the new ADA policy and the Court's orders on summary judgment. [Doc. 603.]

Effective May 1, 2022, Defendant entered a new contract for provision of medical and mental health services, based on the RFP that had been issued after the parties 2021 settlement discussions. Defendant filed a motion for summary judgment arguing, in part, that Plaintiffs' claims were moot as the result of the new contract. [Dkt. 622 at 20-23.] As of May 24, 2022, several motions were pending, including Defendant's motion for summary judgment and Plaintiffs' motion to strike the new contract and exclude it from trial. [*See* Dkts. 622, 640.] The Court had further ruled that Defendant produce a witness for deposition before the end of the following week regarding the new contract. [Dkt. 646.] The pretrial conference was set for June 6, 2022, and trial in this matter was set for June 28, 2022. [Dkt. 475.]

On May 24, 2022, the parties met in person for a settlement conference as required by the Court's scheduling order. Leading up to the conference, the parties had discussed the details and parameters of a potential successful resolution of the case, informed in large part by prior negotiations. At the conference, after substantial negotiation, the parties were able to reach full and complete resolution of this matter, as set forth in the attached agreement and below. (*See* Ex. A.)

## PROPOSED SETTLEMENT TERMS

A complete copy of the proposed settlement agreement is attached as Exhibit A. The following summarizes and explains the terms:

1.  <u>Implementation of new medical services contract</u>: The Department of Corrections and Rehabilitation (DCR) has entered a new medical services contract with one provider that will cover all of the jails. The contract incorporates much of the feedback provided by Plaintiffs during the drafting of the Request for Proposals. The new medical services contract contains several key terms that the parties believe will resolve the issues raised in this case. Among these terms, it (i) requires that class members will receive verified medications upon intake, even if the medications are not on the provider's formulary, and that class members may not be removed from a working medication without first meeting with a licensed provider; (ii) requires that sick calls are triaged within 24 hours and patients seen within 48 hours of sick calls; (iii) increases mental health staffing and access to mental health care in the jails, including mental health coverage seven days a week; (iv) makes group therapy availability; (v) requires follow-up with a mental health professional after removal from suicide watch; (vi) requires timely appointments with psychiatric medication providers and timely follow ups for newly prescribed psychotropic mediations; (vii) requires that class members who have been receiving medication assisted treatment (MAT) for opioid use disorder pre-incarceration be continued on this treatment once incarcerated; (viii) establishes a pilot MAT program that will provide class members access to MAT that were not on MAT at the time of incarceration; (ix) establishes improved discharge planning, including provision of a short supply of medications and a prescription for a thirty-day supply; and (x) improves the continuity of care through the DCR system of

prisons and jails when class members are transferred between facilities by employing a single medical services provider who will use a single electronic medical record system. DCR has committed in the settlement agreement to continue to ensure that all terms of the contract are fully implemented and enforced.

2. Establishment of Internal Auditing & Review: The Division of Corrections and Rehabilitation (DCR) has committed to hiring two nurse surveyors and one fulltime physician to conduct internal auditing of its medical services contractor. Pursuant to the terms of the settlement agreement, this auditing will include both chart reviews as well as interviews of class members to determine whether their care is being accurately captured by the chart reviews. DCR and Plaintiffs will agree on the metrics to be used in conducting these regular, monthly audits, and will further collaborate on the auditing processes and procedures. A non-comprehensive list of the areas to be audited is included in the settlement agreement. In addition, pursuant to the agreement, DCR will begin conducting a medical review as part of all DCR investigations into the circumstances surrounding the deaths of class members who die while in custody.

3. Ongoing Engagement with Plaintiffs & Their Counsel:

   a. DCR will provide Plaintiffs' counsel with reasonable access to all documents relevant to the implementation of the agreement on a monthly basis, including the underlying documentation reviewed in conducting the DCR internal audits; policies and procedures; contract amendments and change orders; all audits from both outside accreditation entities and conducted within DCR; access to class member electronic medical records; documentation of medical and mental health personnel qualifications; and all death investigations, mortality reviews, psychological

autopsies, serious incident reports, and continuous quality improvement documentation. DCR will further facilitate reasonable access to class members and facilities.

    b. In addition, DCR has agreed to collaborate with Plaintiffs on including psychiatric expertise to assist with auditing; to determine best placement of class members on suicide watch; and to ensure that confidentiality is maintained for medical and mental health encounters.

