## General Terms

1. DCR agrees that it and its contractor(s) will continue to ensure that class members receive a level of medical and mental health care that meets constitutional standards.
2. DCR will continue to ensure that the standards and provisions set forth in the contract effective on May 1, 2022, are fully complied with.
3. DCR will continue to implement the contract and health auditing system that it has proposed, which will include at minimum the one medical doctor/physician & two nurses to complete regular and complete ongoing auditing of the medical care in the facilities.
4. DCR and Plaintiffs will engage in ongoing conversations regarding the possibility of engaging psychiatric expertise to assist or consult with the DCR auditing team.
5. Plaintiffs and DCR will engage in ongoing conversations regarding confidentiality of all medical and mental health encounters, including the initial screening and suicide watch. DCR will engage in best efforts to ensure confidentiality of all medical and mental health encounters.
6. DCR is concerned about appropriate placement and housing of individuals in suicide watch and will continue to engage in ongoing conversations regarding this issue.
7. All death investigations must include a review of medical and mental health care provided by DCR and/or its contractors.
8. <u>Development of auditing tools</u>: Plaintiffs' counsel and DCR will collaborate upon the auditing processes and tools, and collaborate and agree on metrics to be utilized by the nurse surveyors employed by DCR. The audit process will include, but is not necessarily limited to, chart reviews and interviews with class members. The report will include, but is not limited to, aggregate data regarding:
    a. the provision of medication assisted treatment;
    b. Preexisting medical and mental health conditions of people placed in segregation;
    c. Preexisting medical and mental health conditions of people who have been involved in uses of force;
    d. Chronic care treatment;
    e. sick calls, medical grievances and ADA grievances, including trends therein and appropriate resolution;
    f. timing of appointments,
    g. Follow up appointments following suicide watch,
    h. Compliance with individualized treatment plans as required by the contract,
    i. timing of medication delivery,
    j. staffing qualifications and plans,
    k. Suicide watch,
    l. Medical rounds,
    m. timing of mental health screening and provider appointments,
    n. Mortality reviews, psychological autopsies, and death investigations,
    o. compliance with detoxification protocols, and
    p. other items regarding contract compliance, which will continue to be developed.
9. <u>Access to documents</u>: Upon request, and after collaboration with DCR's designated individual, DCR will provide Plaintiffs' counsel reasonable access to all documents and information related to implementation of this Agreement, including but not limited to any underlying

1

documentation relied on or reviewed in conducting any audit or review. DCR will provide the following information to Plaintiffs' counsel on monthly basis:

 q. Plaintiffs will be provided all currently in place policies, procedures, regulations, or rules impacting patient care, implemented by DCR or its contractors. Thereafter, as to updates from the contractor, Plaintiffs will be provided contact with the contractor, who will provide updated policies and procedures directly. As to updates from DCR, DCR will either produce a list of all updated policies and procedures and provide updated policies on request, or provide a copy of all new policies and procedures.

 r. Contract amendments or change orders;

 s. All audits or reviews conducted by ACA, NCCHC, DCR or any other accreditation entity of or related to DCR's provision of mental health and medical care services in the jails.

 t. Access to the Electronic Medical Records, either through direct access through login or by provision in paper or PDF format. DCR agrees to contact the contractor (Wexford) and request login access for Plaintiffs to the EMR records of class members. To the extent that this cannot be arranged, DCR will ensure an alternative method of provision of class member medical records.

 u. All documentation of the qualifications of medical or mental health personnel, including but not limited to those designated as qualified mental health providers

 v. All death investigations, mortality reviews, psychological autopsies, serious incident reports, and materials provided to DCR by Wexford regarding Continuous Quality Improvement (CQI)

10. <u>Access to class members</u>:

 w. Plaintiffs' counsel shall be entitled to visit their clients through regular attorney client visits.

 x. Up to ten times per year, Plaintiffs' counsel may request that DCR or its contractor provide a list of class members with certain defining characteristics (i.e., chronic care conditions, individuals with outstanding sick calls, etc.), and select class members from the list to meet with at a facility. DCR will comply with all such requests that it has the practical ability to comply with. Plaintiffs will give DCR advance notice of any planned visits pursuant to this provision.

 y. On request, after notification that Plaintiffs have a legitimate concern about an issue at a facility and a discussion with DCR, DCR will provide Plaintiffs' counsel with the underlying data and documents that will identify impacted class members. In extreme and unusual circumstances, Plaintiffs may request access to tour the facility and speak with class members.

11. <u>Resolution process</u>: If a party believes that the other party is not complying with this Agreement or any plan to effectuate its terms, they will notify the other party in writing of the facts supporting their belief. The party who has been contacted will investigate the allegations and respond in writing within thirty days. If the raising party is not satisfied with the other party's response, the parties will meet and confer to resolve the issue(s). If the Parties are unable to resolve the issue(s) timely and satisfactorily, any Party may present the issue to the Court for relief.

12. The parties will continue to collaborate pursuant to the provisions of this agreement for a period of two years beginning on the date of the issuance of the first report issued by DCR's nurse surveyors.
13. <u>Fees & costs; service award</u>: DCR shall pay $600,000.00 to Mountain State Justice in resolution of fees and costs incurred and inclusive of a service award of $2,000.00 per named Plaintiff/class representative.
14. <u>Resolution of sanctions order</u>: The parties will make a joint motion to the Magistrate Court requesting that the Court not order the payment of any monetary sanctions, as all issues have been resolved by this and subsequent settlement agreements.

### Formal Settlement Document

The parties will enter into a more formal settlement document for presentation to the Court for approval.

**Dated: May 24, 2022**

**Commissioner Jividen:**

_[signature]_
William & M[illegible]

**Plaintiffs, by Counsel:**

_[signature]_