4. <u>Timing</u>: The parties will collaborate pursuant to the agreement until that date that occurs two years after the issuance of the first report of DCR's nurse surveyors. The parties anticipate that the first report will be issued in August or September 2022.

5. <u>Resolution</u>: The parties have detailed a resolution process whereby the parties will attempt to resolve any concerns about compliance with the settlement agreement through a process of notification, investigation, and meeting and conferral. If this process does not resolve the matter, any party may present the issue to the Court for relief.

6. <u>Payments</u>: DCR will make a total payment of $600,000.00 to Mountain State Justice, Inc. within thirty days after approval of the settlement by this Court. This payment will be distributed as follows:

    a. A payment of $2,000.00 will be provided to each named class representative, in recognition for the service, risk, and efforts expended by the Plaintiffs in order to obtain relief for all people incarcerated in West Virginia jails.

    b. A payment of $588,000.00 will be provided to Mountain State Justice, Inc., in resolution of class counsel's claim for an award of reasonable attorney fees and costs in litigation this action pursuant to 42 U.S.C. § 1988. As set forth in the

contemporaneously filed motion for attorney fees, this sum consists of a fraction of

the amount incurred by Plaintiffs' counsel to date.

While the settlement document anticipates that the parties would draft an additional

settlement document, the parties believe that this is no longer necessary, and that the Court can

address the additional technicalities required without additional process. The parties thus request

that the Court issue the following rulings as part of the order approving the settlement. First, as

required by paragraph 11 of the attached settlement agreement (Ex. A), the parties request that the

Court place the case on the inactive docket for the two-year time period set forth in the settlement

agreement, for purposes of construction and enforcement of the settlement agreement. Second, to

enable the continued exchange of information anticipated by the agreement, the parties request

that that the protective orders issued in this case [Dkts. 56, 429, 441, and 546] remain in effect,

and that the amended protective order attached as Exhibit C hereto be entered. Third, this

settlement has no impact on any claim for damages that any past, present, or future class member

might or might not have.

## PROPOSED CLASS NOTICE

The parties have attached a proposed notice to the class as Exhibit B. This form of notice

is adequate to provide the class with notice of the settlement and complies with the provisions of

Federal Rule of Civil Procedure 23.

Within seven days of the Court approving this settlement and proposed notice, Defendant

will: (1) post the notice in each housing unit in each of the ten regional jails in such a manner as

to make the notice visible to all class members and in the location(s) where notices are customarily

posted; (2) hand deliver a copy of the notice to all class members who are not able to easily see

the posted notices, such as those who are in segregation, suicide watch, quarantine, isolation,

booking, or lockdown; and (3) provide, on request, a copy of the Exhibit A to this motion, this motion, and/or the motion for attorney fees.

## LEGAL ANALYSIS

### 1.  The Court Should Preliminarily Approve the Stipulated Settlement

Approval of a class action settlement is within the district court's sound discretion. *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015). The class in this matter has been certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, in light of the fact that this case seeks only injunctive and declaratory relief. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure:

> The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for the purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1). Here, the class has already been certified by the Court. Rule 23(e)(2) provides procedural protections for class members "[i]f the proposal would bind class members." In such an instance, the court must conduct a hearing and may only approve the settlement "on finding that it is fair, reasonable, and adequate." *Id.* The Rule goes on to list several factors to consider. *Id.* Arguably, here, notice and a fairness hearing are not necessary, because class members will not be bound by the results of this settlement. Nonetheless, in an abundance of caution and to permit the class members an opportunity to be heard, the parties propose that the settlement be approved after notice to the class and a fairness hearing.

Accordingly, at the preliminary approval stage, the Court first considers whether the agreement is likely to satisfy the standards of Rule 23(e)(2), and if so, directs notice to class members. Fed. R. Civ. P. 23(e)(1). Thereafter, at a fairness hearing, the Court will consider final approval of the settlement, in light of any objections received from class members. Fed. R. Civ. P.

23(e)(2), (e)(5). "[A]t the at the preliminary approval stage, the Court need only find that the settlement is within 'the range of possible approval.'" *Commissioners of Pub. Works of City of Charleston v. Costco Wholesale Corp.*, 340 F.R.D. 242, 249 (D.S.C. 2021) (citing cases).

Here, preliminary approval is appropriate because each of the Rule 23(e)(2) factors has been met: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided is adequate; and (4) the proposal treats class members equitably relative to one another. As to the factors listed for adequacy: Plaintiffs were faced with arguments that their entire case was moot because of the new medical services contract; furthermore, if the case went to trial, both parties were prepared to appeal the final verdict, if appropriate. By reaching the settlement, Plaintiffs were able to obtain an enforceable agreement that the contractual terms of the new contract would continue to be followed, that Defendant would conduct meaningful ongoing auditing and contract compliance activities, that Plaintiffs would have access to the information necessary to ensure that these agreements were being followed, and that the Court will retain limited jurisdiction to enforce the agreement if necessary. Rather than risk losing the matter on mootness grounds or potentially waiting years for relief to the class members, the settlement provides meaningful relief immediately to protect the lives and wellbeing of class members. The award of attorney fees is also appropriate and reflects just a portion of the fees and costs incurred to date, as set forth in the motion for attorney fees. *See* Fed. R. Civ. P. 23(e)(2).

Similarly, the factors used by the Fourth Circuit in relation to approving class settlements are met.[1] *See Commissioners of Pub. Works of City of Charleston v. Costco Wholesale Corp.*, 340

---

[1] The commentary to the 2018 amendments to the Rule 23(e)(2) of the Federal Rules of Civil Procedure states that the amendment was intended to consolidate the various factors established by the circuit courts. However, the Fourth Circuit has not yet addressed these factors in relation to certification of a Rule 23(b)(2) class.

F.R.D. 242, 249 (D.S.C. 2021). At the time of settlement, the case was close to trial with a pending motion for summary judgment; the parties had conducted years of discovery, dozens of depositions, and production and review of hundreds of thousands of pages of documents; settlement negotiations occurred over the course of years and were finalized in an in person meeting with all counsel and relevant decision-makers present; and Plaintiffs' counsel has significant class action and civil rights litigation experience, which enables them to consider the risks and benefits of settlement realistically and advocate appropriately for the class. *See id.* (citing *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991).)

In short, given the relief achieved and the risks and costs involved in further litigation, the proposed settlement represents fundamentally "fair, reasonable and adequate" resolution of the disputed issues and should be preliminarily approved. *See* Fed. R. Civ. Pro. 23(e)(2).

**2. The Court Should Approve the Class Notice.**

As set forth above, to the extent that Rule 23(e) requires notice to the class in this matter before the Court grants final approval to any compromise of the case, the parties have agreed to the form and content of a notice to the class, which is attached hereto as Exhibit B, and which provides reasonable and understandable notice of the terms of the settlement. The means of disseminating the notice will allow an adequate opportunity for the class to review and comment on the settlement or seek further information. The parties respectfully request that the Court approve the notice and order its dissemination to the class members.

3.  **The Court Should Approve the Proposed Schedule Below.**

The parties propose the following general schedule to provide for notice, comment, and final approval of the settlement.

First, the parties propose to post the notice within seven days from the date on which a preliminary approval order and order approving the notice issues. Second, the parties request a four-week period following publishing of the notice, during which class members may file comments and objections. Third, the parties request two weeks from the end of the comment period for the parties to respond to any objections. Fourth, the parties request that the fairness hearing be set within two weeks after the deadline for responding to objections, at a date that is convenient to the Court and counsel of record.

## CONCLUSION

For the reasons discussed above, Plaintiffs and Defendant request that the Court issue preliminary approval of the settlement (Ex. A), approve the form of the proposed notice (Ex. B) and order its publication to the class, and issue the proposed scheduling order. The parties further request final approval of the settlement, the proposed protective order (Ex. C), the motion for attorney fees, and entry of the additional findings herein following the fairness hearing.

Respectfully submitted,

**JOHN BAXLEY, JR., et al., on behalf of himself
and all others similarly situated,
By Counsel:**

*/s/ Lydia C. Milnes*
Jennifer S. Wagner (State Bar No. 10639)
Lydia C. Milnes (State Bar No. 10598)
Bren J. Pomponio (State Bar No. 7774)
Lesley Nash (State Bar No. 14158)
Mountain State Justice, Inc.
1029 University Ave., Suite 101
Morgantown, WV 26505

Phone: (304) 326-0188
Facsimile: (304) 326-0189
lydia@msjlaw.org


**BETSY JIVIDEN,**
**By Counsel:**

*/s/ William E. Murray*
William E. Murray (WVSB #2693)
Jaden P. Rhea (WVSB #13454)
ANSPACH MEEKS ELLENBERGER LLP
500 Virginia Street East, Suite 525
Charleston, West Virginia 25301
304-205-8063 - telephone
304-205-8062 – facsimile
wmurray@anspachlaw.com
jrhea@anspachlaw.com